KATHERINE M. FORSTER (State Bar No. 217609)
Katherine.Forster@mto.com
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
KYRA E. SCHOONOVER (State Bar No. 343166)
Kyra.Schoonover@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:      (213) 683-9100
Facsimile:      (213) 687-3702

Attorneys for Defendants BLACKBERRY
CORPORATION and JOHN GIAMATTEO

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual,<br><br>    Plaintiff,<br><br>      vs.<br><br>BLACKBERRY CORPORATION; a<br>Delaware Corporation; and JOHN<br>GIAMATTEO; an individual,<br><br>    Defendants. | Case No. 3:24-cv-02002<br><br>**MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN PART AND MOTION TO STRIKE**<br><br>Hearing Date:      July 1, 2024<br>Time:                  9:30 AM<br>Place:                 Courtroom C<br>Judge:                Sallie Kim |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

STATEMENT OF RELIEF SOUGHT ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................1

I.  INTRODUCTION ...........................................................................................................1

II. SUMMARY OF ALLEGATIONS ..................................................................................5

    A.  Sexual Harassment Allegations..............................................................................5

    B.  Retaliation Allegations ...........................................................................................6

III. LEGAL STANDARD .....................................................................................................7

IV. ARGUMENT ..................................................................................................................7

    A.  Plaintiff's Hostile Work Environment Claim Should Be Dismissed. ....................7

        1.  Plaintiff Fails to Allege Pervasive or Severe Harassment That Altered the Conditions of Her Employment. ...........................................8

        2.  Plaintiff's Remaining Allegations Are Not Sex- or Gender-Based and Do Not Support a Hostile Environment Claim.....................................13

    B.  Plaintiff's Claim for Pay Discrimination Should Be Dismissed. ..........................15

        1.  Giamatteo Cannot Be Personally Liable for Alleged Pay Discrimination. ..........................................................................................15

        2.  Plaintiff Has Failed to Plead She Performed Substantially Similar Work to Giamatteo. .......................................................................16

    C.  Plaintiff's Claim for Failure to Pay Wages Should Be Dismissed.........................18

    D.  Plaintiff's References to Negligent Hiring Should Be Stricken, Along with References to "Harassment" and "Discrimination" in Her Failure-to-Prevent Claim. ...............................................................................................................19

        1.  A Negligent Hiring Claim Is Time-Barred, So Allegations Related to Giamatteo's Hiring Should Be Stricken..................................19

        2.  Plaintiff Has Not Properly Pled Any Harassment or Discrimination, So Her Allegation that BlackBerry Failed to Prevent Harassment or Discrimination Should Be Stricken...............................................21

V.  CONCLUSION ...............................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ..............................................................................................7, 17, 18

*Banawis-Olila v. World Courier Ground, Inc.,*
 No. 16-cv-00982-PJH, 2016 WL 4070133 (N.D. Cal. July 29, 2016)................................16, 17

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 555 (2007) .............................................................................................................7

*Daluise v. Mccauley,*
 No. 2:15-cv-02701-CAS-JEMx, 2015 WL 7573649 (C.D. Cal. Nov. 24, 2015).....................20

*Davis v. Inmar, Inc.,*
 No. 21-cv-03779 SBA, 2022 WL 3722122 (N.D. Cal. Aug. 29, 2022)....................................16

*Duke v. City Coll. of San Francisco,*
 No. 19-cv-06327-PJH, 2020 WL 512438 (N.D. Cal. Jan. 31, 2020) ........................................17

*Faulkner v. ADT Sec. Servs., Inc.,*
 706 F.3d 1017 (9th Cir. 2013).................................................................................................7

*Freeney v. Bank of Am. Corp.,*
 No. CV 15-02376 MMM (PJWx), 2015 WL 12535021 (C.D. Cal. Nov. 19,
 2015)........................................................................................................................................19

*Godina v. Wells Fargo Bank, N.A.,*
 No. 5:18-cv-02641-RGK-KK, 2019 WL 7882370 (C.D. Cal. Nov. 22, 2019).........................10

*Graves v. DJO, LLC,*
 No. 20-CV-1103 W (KSC), 2023 WL 3565077 (S.D. Cal. Mar. 30, 2023) .......................10, 11

*Haley v. Cohen & Steers Cap. Mgmt., Inc.,*
 871 F. Supp. 2d 944 (N.D. Cal. 2012) .............................................................................11, 14

*Hatfield v. DaVita Healthcare Partners, Inc.,*
 No. C 13–5206 SBA, 2014 WL 2111237 (N.D. Cal. May 20, 2014) .......................................12

*Hein v. Or. Coll. of Educ.,*
 718 F.2d 910 (9th Cir. 1983)..................................................................................................17

*Huimin Song v. County of Santa Clara,*
 No. 5:11–CV–04450–EJD, 2013 WL 6225263 (N.D. Cal. Nov. 25, 2013) ............................19

*Jacobs v. Sustainability Partners LLC,*
 No. 20-cv-01981-PJH, 2020 WL 5593200 (N.D. Cal. Sept. 18, 2020) ................................4, 18

- ii -

*Jones v. Thyssenkrupp Elevator*,
  No. C-05-3539 EMC, 2005 WL 8177458 (N.D. Cal. Dec. 22, 2005) ...............................15, 16

*Kortan v. Cal. Youth Auth.*,
  217 F.3d 1107 (9th Cir. 2000)..................................................................................................11

*Lee v. Bank of Am., N.A.*,
  No. 21-cv-07231-JSC, 2022 WL 595877 (N.D. Cal. Feb. 28, 2022)........................................19

*Leland v. City & Cnty. of San Francisco*,
  576 F. Supp. 2d 1079 (N.D. Cal. 2008) ...................................................................................20

*Lewis v. ADP Tech. Servs., Inc.*,
  No. CV 23-2583-KK-PDx, 2024 WL 561861 (C.D. Cal. Jan. 30, 2024) ................................21

*Noble v. Dorcy Inc.*,
  No. 2:19-cv-08646-ODW (JPRx), 2020 WL 4227295 (C.D. Cal. July 23, 2020)...................10

*Perez v. Performance Food Grp., Inc.*,
  No. 15-cv-02390-HSG, 2016 WL 1161508 (N.D. Cal. Mar. 23, 2016) ..................................18

*Perez v. United Parcel Serv., Inc.*,
  No. 21-16538, 2022 WL 3681297 (9th Cir. Aug. 25, 2022)....................................................10

*Peterson v. U.S. Bancorp Equip. Fin., Inc.*,
  No. C 10–0942 SBA, 2010 WL 2794359 (N.D. Cal. July 15, 2010).......................................12

*Smith v. Level 3 Commc'ns Inc.*,
  No. C 14–05036 WHA, 2014 WL 7463803 (N.D. Cal. Dec. 30, 2014) ..................................18

*Snap! Mobile, Inc. v. Croghan*,
  No. 18-CV-04686-LHK, 2019 WL 884177 (N.D. Cal. Feb. 22, 2019) .....................................7

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001)...............................................................................................7, 12

*State ex rel. State Lands Comm'n v. United States*,
  512 F. Supp. 36 (N.D. Cal. 1981) ..........................................................................................21

*Tonoyan v. W. Refin. Retail, LLC*,
  No. 2:19-cv-08728-AB (ASx), 2020 WL 13132899 (C.D. Cal. Feb. 5, 2020).........................10

*Washington v. Lowe's HIW Inc.*,
  75 F. Supp. 3d 1240 (N.D. Cal. 2014) ...........................................................................13, 14, 15

*Werner v. Advance Newhouse P'ship*,
  No. 1:13–cv–01259–LJO–JLT, 2013 WL 4487475 (E.D. Cal. Aug. 19, 2013) .......................17

*Whitaker v. Tesla Motors, Inc.*,
  985 F.3d 1173 (9th Cir. 2021)...................................................................................................7

1

**STATE CASES**

2

*Brennan v. Townsend & O'Leary Enters., Inc.,*
   199 Cal. App. 4th 1336 (2011)........................................................................13, 14

3

*Doe v. Dep't of Corr. & Rehab.,*
   43 Cal. App. 5th 721 (2019)..........................................................................12, 13

4

*Haberman v. Cengage Learning, Inc.,*
   180 Cal. App. 4th 365 (2009)....................................................................... 3, passim

5

6

*Hughes v. Pair,*
   46 Cal. 4th 1035 (2009).............................................................................. 3, passim

7

8

*Kelley v. Conco Cos.,*
   196 Cal. App. 4th 191 (2011).............................................................................13

9

10

*Lyle v. Warner Bros. Television Prods.,*
   38 Cal. 4th 264 (2006)............................................................................... 7, passim

11

12

*McCoy v. Pac. Mar. Ass'n,*
   216 Cal. App. 4th 283 (2013)..........................................................................11, 12

13

14

*Ortiz v. Dameron Hosp. Ass'n,*
   37 Cal. App. 5th 568 (2019)..............................................................................12

15

*People v. Toney,*
   32 Cal. 4th 228 (2004)...................................................................................15

16

17

*Phillips v. TLC Plumbing, Inc.,*
   172 Cal. App. 4th 1133 (2009)............................................................................19

18

*Trujillo v. N. Cnty. Transit Dist.,*
   63 Cal. App. 4th 280 (1998)..........................................................................20, 21

19

20

**STATE STATUTES**

21

Cal. Gov't Code § 12923......................................................................................9, 10

22

Cal. Lab. Code § 201.................................................................................1, 4, 17, 18

23

Cal. Lab. Code § 203....................................................................................4, 18

24

Cal. Lab. Code § 1197.5................................................................................ 1, passim

25

**FEDERAL RULES**

26

Fed. R. Civ. P. 12.................................................................................1, 7, 18

27

28

1

**OTHER AUTHORITIES**

2

Akash Sriram, *Canada's BlackBerry to Lay Off More Staff in Cost-Cutting Drive,*
REUTERS (Feb. 12, 2024) https://www.reuters.com/business/world-at-
work/canadas-blackberry-lay-off-more-staff-cost-cutting-drive-2024-02-13/ ...........................2

Press Release, Blackberry, *BlackBerry Provides Project Imperium Update and
Announces Intention to Separate Business Units*, BlackBerry (Oct. 4, 2023),
https://www.blackberry.com/us/en/company/newsroom/press-
releases/2023/blackberry-provides-project-imperium-update-and-announces-
intention-to-separate-business-units ...............................................................................2

Press Release, Blackberry, *BlackBerry Provides Update on Progress in Separation
of Divisions and Path to Profitability*, BlackBerry (Feb. 12, 2024)
https://www.blackberry.com/us/en/company/newsroom/press-
releases/2024/blackberry-provides-update-on-progress-in-separation-of-
divisions-and-path-to-profitability .................................................................................2

Stephanie Hughes et al., *BlackBerry Will Spin Off Internet of Things Business,
Aims to Unlock Value 'Being Masked' by Other Struggles*, FORTUNE (Oct. 5,
2023) https://fortune.com/2023/10/05/blackberry-to-spin-off-internet-of-things-
business-ipo/ ...................................................................................................................2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLEASE TAKE NOTICE** that on July 1, 2024, at 9:30 AM, or as soon thereafter as this Motion may be heard, before the Honorable Sallie Kim in Courtroom C, Defendants BLACKBERRY CORPORATION and JOHN GIAMATTEO will and hereby do move for an order dismissing Plaintiff's complaint in part and striking Plaintiff's complaint in part.  This Motion is based on the Notice of Motion and Memorandum of Points and Authorities, all papers on file, and any authority or argument presented in the reply and at any hearing.

## STATEMENT OF RELIEF SOUGHT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek dismissal of Plaintiff's second cause of action (for alleged discrimination in payment of wages in violation of Cal. Lab. Code § 1197.5), third cause of action (for alleged hostile work environment in violation of California's Fair Employment and Housing Act ("FEHA")), and seventh cause of action (for failure to promptly pay wages in violation of Cal. Lab. Code § 201).  Defendants also seek an order striking, pursuant to Federal Rule of Civil Procedure 12(f), all references to the hiring or training of Defendant John Giamatteo and all references to "harassment" and "discrimination" in Plaintiff's fourth cause of action (for failure to prevent harassment and retaliation in violation of FEHA).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In October 2023, Defendant BlackBerry announced a radical change to its corporate structure.  Approximately a decade prior, the company had been a global leader in smartphones with more than 17,000 employees worldwide, but in recent years BlackBerry had exited the cellphone market, contracted to around 3,000 employees, and focused primarily on two lines of products: Cybersecurity (software that guards against cyber attacks) and Internet of Things (foundational software in cars and other connected systems).  After months of consideration by the Board and consultation with advisors Morgan Stanley and Perella Weinberg Partners, BlackBerry announced in October 2023 that it would effectively split the company by creating two standalone

1   businesses, with a goal of pursuing a subsidiary initial public offering for the Internet of Things

2   ("IoT") business by September 2024.[1]

3         As part of the split, BlackBerry laid off more than 200 employees,[2] including three

4   members of its executive team.  One of the three was Plaintiff Jane Doe, who held a unique

5   position at BlackBerry that had been created for her by the company's former Executive Chairman

6   and CEO, John Chen, who announced his retirement in October 2023.  Plaintiff's position did not

7   fit into either the standalone Cybersecurity business or the standalone IoT business, and she was a

8   poor fit to be placed in a new or different role because she had engaged in a long-term pattern of

9   antagonistic and demeaning conduct toward colleagues, leading to a negative and toxic culture that

10  surrounded her.  For example, in the two months prior to Plaintiff being let go, a female employee

11  who reported to Plaintiff took medical leave to address mental health issues caused by Plaintiff's

12  abusive behavior, and another employee on Plaintiff's team quit on the spot when Plaintiff insisted

13  he work around the clock on a weekend to complete a project on an unrealistic timeline.  Although

14  a favorite of John Chen, who sponsored her rapid rise, Plaintiff alienated virtually all of her peers

15  through years of rude and divisive conduct.

16        In light of the elimination of Plaintiff's position and her habitual mistreatment of her

17  coworkers, BlackBerry decided to let Plaintiff go rather than find another place for her in the

18

19

20  ──────────────

[1] Press Release, Blackberry, BlackBerry Provides Project Imperium Update and Announces

21  Intention to Separate Business Units (Oct. 4, 2023), https://www.blackberry.com/us/en/company/
    newsroom/press-releases/2023/blackberry-provides-project-imperium-update-and-announces-

22  intention-to-separate-business-units; Stephanie Hughes, et al., *BlackBerry Will Spin Off Internet of
    Things Business, Aims to Unlock Value 'Being Masked' by Other Struggles*, FORTUNE (Oct. 5,

23  2023, 1:47 PM), https://fortune.com/2023/10/05/blackberry-to-spin-off-internet-of-things-
    business-ipo/.

24

25  [2] Press Release, Blackberry, BlackBerry Provides Update on Progress in Separation of Divisions
    and Path to Profitability (Feb. 12, 2024), https://www.blackberry.com/us/en/company/newsroom/

26  press-releases/2024/blackberry-provides-update-on-progress-in-separation-of-divisions-and-path-
    to-profitability (approximately 200 headcount reductions in fourth fiscal quarter, with additional

27  headcount reductions to follow); Akash Sriram, *Canada's BlackBerry to Lay Off More Staff in
    Cost-Cutting Drive*, REUTERS (Feb. 12, 2024), https://www.reuters.com/business/world-at-

28  work/canadas-blackberry-lay-off-more-staff-cost-cutting-drive-2024-02-13/.

1  company.  Although BlackBerry offered her the option to resign, she declined, and was terminated

2  in December 2023.  Complaint ¶ 65 (hereinafter "¶ _").

3        In this lawsuit, Plaintiff brings eight claims against BlackBerry for retaliation, wrongful

4  termination, failure to pay wages promptly, and other causes of action.  Plaintiff also brings two

5  claims—hostile work environment based on sex and discriminatory failure to pay wages—against

6  both BlackBerry and its current CEO, John Giamatteo, in his personal capacity.  While none of

7  Plaintiff's claims have merit, her claims for hostile work environment, discriminatory pay, and

8  failure to pay wages promptly fail at the outset because she has failed to plead facts that state a

9  claim for relief.

10        *First*, Plaintiff's claim of a hostile work environment fails because her allegations come

11  nowhere close to pleading the "pervasive" or "severe" conduct required to state a claim for sexual

12  harassment.  Plaintiff alleges only three incidents of inappropriate conduct: (i) alleged remarks by

13  Giamatteo about travelling with Plaintiff for work; (ii) a dinner where Giamatteo was allegedly

14  "overly friendly," but made no physical contact or inappropriate statements; and (iii) an alleged

15  self-deprecating joke by Giamatteo that, when out in public with his daughters, people think he is

16  on a date with them and that he is a "dirty old man."  These allegations are filled with falsehoods

17  and mischaracterizations, but even if they were true, such isolated incidents are not "severe

18  enough or sufficiently pervasive to alter the conditions of [Plaintiff's] employment and create a

19  work environment that qualifies as hostile or abusive to [Plaintiff] because of [her] sex." *Hughes*

20  *v. Pair*, 46 Cal. 4th 1035, 1043 (2009).

21        In the seminal case on sex-based hostile work environment claims, *Hughes v. Pair*, the

22  California Supreme Court held that conduct dramatically more egregious than what Plaintiff

23  alleges did *not* suffice to show pervasive or severe harassment.  *Id.* at 1040 (finding that

24  defendant's numerous sexual remarks to plaintiff, including that he would "get [her] on [her]

25  knees eventually" and "fuck [her] one way or another," did not establish a hostile environment).

26  Consistent with this precedent, lower courts have routinely rejected claims of a sexually hostile

27  work environment in cases with far more serious allegations.  *See, e.g.*, *Haberman v. Cengage*

28  *Learning, Inc.*, 180 Cal. App. 4th 365, 383–84 (2009) (numerous sexual jokes, remarks about

1   plaintiff's appearance, and explicit discussions of sex with plaintiff were insufficient to show

2   pervasive or severe harassment).

3         *Second*, Plaintiff's discriminatory pay claim against John Giamatteo and BlackBerry fails

4   because Giamatteo is an improper defendant and Plaintiff does not plead basic, essential facts,

5   such as her pay, title, role, experience, or responsibilities.  The California Labor Code creates

6   liability only for *employers*, not for individual employees like Giamatteo, so Plaintiff's

7   discriminatory pay claim against Giamatteo must be dismissed.  *See* Cal. Lab. Code § 1197.5

8   (providing that "[a]n employer" shall not engage in discriminatory pay).  Plaintiff's claim against

9   BlackBerry itself also fails because, although she alleges being paid less than Giamatteo when he

10  was President of BlackBerry's Cybersecurity division, she does not allege anything to establish

11  that the two of them performed substantially similar work.  Quite the opposite, Plaintiff admits she

12  had a "significantly smaller team than Giamatteo had supporting him." ¶ 25.

13        *Third*, Plaintiff fails to state a claim for failure to pay wages promptly under California

14  Labor Code Sections 201 and 203.  Much like for her discriminatory pay claim, Plaintiff asserts

15  only a bare, conclusory allegation that BlackBerry failed to pay wages she was owed at the time of

16  her termination.  ¶ 136.  Plaintiff makes "no factual allegations concerning 'when [s]he received

17  h[er] final paycheck, its amount, and the amount [s]he purportedly should have received,'" and her

18  claim should be dismissed.  *See Jacobs v. Sustainability Partners LLC*, No. 20-cv-01981-PJH,

19  2020 WL 5593200, at *12 (N.D. Cal. Sept. 18, 2020) (citation omitted) (dismissing claims under

20  §§ 201 and 203).

21        In addition to dismissing certain claims in their entirety, the Court should strike subparts of

22  two other claims that advance theories of liability Plaintiff has not properly pled.  Specifically, the

23  Court should strike Plaintiff's allegations regarding the *hiring* of John Giamatteo from Plaintiff's

24  claim for negligent hiring, firing, and retention, because any negligent hiring theory is barred by

25  the two-year statute of limitations.  The Court should also strike Plaintiff's allegations regarding

26  *harassment* and *discrimination* from Plaintiff's claim that BlackBerry failed to prevent

27  harassment, discrimination, and retaliation, because Plaintiff has not plausibly pled a single

28

1   instance of harassment or discrimination.  Striking these improper portions of Plaintiff's claims is

2   important to prevent unwarranted, expansive discovery that will delay resolution of this case.

3   **II.     SUMMARY OF ALLEGATIONS**

4        Defendant BlackBerry Corporation[3] ("BlackBerry") is one of the foremost cybersecurity

5   companies in the world, providing critical products and services to help businesses, government

6   agencies, and other safety-critical institutions secure their networks.  As a leader in the technology

7   sector, BlackBerry has shown a commitment to fostering a "diverse employee community [that] is

8   built on integrity, innovation, accountability, and respect," and to improving opportunities and

9   outcomes for women and other underrepresented populations working in tech.  ¶¶ 13–14.

10        Plaintiff Jane Doe is a former BlackBerry employee.  ¶ 15.  Throughout her tenure at

11   BlackBerry, Plaintiff alleges that her white male coworkers "continuously made it difficult for

12   [her] to complete her job and created a hostile work environment for her."  ¶ 19.  Nonetheless,

13   Plaintiff rapidly rose through the ranks and obtained a position on BlackBerry's executive

14   leadership team.  ¶¶ 1, 18.  Plaintiff acknowledges that she believed her career was supported by

15   two of the highest-ranking executives at BlackBerry: the former Executive Chairman and CEO,

16   John Chen, and the former Chief Human Resources Officer, Nita White-Ivy.  ¶ 21.

17        **A.     Sexual Harassment Allegations**

18        In October 2021, BlackBerry hired Defendant John Giamatteo to serve as President of the

19   Cybersecurity line of business ("Cyber Unit").  ¶ 24.  Plaintiff was leading a separate function

20   from Giamatteo outside of the Cyber Unit.  ¶¶ 36, 40 (noting that Plaintiff and Giamatteo worked

21   on separate teams).  Across more than two years of working together—from October 2021 to

22   December 2023—Plaintiff characterizes three incidents involving Giamatteo as sexual harassment.

23        Plaintiff first alleges that Giamatteo asked Plaintiff to begin reporting to him on the

24   rationale that it would allow them to travel together.  ¶ 27.  According to Plaintiff, she "politely

25

26

27   [3] BlackBerry Corporation is the principal United States subsidiary of BlackBerry Limited, a public
     company based in Ontario, Canada.  For purposes of this motion, Defendants refer to both
28   BlackBerry Corporation and BlackBerry Limited as "BlackBerry."

rejected" this request and explained to Giamatteo that she was not interested in changing her reporting structure.  *Id.*

Plaintiff's second allegation concerns a single after-work dinner she had with Giamatteo. Plaintiff alleges that Giamatteo was "overly friendly," treated the dinner like a "date," and attempted to "woo" and "get close" to her, such that it "did not come off as a professional dinner." ¶¶ 28–29.  Plaintiff does not describe any statements made by Giamatteo at the dinner or specify how he tried to "get close" to her, nor does she allege any physical contact with Giamatteo at the dinner or at any other time.  ¶ 29.

Plaintiff's third allegation is that, at an unspecified time, Giamatteo talked about his daughters, their age, and how they dressed, and joked that people think he is a "on a date" and a "dirty old man" when they go out together.  ¶ 30.

Plaintiff alleges that she discussed Giamatteo's conduct with the company's then-CEO, John Chen, and asked him to assure her that she would not have to travel alone with Giamatteo, to which Chen allegedly agreed.  ¶ 32.

### B.        Retaliation Allegations

Plaintiff alleges that Giamatteo began retaliating against her after she reported his conduct to Chen.  ¶ 34.  Among these allegations, Plaintiff claims that Giamatteo stopped inviting her to meetings, asked her to do presentations for him at meetings, failed to treat her as an executive, and took credit for her work.  ¶ 34.

The complaint further alleges that, in early 2022, Plaintiff reported to human resources that Giamatteo or his subordinates submitted an organizational chart to Plaintiff's customers that incorrectly showed her as reporting to Giamatteo.  ¶¶ 36–37.  BlackBerry investigated and concluded that the chart was factually incorrect, but that Plaintiff had not been treated differently based on her gender.  ¶ 38.  Plaintiff also alleges that she reported Giamatteo to human resources in early 2023 for alleged acts of retaliation, but not for any alleged sexual harassment.  ¶¶ 43, 54.

Plaintiff alleges that on November 30, 2023, she received an email to schedule a one-on-one meeting with BlackBerry's Interim CEO, Dick Lynch.  ¶ 64.  When the one-on-one meeting

1    occurred on December 4, 2023, Lynch informed Plaintiff that she was being terminated from

2    BlackBerry due to the company's restructuring.  ¶ 65.

3    **III.      LEGAL STANDARD**

4           To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual

5    matter . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662,

6    678 (2009) (internal quotation marks omitted).  This standard requires more than simply pleading

7    "labels and conclusions," and a "formulaic recitation of the elements of a cause of action will not

8    do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although the Court accepts all

9    allegations of material fact as true, *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th

10   Cir. 2013), it does not "accept as true allegations that are merely conclusory, unwarranted

11   deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979,

12   988 (9th Cir. 2001).  Plaintiffs may not rely on "anticipated discovery to satisfy" their pleading

13   obligations; "rather, pleadings must assert well-pleaded factual allegations to advance to

14   discovery."  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021).

15          Motions to strike are governed by Rule 12(f), which states that a court may strike from a

16   pleading "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12.  "A Rule

17   12(f) motion to strike serves to avoid the expenditure of time and money that must arise from

18   litigating spurious issues by dispensing with those issues prior to trial."  *Snap! Mobile, Inc. v.*

19   *Croghan*, No. 18-CV-04686-LHK, 2019 WL 884177, at *3 (N.D. Cal. Feb. 22, 2019) (internal

20   quotation marks omitted).

21   **IV.      ARGUMENT**

22          **A.      Plaintiff's Hostile Work Environment Claim Should Be Dismissed.**

23          Plaintiff's allegations fall far short of pleading the "pervasive" or "severe" conduct

24   necessary to pursue a claim of hostile work environment based on sex.  Under FEHA, such a claim

25   requires a plaintiff to show that she was "subjected to sexual advances, conduct, or comments that

26   were (1) unwelcome; (2) because of sex; and (3) sufficiently severe or pervasive to alter the

27   conditions of her employment and create an abusive work environment."  *Lyle v. Warner Bros.*

28   *Television Prods.*, 38 Cal. 4th 264, 278–79 (2006) (citations omitted).  Plaintiff's allegations do

1    not satisfy this standard.  Despite a litany of critiques about Giamatteo's character and conduct,

2    Plaintiff does not allege that he made physical contact with her, used explicit or vulgar language,

3    remarked on her appearance, propositioned her, or asked her out.  Instead, Plaintiff's harassment

4    claim boils down to three alleged incidents across more than two years, none of which were severe

5    even by Plaintiff's generalized, unspecific account.  Plaintiff's remaining allegations about

6    workplace slights by Giamatteo—such as failing to invite her to meetings—cannot plausibly be

7    alleged as motivated by Plaintiff's sex and therefore provide no support for her sexual harassment

8    claim.  Plaintiff's hostile work environment claim should be dismissed.

9            **1.       Plaintiff Fails to Allege Pervasive or Severe Harassment That Altered
                        the Conditions of Her Employment.**

10

11           In construing FEHA, the California Supreme Court has held that "the hostile work

12   environment form of sexual harassment is actionable only when the harassing behavior is

13   *pervasive* or *severe.*"  *Hughes*, 46 Cal. 4th at 1043 (emphasis in original).  Accordingly, "an[]

14   employee claiming harassment based upon a hostile work environment must demonstrate that the

15   conduct complained of was *severe enough* or *sufficiently pervasive* to alter the conditions of

16   employment and create a work environment that qualifies as hostile or abusive to employees

17   *because of their sex*."  *Lyle*, 38 Cal. 4th at 278–79 (emphasis in original).  "There is no recovery

18   for harassment that is occasional, isolated, sporadic, or trivial."  *Hughes*, 46 Cal. 4th at 1043

19   (internal quotation marks omitted).

20           *Hughes v. Pair* is instructive.  46 Cal. 4th 1035.  In *Hughes*, the plaintiff alleged having a

21   phone call with the defendant in which he called her "sweetie" and "honey" while making a string

22   of sexual remarks, including that he thought of plaintiff "in a special way, if you know what I

23   mean"; that "everyone always had a thing for [her]"; that plaintiff was "one of the most beautiful,

24   unattainable women in the world"; and that plaintiff should call his home phone number when she

25   was "ready to give [him] what [he] want[ed]."  *Id.* at 1040.  The defendant further said he would

26   make decisions in plaintiff's favor if she was "nice" to him and, when plaintiff said his comments

27   were crazy, responded: "How crazy do you want to get?"  *Id.*  Later that same day, the defendant

28

1    saw plaintiff and told her: "I'll get you on your knees eventually.  I'm going to fuck you one way

2    or another." *Id.*

3         The California Supreme Court held that this conduct was neither pervasive nor severe and

4    could not establish a sexual harassment claim.  "To be *pervasive*," the Supreme Court explained,

5    "the sexually harassing conduct must consist of 'more than a few isolated incidents.'" *Id.* at 1048

6    (emphasis in original) (citation omitted).  The Court then concluded that the defendant's

7    comments on the phone call, combined with the in-person encounter, did not qualify as pervasive.

8    *Id.*  The Court further held that, despite being "vulgar and highly offensive," the comment about

9    getting plaintiff "on [her] knees" did not constitute "severe" harassing conduct.  *Id.* at 1049.

10        Another informative comparison is *Haberman v. Cengage Learning, Inc.*, 180 Cal. App.

11   4th 365 (2009), in which the California Court of Appeal affirmed summary judgment for an

12   employer on a hostile environment claim based on thirteen alleged incidents of harassment.

13   Among other things, the plaintiff alleged that her male coworker joked in her presence about the

14   size of his penis; remarked that she was "pretty" and "'drop dead' gorgeous"; told her on the

15   phone while trailing her in his car that he was "coming right up behind her and it felt pretty good";

16   expressed interest in casual sex and asked on two occasions whether plaintiff had any friends who

17   just wanted to have sex; and asked plaintiff how she knew whether someone was "good in bed."

18   *Id.* at 383–84.

19        The Court of Appeal held that these "brief and isolated comments" over a two- to three-

20   year period "did not establish conduct sufficiently severe or pervasive as to alter [plaintiff's]

21   conditions of employment and create a work environment that qualifies as hostile or abusive to

22   [plaintiff] based on sex." *Id.* at 385–86.  The court noted that none of the allegations involved

23   physical contact or explicit language, and the male coworker did not proposition plaintiff or ask

24   her out on a date. *Id.* at 385.

25        In 2018, the California legislature amended FEHA to clarify aspects of the standard for

26   sexual harassment.  The amendment did not change the requirement that a plaintiff must allege

27   conduct that is pervasive or severe but instructed courts not to rely on a particular Ninth Circuit

28   decision "in determining what kind of conduct is sufficiently severe or pervasive to constitute a

violation of the California Fair Employment and Housing Act."  Cal. Gov't Code § 12923(b).  The amendment also provided that a "single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment" if the conduct "unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment."  *Id.* § 12923(a).

While the amendment expressly embraced the holdings of courts in two specified cases and rejected the holdings in two others, it did not disrupt or comment on *Lyle*, *Hughes*, or *Haberman*.  Those cases remain good law, and courts continue to rely on them to determine whether plaintiffs have pled conduct that is sufficiently pervasive or severe to constitute a sexually hostile work environment.  *See, e.g.*, *Perez v. United Parcel Serv., Inc.*, No. 21-16538, 2022 WL 3681297, at *4 (9th Cir. Aug. 25, 2022) (applying *Lyle* in affirming summary judgment for defendant where "no reasonable jury could find [defendant's] alleged harassment was sufficiently severe or pervasive to be actionable"); *Graves v. DJO, LLC*, No. 20-CV-1103 W (KSC), 2023 WL 3565077, at *17 (S.D. Cal. Mar. 30, 2023) (citing *Lyle* as the standard governing sexually hostile environment claims and granting summary judgment to defendant); *Noble v. Dorcy Inc.*, No. 2:19-cv-08646-ODW (JPRx), 2020 WL 4227295, at *4 (C.D. Cal. July 23, 2020) (citing *Lyle* and dismissing plaintiff's claim at the pleading stage for failure to allege sufficiently severe or pervasive conduct); *Tonoyan v. W. Refin. Retail, LLC*, No. 2:19-cv-08728-AB (ASx), 2020 WL 13132899, at *2 (C.D. Cal. Feb. 5, 2020) (citing *Haberman* and *Hughes* and dismissing plaintiff's sexual harassment claim at the pleading stage because he alleged "only isolated and sporadic off-hand comments by his coworkers"); *Godina v. Wells Fargo Bank, N.A.*, No. 5:18-cv-02641-RGK-KK, 2019 WL 7882370, at *5 (C.D. Cal. Nov. 22, 2019) (citing *Hughes* and granting summary judgment to defendant where plaintiff failed to show pervasive or severe conduct).

Here, Plaintiff has clearly failed to plead pervasive or severe harassment.  As for pervasiveness, Plaintiff alleges only three incidents across more than two years, and one of them— an alleged self-deprecating joke by Giamatteo about being seen as a "dirty old man" when out in public with his daughters—does not qualify as a comment made "because of" Plaintiff's sex.  *See Haberman*, 180 Cal. App. 4th at 384 (male employee's comment to customer that female plaintiff

MOTION TO DISMISS

1   "had five children with no father in the picture" was "not based on sex" and "not sexual in

2   nature").  But even if the alleged joke were part of the equation, Plaintiff's allegations could not

3   meet the standard for pervasiveness.  Applying *Haberman*, where the Court of Appeal held that

4   *eleven* instances of improper conduct (including several far more severe and explicit than anything

5   alleged against Giamatteo) over a three- to four-year period were not pervasive, Plaintiff cannot

6   possibly be said to have pled facts that constitute pervasive harassment.  Rather, the three

7   incidents alleged by Plaintiff are the type of "occasional, isolated, sporadic, or trivial" conduct that

8   is non-actionable under FEHA.  *See id.* at 385.  Indeed, another district court in California recently

9   concluded that "three alleged acts of harassment" over a 13-month period fell far short of

10   establishing "a pattern of continuous, pervasive harassment."  *Graves*, 2023 WL 3565077, at *17.

11       Plaintiff has also failed to allege any harassment that was severe.  For example, Plaintiff's

12   allegations that Giamatteo suggested traveling together and joked about being perceived as a

13   "dirty old man" are far more innocuous than comments the California Supreme Court held

14   insufficiently severe to support a hostile environment claim in *Hughes* ("I'm going to fuck you

15   one way or another") or remarks that numerous other courts have rejected as a basis for a hostile

16   environment claim.  *See, e.g.*, *McCoy v. Pac. Mar. Ass'n*, 216 Cal. App. 4th 283, 293 (2013)

17   (insufficient severity for hostile environment claim where employee made crude gestures toward

18   female coworkers and commented about their bodies, such as that one had a "J–Lo ass"); *Haley v.*

19   *Cohen & Steers Cap. Mgmt., Inc.*, 871 F. Supp. 2d 944, 957 (N.D. Cal. 2012) (same where male

20   employee asked plaintiff about her "break up sex" and whether it had been "hard enough to knock

21   the attitude out of her"); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1107 (9th Cir. 2000) (same where

22   supervisor described former female employees using terms like "madonna" and "castrating

23   bitch").

24       What's more, even by Plaintiff's telling, Giamatteo's alleged joke about being out in

25   public with his daughters did not mention or refer to Plaintiff in any way, and the California

26   Supreme Court has established an even higher bar for such "non-directed" conduct to qualify as

27   harassment.  *See Lyle*, 38 Cal. 4th at 284 ("[C]onduct that involves or is aimed at persons other

28   than the plaintiff is considered less offensive and severe than conduct that is directed at the

1   plaintiff.").  Applying this standard, Giamatteo's alleged joke is even less severe or offensive

2   because it neither involved nor was aimed at Plaintiff.  *See id.* at 287 (rejecting harassment claim

3   where sexual antics and discussions "were not aimed at plaintiff or any other female employee");

4   *McCoy*, 216 Cal. App. 4th at 294 (rejecting claim where comments involved "discussion of other

5   women's bodies outside their presence" and plaintiff "did not claim any sexual comment or

6   conduct was directed at her").

7           Plaintiff's allegations are also devoid of specific facts, which are necessary to plead

8   conduct that a reasonable person would view as severe.  The complaint ambiguously alleges that

9   Plaintiff's dinner with Giamatteo "did not come off as a professional dinner" because he was

10  "overly friendly," "treated it as a 'date,'" and "tried to get close to her" (¶¶ 29, 31), but fails to

11  specify a single statement Giamatteo made at the dinner or how, exactly, he attempted to "get

12  close" to her.  Indeed, it is unclear from the complaint whether Plaintiff accuses Giamatteo of

13  trying to "get close" to her physically versus interpersonally.  It is not sufficient for Plaintiff to

14  plead merely her *subjective* experience.  Rather, harassment must satisfy both a subjective *and*

15  *objective* standard to be actionable under California law, with the "objective severity of

16  harassment . . . judged from the perspective of a reasonable person in the plaintiff's position,

17  considering 'all the circumstances.'"  *Ortiz v. Dameron Hosp. Ass'n*, 37 Cal. App. 5th 568, 583

18  (2019) (citation omitted).

19          Plaintiff's conclusory allegations about how she interpreted conduct by Giamatteo, without

20  supplying specific facts to permit the Court to evaluate how a reasonable person would have

21  interpreted the conduct, fail to state a claim.  *See Sprewell*, 266 F.3d at 988 (on a motion to

22  dismiss, courts do not "accept as true allegations that are merely conclusory, unwarranted

23  deductions of fact, or unreasonable inferences"); *Hatfield v. DaVita Healthcare Partners, Inc.*, No.

24  C 13–5206 SBA, 2014 WL 2111237, at *6 (N.D. Cal. May 20, 2014) (dismissing FEHA claim

25  where plaintiff made "vague and conclusory allegations of harassment"); *Peterson v. U.S.*

26  *Bancorp Equip. Fin., Inc.*, No. C 10–0942 SBA, 2010 WL 2794359, at *3 (N.D. Cal. July 15,

27  2010) (dismissing hostile environment claim where plaintiff's allegations were "too vague and

28  conclusory to state a claim for sexual harassment").

1        In sum, Plaintiff does not allege that Giamatteo made physical contact with her, used

2    explicit language, propositioned her, or even asked her out on a date.  *Haberman*, 180 Cal. App.

3    4th at 386.  And even accepting as true that Plaintiff took exception to isolated comments or

4    conduct by Giamatteo over a two-year period, FEHA is "not a 'civility code'" and "does not

5    outlaw . . . conduct that merely offends."  *Lyle*, 38 Cal. 4th at 295; *Doe v. Dep't of Corr. &*

6    *Rehab.*, 43 Cal. App. 5th 721, 737 (2019) ("FEHA was not designed to make workplaces more

7    collegial; its purpose is to eliminate more insidious behavior like discrimination and harassment

8    based on protected characteristics.").  Because Plaintiff has not adequately pled pervasive or

9    severe conduct directed against her based on her sex, her hostile work environment claim must be

10   dismissed.

11                    **2.      Plaintiff's Remaining Allegations Are Not Sex- or Gender-Based and
                               Do Not Support a Hostile Environment Claim.**

12

13        Plaintiff alleges other conduct by Giamatteo, such as failing to invite her to meetings and

14   making negative remarks about her work performance, that were not based on sex or gender and

15   cannot support a claim for a sexually hostile work environment.  ¶¶ 34–35.  "The sine qua non of

16   any sexual harassment claim is that the plaintiff suffered discrimination *because of sex*."  *Kelley v.*

17   *Conco Cos.*, 196 Cal. App. 4th 191, 203 (2011) (emphasis added).  Hence, a plaintiff cannot

18   sustain a hostile environment claim by making allegations about "behavior that is not sexual at all

19   nor connected to sexual allegations."  *See Washington v. Lowe's HIW Inc.*, 75 F. Supp. 3d 1240,

20   1251–52 (N.D. Cal. 2014).  Because Plaintiff alleges ordinary workplace grievances against

21   Giamatteo that bear no relationship to her sex or gender, they provide no support for her hostile

22   work environment claim.

23        By Plaintiff's own account, Giamatteo allegedly began mistreating her at work because she

24   complained about him to BlackBerry's former CEO—not because she is a woman or for any

25   sexually-motivated purpose.  ¶ 34.  That distinction is exactly what separates retaliation claims

26   from sexual harassment claims.  The California Court of Appeal has recognized that acts of

27   retaliation taken after a plaintiff reports a sexual harassment claim do not automatically constitute

28   acts of harassment based on the plaintiff's sex.  *Brennan v. Townsend & O'Leary Enters., Inc.*,

1    199 Cal. App. 4th 1336, 1360 (2011).  Instead, a plaintiff must present evidence that any acts of

2    retaliation were taken *because of* her gender.  *See Lyle*, 38 Cal. 4th at 280 (plaintiff must plead

3    facts showing that "gender is a substantial factor in the discrimination").

4        Similar to the allegations here, the plaintiff in *Brennan* claimed she was excluded from

5    meetings and shunned in the workplace after reporting sexual harassment and that these retaliatory

6    acts constituted further evidence of sexual harassment.  199 Cal. App. 4th at 1360.  But the court

7    rejected that argument in part because plaintiff had acknowledged "that such acts of supposed

8    'retaliation' were in response to her pursuing legal action against the agency, not because of her

9    gender."  *Id.*  The same logic applies here.  Because Plaintiff alleges only acts of retaliation which

10   began as a response to her report to BlackBerry's former CEO and which are neither gender-based

11   nor sexual in nature, her allegations provide no support for a sexual harassment claim against

12   Giamatteo or the company.

13       The decision in *Haley* is instructive.  871 F. Supp. 2d at 957.  The plaintiff in *Haley*

14   brought a sexual harassment claim against her former employer, alleging that a supervisor

15   harassed her by asking her if she had had "break up sex" with her boyfriend and if it had been

16   "hard enough to knock the attitude out of her."  *Id.*  Plaintiff participated in a human resources

17   investigation about the incident, after which her supervisor allegedly retaliated against her by

18   humiliating her in group settings, threatening her with discipline, preventing her from transferring,

19   taking away assignments, and denying her commissions.  *Id.*  The court ruled in favor of the

20   employer on summary judgment.  In addition to finding that the supervisor's alleged comments

21   were not sufficiently severe to constitute gender-based harassment, the court also concluded that

22   plaintiff could not rely on the supervisor's actions after the alleged sexual harassment, such as his

23   "treatment of [her] on conference calls . . . and his decisions with respect to [her] transfer and

24   commission decisions," because such conduct did not constitute "harassment with respect to

25   plaintiff's gender."  *Id.* at 958.

26       In light of the required nexus in sexual harassment claims between the alleged conduct and

27   the plaintiff's sex or gender, courts routinely disregard allegations that are non-sexual and non-

28   gendered when evaluating whether a plaintiff has stated a harassment claim.  For example, the

MOTION TO DISMISS

plaintiff in *Haberman* accused her supervisor of saying he intended to bring his "guys" into the company, rejecting her travel reimbursement request, and placing her on a performance improvement plan.  The court of appeal held these alleged acts "did not constitute conduct based on sex or of a sexual nature."  *Haberman*, 180 Cal. App. 4th at 382.  Similarly, the court in *Washington* dismissed plaintiff's claims because most of her allegations "involve[d] behavior that is not sexual at all nor connected to sexual allegations."  *See Washington*, 75 F. Supp.3d at 1250–52 ("Most of her allegations are entirely non-sexual and non-discriminatory in nature, and amount to nothing more than ordinary workplace annoyances.").

This Court should likewise set aside allegations of non-sexual and non-gendered behavior in evaluating whether Plaintiff has pled a legally viable harassment claim.  She has not, and her harassment claim should be dismissed.

**B.     Plaintiff's Claim for Pay Discrimination Should Be Dismissed.**

Plaintiff has failed to state a claim that either Giamatteo or BlackBerry violated California's prohibition against discriminatory payment of wages based on sex.  California Labor Code section 1197.5 provides that "[a]n *employer* shall not pay any of its employees at wage rates less than the rates paid to employees of the opposite sex for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions."  Cal. Lab. Code § 1197.5 (emphasis added).  Because Giamatteo was Plaintiff's coworker, not her "employer," he cannot be personally liable for violations of section 1197.5, and Plaintiff's claim against him should be dismissed.  Plaintiff has separately failed to plead any facts showing that she and Giamatteo performed "substantially similar work" under "similar working conditions."  For this reason, Plaintiff's section 1197.5 claim against BlackBerry should also be dismissed.

**1.     Giamatteo Cannot Be Personally Liable for Alleged Pay Discrimination.**

Section 1197.5 prohibits "employer[s]" from engaging in pay discrimination on the basis of sex.  Cal. Lab. Code § 1197.5.  By its plain language, the statute does not create a cause of action against an individual employee like Giamatteo.  *People v. Toney*, 32 Cal. 4th 228, 232

(2004) (citation omitted) ("If the statutory language is unambiguous, '[the court] presumes the Legislature meant what it said.'").  Applying the statutory language, a court in the Northern District of California has likewise concluded that section 1197.5 claims may only be brought against employers, not individual employees.  *See Jones v. Thyssenkrupp Elevator*, No. C-05-3539 EMC, 2005 WL 8177458, at *11 (N.D. Cal. Dec. 22, 2005) (dismissing a section 1197.5 claim against an individual supervisor and holding that there is "no ambiguity" in the statutory language).

Indeed, even if there were circumstances where an employee could be held liable for violating section 1197.5, Plaintiff has not alleged any facts to show that Giamatteo is liable here. Unlike the plaintiff in *Jones*, Plaintiff alleges that Giamatteo was a fellow executive and not her supervisor.  ¶ 24; *see Jones*, 2005 WL 8177458, at *10 (holding that "individual supervisors who are not otherwise employers" cannot be liable under section 1197.5).  Plaintiff also does not allege that Giamatteo had any role in setting her pay.  There is no plausible basis on which he could be personally liable, and Plaintiff's claim against Giamatteo in his personal capacity should be dismissed without leave to amend.

### 2. Plaintiff Has Failed to Plead She Performed Substantially Similar Work to Giamatteo.

Plaintiff has also failed to state a section 1197.5 claim against BlackBerry because she does not plead facts showing that she and Giamatteo performed "substantially similar work" under "substantially similar working conditions."  The complaint notes that Giamatteo was President of the Cyber Unit (¶ 24), but the complaint does not specify Plaintiff's title, role, or level of skill and experience, nor does it allege that she held a role equivalent to an officer of the company like Giamatteo.  Rather, the complaint states that Plaintiff "held several positions in the executive team," maintained "executive level responsibility," and achieved "expanded success" based on financial metrics and customer and prospect engagement.  ¶¶ 15, 18, 25.  These general descriptions do not constitute "specific, factual allegations comparing the skill, effort, and responsibility required for the two positions."  *Banawis-Olila v. World Courier Ground, Inc*., No. 16-cv-00982-PJH, 2016 WL 4070133, at *3 (N.D. Cal. July 29, 2016) (internal quotation marks

1   omitted) (dismissing a plaintiff's section 1197.5 claim).  To the contrary, the limited facts alleged

2   in the complaint suggest that Plaintiff and Giamatteo occupied substantially different roles at

3   BlackBerry, as Plaintiff admits that she had "a significantly smaller team" supporting her, as

4   compared to Giamatteo.  ¶ 25.

5        Plaintiff's section 1197.5 claim also fails because she names Giamatteo as the sole male

6   comparator for her claim "without alleging facts to support such a limited comparison." *Davis v.*

7   *Inmar, Inc*., No. 21-cv-03779 SBA, 2022 WL 3722122, at *5 (N.D. Cal. Aug. 29, 2022).  In the

8   context of the federal Equal Pay Act of 1963, which is nearly identical to the California statute, the

9   Ninth Circuit has held that a plaintiff must provide multiple employees as comparators unless

10   there are no other opposite-gender employees performing similar work.  *See Hein v. Or. Coll. of*

11   *Educ*., 718 F.2d 910, 918 (9th Cir. 1983).  Indeed, the language of the federal Equal Pay Act and

12   the California statute both require comparison to "employees" (plural) of the opposite sex, which

13   allows the court to consider whether "plaintiff is receiving lower wages than the average of wages

14   paid to *all* employees of the opposite sex." *Id.* at 916 (emphasis added).  Plaintiff admits in her

15   complaint that she had multiple male coworkers besides Giamatteo, and she further alleges that

16   women were generally underrepresented at BlackBerry.  ¶¶ 19, 14.  Plaintiff's failure to compare

17   herself to more than "a single other employee" is reason alone to dismiss her disparate pay claim.

18   *See also Duke v. City Coll. of San Francisco*, No. 19-cv-06327-PJH, 2020 WL 512438, at *7

19   (N.D. Cal. Jan. 31, 2020) (dismissing a section 1197.5 claim because plaintiff provided only a

20   single comparator).

21        Plaintiff also cannot sustain a section 1197.5 claim by making "conclusory allegation[s]

22   parroting the statutory language." *Banawis-Olila*, 2016 WL 4070133, at *3.  Yet that is exactly

23   what Plaintiff has done.  The complaint alleges that Plaintiff "was not paid a wage rate equal to

24   Giamatteo, despite performing substantially similar work when viewed as a composite of skill,

25   effort, and responsibility," and that "Giamatteo was similarly situated . . . yet he received

26   substantially more pay, despite his poor performance." ¶¶ 86–87.  These statements are

27   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

28   statements," which "do not suffice" to state a claim for relief. *Iqbal*, 556 U.S. at 678; *Werner v.*

*Advance Newhouse P'ship*, No. 1:13–cv–01259–LJO–JLT, 2013 WL 4487475, at *5 (E.D. Cal. Aug. 19, 2013) (allegation that different employees are "similarly situated" is a legal conclusion not entitled to the presumption of truth). Because Plaintiff has failed to plead adequate facts comparing similarities between her work and Giamatteo's work, her section 1197.5 claim against BlackBerry should be dismissed.

**C.      Plaintiff's Claim for Failure to Pay Wages Should Be Dismissed.**

Plaintiff has failed to state a claim against BlackBerry for failure to pay wages promptly upon her termination. The relevant statute, California Labor Code section 201, provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a). Another provision, California Labor Code section 203, provides a penalty for employers who "willfully fail[] to pay" wages under section 201. Cal. Labor Code § 203(a). Plaintiff alleges no facts to suggest she had wages earned and unpaid at termination or that BlackBerry willfully failed to pay her those wages. Consequently, her section 201 and 203 claims should be dismissed.

Plaintiff merely recites the elements of section 201 in her complaint, alleging that BlackBerry "terminated [her] employment on December 15, 2023, yet [it] failed to pay [her] all due wages after her termination." ¶ 136. But Plaintiff cannot state a claim for relief by relying on conclusory allegations that mirror the statutory language. *Iqbal*, 556 U.S. at 678. Plaintiff has provided "no factual allegations concerning 'when [s]he received h[er] final paycheck, its amount, and the amount [s]he purportedly should have received.'" *Jacobs v. Sustainability Partners LLC*, 2020 WL 5593200, at *12 (N.D. Cal. Sept. 18, 2020) (citation omitted) (dismissing claims under §§ 201 and 203). Nor has Plaintiff made any "allegations as to a specific time period or amalgamation of hours worked for which [she] was not paid." *Id.*

Moreover, although Plaintiff demands all wages available to her under section 203, she "fails to allege sufficient facts demonstrating that defendants acted willfully." *Id.* Indeed, Plaintiff does not even attempt to allege, in a conclusory fashion or otherwise, that BlackBerry willfully failed to pay whatever unspecified amount was due. Altogether, Plaintiff has "fail[ed] to allege specific facts showing a willful refusal to pay wages after Plaintiff's termination." *Perez v.*

*Performance Food Grp., Inc.*, No. 15-cv-02390-HSG, 2016 WL 1161508, at *5 (N.D. Cal. Mar. 23, 2016); *see also Smith v. Level 3 Commc'ns Inc.*, No. C 14–05036 WHA, 2014 WL 7463803, at *3 (N.D. Cal. Dec. 30, 2014) ("To state a plausible claim under sections 201 and 203, a plaintiff must allege sufficient detail to plausibly show that the employer wilfully [sic] and intentionally withheld wages.").  Plaintiffs' section 201 and 203 claims should be dismissed.

### D.  Plaintiff's References to Negligent Hiring Should Be Stricken, Along with References to "Harassment" and "Discrimination" in Her Failure-to-Prevent Claim.

Pursuant to Rule 12(f), the Court should strike the "negligent hiring" portion of Plaintiff's sixth cause of action for negligent hiring, firing, and retention, as well as the "harassment" and "discrimination" portions of Plaintiff's fourth cause of action for failure to prevent harassment and retaliation.

### 1.  A Negligent Hiring Claim Is Time-Barred, So Allegations Related to Giamatteo's Hiring Should Be Stricken.

Plaintiff's sixth cause of action is a claim for negligent hiring, firing, and retention, but all allegations regarding the hiring aspect should be stricken because a negligent hiring action is plainly time-barred.  Under California law, negligent hiring claims are subject to a two-year statute of limitations.  *Freeney v. Bank of Am. Corp.*, No. CV 15-02376 MMM (PJWx), 2015 WL 12535021, at *36 (C.D. Cal. Nov. 19, 2015); *Huimin Song v. Cnty. of Santa Clara*, No. 5:11–CV–04450–EJD, 2013 WL 6225263, at *5 (N.D. Cal. Nov. 25, 2013) (dismissing a negligent hiring claim as barred by the two-year statute of limitations).  According to the complaint, BlackBerry hired Giamatteo in October 2021 (¶ 24), more than two years before Plaintiff filed the present lawsuit in April 2024.

Under California law, the two-year statute of limitations for negligent hiring starts running when the cause of action is complete with all its elements.  *See Lee v. Bank of Am., N.A.*, No. 21-cv-07231-JSC, 2022 WL 595877, at *3 (N.D. Cal. Feb. 28, 2022).  The elements of a negligent hiring claim are that of simple negligence: that BlackBerry had a legal duty to use reasonable care in hiring Giamatteo; that it breached that duty; and that there was proximate or legal cause

between BlackBerry's breach and Plaintiff's alleged injury. *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1139 (2009) (citation omitted).

According to the complaint, all of the elements of negligent hiring were satisfied in 2021, and thus the clock on Plaintiff's claim began running at that time. First, Plaintiff alleges that BlackBerry hired Giamatteo in October 2021 to be President of the Cyber business unit, at which time BlackBerry had a duty to use reasonable care. ¶ 24. Second, Plaintiff alleges that BlackBerry breached its duty of care in 2021 by negligently failing to investigate Giamatteo's background and failing to train him. ¶¶ 125, 129. Third, Plaintiff alleges she was injured in 2021 by BlackBerry's decision to hire Giamatteo because he allegedly started harassing her "[f]rom the beginning of when [he] became President of the Cyber B[usiness] U[nit]." ¶ 27. Accepting Plaintiff's allegations as true, any negligent hiring claim was completed with all of its elements— and hence the statute of limitations began running—in 2021. *See Daluise v. Mccauley*, No. 2:15-cv-02701-CAS-JEMx, 2015 WL 7573649, at *5 (C.D. Cal. Nov. 24, 2015) (claim for negligence accrues when a plaintiff has a reason to suspect a basis for her claim). The two-year limitations period for this claim expired in October 2023.

Because Plaintiff's claim for negligent hiring is time-barred, the Court should strike all references to alleged deficiencies in BlackBerry's hiring of Giamatteo, such as that BlackBerry did not investigate his background. Specifically, the following passages should be stricken from the complaint:

- The term "Hiring" in the caption to Plaintiff's sixth cause of action, which appears on page 24 of the complaint.

- "BLACKBERRY negligently failed to investigate the background of its employees." ¶ 128.

- The terms "investigated," "investigating," and "appointing" in paragraphs 129 and 131 of the complaint, in which Plaintiff alleges that BlackBerry negligently "*investigated*, *appointed*, retained, and supervised Giamatteo." ¶¶ 129–131 (emphasis added).

Striking these allegations will avoid costly discovery, including document production, interrogatories, and deposition testimony, about Giamatteo's hiring, all of which are needless and irrelevant because any negligent hiring claim is clearly time-barred.

1

2

       **2.**       **Plaintiff Has Not Properly Pled Any Harassment or Discrimination, So Her Allegation that BlackBerry Failed to Prevent Harassment or Discrimination Should Be Stricken.**

3           Plaintiff's fourth cause of action asserts a claim for failure to prevent harassment and

4  retaliation, but the "harassment" portion must be stricken because Plaintiff has failed to plausibly

5  plead that any harassment occurred.  To establish a claim for failure to prevent harassment or

6  retaliation, the plaintiff must first show that she was "subjected to discrimination, harassment or

7  retaliation." *Leland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal.

8  2008).  As discussed *supra*, Plaintiff has failed to state a claim for sexual harassment under FEHA.

9  Thus, her claim against BlackBerry for failure to prevent harassment necessarily fails as a matter

10  of law, and the Court should strike all references to it in the complaint.  *See Trujillo v. N. Cnty.*

11  *Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998) (holding that a plaintiff cannot recover on a failure

12  to prevent harassment claim "where there has been a specific factual finding that no such

13  discrimination or harassment actually occurred at the plaintiff's workplace").

14           Similarly, Plaintiff has failed to plead that she suffered any "discrimination" that

15  BlackBerry could be liable for having failed to prevent.  While Plaintiff does not caption her

16  fourth cause of action as a claim for failure to prevent discrimination, she nonetheless makes

17  numerous references to alleged discrimination in the paragraphs beneath the claim caption.  *See*

18  ¶ 104.  Plaintiff's only discrimination-related claim against BlackBerry is a section 1197.5 claim

19  for failure to pay equal wages.  Because she has failed to plead sufficient facts to support that

20  claim, as discussed *supra*, her references to BlackBerry's alleged failure to prevent discrimination

21  should be stricken.  *See Lewis v. ADP Tech. Servs., Inc.*, No. CV 23-2583-KK-PDx, 2024 WL

22  561861, at *5 (C.D. Cal. Jan. 30, 2024) (holding that Plaintiff could not sustain a failure to prevent

23  discrimination claim where her underlying discrimination claims, including one for pay

24  discrimination, failed).

25           Striking the terms "harassment" and "discrimination" from Plaintiff's fourth cause of

26  action will also promote judicial economy and "have the effect of . . . streamlining the ultimate

27  resolution of the action" by eliminating the need for discovery relating to those topics.  *State ex*

28  *rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981).

The following passages that reference BlackBerry's failure to prevent harassment or discrimination should be stricken from the Complaint:

- The term "Harassment" in the caption to Plaintiff's fourth cause of action, which appears on page 20 of the complaint.

- The following sentences, in full: "In violation of the FEHA, BLACKBERRY failed to take all reasonable steps necessary to prevent discrimination and harassment against its employees.  In perpetrating the above-described conduct, BLACKBERRY engaged in a pattern, practice, policy, and custom of unlawful discrimination.  Said conduct constituted a policy, practice, tradition, custom, and usage that denied PLAINTIFF protections of the FEHA.  At all relevant time periods, BLACKBERRY established a policy, custom, practice, or usage within the organization that condoned, encouraged, tolerated, sanctioned, ratified, approved of, and/or acquiesced in unlawful harassment and discrimination towards its employees including, but not limited to, PLAINTIFF."  ¶¶ 103–105.

- The following sentences, in full: "BLACKBERRY was put on notice that it might be committing harassment and discrimination in the workplace and/or was strictly liable for the discriminatory behaviors.  Once BLACKBERRY was put on notice that it might be committing discrimination in the workplace, it was a reasonable step to conduct a thorough investigation into whether there was harassment and discrimination in the workplace.  BLACKBERRY failed to take this reasonable step of conducting a thorough investigation into PLAINTIFF's complaint of harassment and retaliation in the workplace.  BLACKBERRY knew, or reasonably should have known, that the failure to provide any or adequate education, training, and information as to their personnel policies and practices regarding harassment and discrimination would result in retaliation.  Providing adequate education, training, and information as to their personnel policies and practices regarding harassment and discrimination was a reasonable step that BLACKBERRY could have taken, but did not take, to prevent harassment and discrimination in the workplace."  ¶¶ 106–107.

- The following sentence, in full: "The failure of BLACKBERRY to take the above-mentioned reasonable steps to prevent harassment and discrimination constituted deliberate indifference to the rights of its employees including, but not limited to, those of PLAINTIFF."  ¶ 108.

- The following sentence, in full: "The failure by BLACKBERRY to take all reasonable steps to prevent sexual harassment was a substantial factor in causing PLAINTIFF's harm, as described above."  ¶ 114.

- The italicized words of the following sentences: "Those who terminated *and/or otherwise discriminated against* and failed to prevent *harassment, discrimination, and* retaliation against PLAINTIFF were officers, directors, and/or managing agents who were vested with discretionary authority to make decisions affecting company policy regarding significant aspects of the company's business.  These officers, directors, and/or managing agents acted with malice in terminating *and/or otherwise discriminating against* PLAINTIFF and failing to prevent *harassment, discrimination, and* retaliation against her in that they did so *because of sexual harassment* despite knowing it was illegal to do so under the law, in conscious disregard of PLAINTIFF's rights.  Those officers, directors, and/or managing agents who terminated *and/or otherwise discriminated against* PLAINTIFF acted with malice."  ¶ 120.

1

## V.    <u>CONCLUSION</u>

2        For the above reasons, Defendants respectfully request that the Court (i) dismiss Plaintiff's

3    claims for hostile work environment, discriminatory pay, and failure to pay wages; and (ii) strike

4    Plaintiff's allegations regarding negligent hiring and failure to prevent harassment and

5    discrimination.

6

7

8    DATED:  June 3, 2024                MUNGER, TOLLES & OLSON LLP

9

10                                   By: _____

11                                        KATHERINE M. FORSTER

12                                   Attorneys for Defendants BLACKBERRY
                                     CORPORATION and JOHN GIAMATTEO
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28