1
2
3
4
5

Maria A. Bourn
Anthony Tartaglio
GOMERMAN | BOURN & ASSOCIATES
825 Van Ness Ave, Suite 502
San Francisco, CA 94109
Telephone: (415) 545-8608
Email: maria@gobolaw.com
      tony@gobolaw.com

6
7

Attorneys for Plaintiff
JANE DOE

8

## UNITED STATES DISTRICT COURT

9
10

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

JANE DOE, an individual,

           Plaintiff,

12

   vs.

13
14
15

BLACKBERRY CORPORATION; a
Delaware Corporation; and
JOHN GIAMATTEO; an individual,

16

        Defendants.

**Case No.: 3:24-cv-02002**

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO PARTIALLY
DISMISS AND STRIKE**

Date: July 22, 2024
Time 9:30 am
Judge: Hon. Sallie Kim

17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Allen v. Staples, Inc*., 84 Cal. App. 5th 188 (2002)...................................................9, 10

*Bass v. Great W. Sav. & Loan Assn*., 58 Cal. App. 3d (1976)......................................9

4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................3, 8

5

*Beltran v. Hard Rock Hotel Licensing, Inc*., 97 Cal. App. 5th 865 (2023)...............4, 6

*Caldera v. Dep't of Corr. & Rehab*., 25 Cal. App. 5th 31 (2018) .............................6

6

*Doe v. Cap. Cities*, 50 Cal. App. 4th (1996) .............................................................11

7

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)...........................................................10

8

*Fisher v. San Pedro Peninsula Hospital* 214 Cal.App.3d 590 (1989).....................5, 6

*Mokler v. County of Orange* 157 Cal.App.4th 121 (2007) .......................................6

9

*Perkins v. LinkedIn Corp*., 53 F. Supp. 3d 1190 (N.D. Cal. 2014)...........................3

10

*Thomas v. Regents of Univ. of California,* 97 Cal. App. 5th 587 (2023)...........7, 8, 9

11

### STATUES

12

Cal. Gov't Code § 12923 .....................................................................................4, 6, 7, 8

13

14

### RULES

CACI Jury Instruction 2524 .......................................................................................5

15

FRCP 8(a)(2) ................................................................................................................3

16

FRCP 8(d)(3) ................................................................................................................9

FRCP 9(b) ....................................................................................................................7

17

FRCP 12(f) ...................................................................................................................3

18

### SECONDARY SOURCES

19

Rule 12(f)), Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-G...............4

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS AND STRIKE

1

2

# <u>TABLE OF CONTENTS</u>

I.    PROCEDURAL LEGAL STANDARD ................................................................. 3

II.   ARGUMENT ..................................................................................................... 4

    A.   Plaintiff Has Adequately Pled Sexual Harassment and Discrimination ............................ 4

        1.   The Current Law on the "Severe and Pervasive" Requirement ....................................... 4

        2.   Plaintiff Has Met The "Severe and Pervasive" Standard................................................. 5

        3.   Defendants' Arguments are Unavailing........................................................................... 6

    B.   Plaintiff Has Pled Facts Showing Sex Discrimination in Pay............................................. 9

    C.   Plaintiff's "Final Paycheck" Claim ................................................................................... 11

    D.   Plaintiff is Not Pursuing a Negligent Hiring Theory of the Case ..................................... 11

    E.   The Court Should Not Strike Plaintiff's Harassment and Discrimination Allegations ..... 11

III.  CONCLUSION ................................................................................................. 11

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS AND STRIKE

Plaintiff Jane Doe alleges that Defendants Blackberry Corp. and its current CEO, John Giamatteo, subjected her to a long-running campaign of sexual discrimination and harassment. She also claims that she was fired in retaliation for reporting the sexual discrimination and harassment.

Cases like this are fact-intensive and typically not amenable to summary judgment. Discriminatory and retaliatory intent must typically be proven up through circumstantial evidence that must be weighed by the jury.

Plaintiff was therefore surprised to see that Defendants have filed a motion to dismiss several of Plaintiff's claims.  The motion-to-dismiss legal standard is a particularly favorable one for plaintiffs.  To survive the motion to dismiss, all Plaintiff has to do is allege facts that—if accepted as true—could make out a plausible prima facia case.  Plaintiff has done so here because she has alleged the following:

> ➤ "As PLAINTIFF's role expanded, she received pushback from white-male co-workers. These white-male co-workers were openly upset with PLAINTIFF receiving well-deserved promotions and recognition for her hard work. The white-male co-workers continuously made it difficult for PLAINTIFF to complete her job and created a hostile work environment for her." (Complaint at ¶ 19.)

> ➤ Plaintiff was required to work harder to get the same recognition as her male co-workers, such as Giamatteo.  (Complaint at ¶ 22) ("John G[iamatteo] comes in and gets the opportunity to prove himself, if something fails he still gets the benefit of the doubt. With myself, my voice is not taken seriously UNTIL I have proven results. It is more work for me to prove myself.")

> ➤ Giamatteo asked Plaintiff to work for him, for no legitimate business need, so that they could travel together.  (Complaint at ¶ 27.)  A reasonable woman could have interpreted this to mean that Giamatteo wished to make sexual overtures towards Plaintiff on business trips, where his misbehavior would be less likely to be discovered.

> ➤ Giamatteo conducted a business dinner with Plaintiff as if it were a date by being overly friendly with her and attempting to sit uncomfortably close to her.  He later talked about

1

how people think he is a "dirty old man" when his daughters go out to eat with him (as Plaintiff had done).  (Complaint at ¶¶ 29-30.)

➢    Giamatteo complained to the then-CEO that it was "offensive" to request that he attend collaborative meetings with Plaintiff.  (Complaint at ¶ 33.)  Plaintiff reasonably understood this to mean he found it offensive to force him to collaborate with a woman.

➢    Giamatteo stopped inviting Plaintiff to meetings she should have been invited to; if Giamatteo invited Plaintiff to meetings, he would invite her as a lower-level employee and ask her to do presentations for him; he failed to treat Plaintiff as an executive; he would make false claims to others alleging Plaintiff was not attending meetings when he did not invite her; he would then actively spread the false rumor to employees that Plaintiff was not a good collaborator when in fact he excluded her from being able to collaborate; he would take credit for Plaintiff's work; he would make disparaging comments about Plaintiff to others, including business partners; and Giamatteo started openly telling employees he wanted Plaintiff "out" and he was working on getting Plaintiff "out." (Complaint at ¶ 34.)

➢    Giamatteo threatened Plaintiff, saying if she "is not nice to him, he has a large network and could impact her career."  (Complaint at ¶ 35.)

➢    Giamatteo or one of his subordinates sent an organizational chart to Plaintiff's customers indicating (incorrectly) that she was subordinate to him, which demeaned and humiliated Plaintiff and sowed doubt and suspicion among her customers.  (Complaint at ¶ 36.) Giamatteo then refused to correct the problem.  (*Id.* at ¶ 37.)

➢    Giamatteo took credit for Plaintiff's work and then when confronted about it, denied it.  (Complaint at ¶ 40.)

➢    As a result of Giamatteo's harassment, Plaintiff was forced to spend extra time and effort to avoid being sabotaged by Giamatteo.  (Complaint at ¶ 41.)

➢    Plaintiff was fired around the same time Giamatteo became CEO.  (Complaint at ¶ 65.)  Plaintiff believes that Giamatteo orchestrated her firing.  (Discovery will help confirm who made the decision.)

1    Contrary to Defendants' arguments, therefore, this is not a case involving boilerplate,

2  conclusory allegations such as "Giamatteo discriminated against Plaintiff based on her sex."

3  Plaintiff has pled many specific facts that, if true and viewed in their totality, state a claim for

4  sexual harassment and discrimination.

5    At trial, Defendants will have the opportunity to challenge Plaintiff's factual allegations.

6  Now is not the time for such a challenge, however.  The Court must therefore deny the partial

7  motion to dismiss.

8    In its motion to dismiss, Defendants attempt to slime Plaintiff by accusing her of creating

9  a "negative and toxic culture" and being "rude and divisive."  (ECF No. 10 at 8.)  These unsworn

10  allegations have no place in a motion to dismiss because they are extraneous to the complaint.

11  *See, e.g., Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1203–04 (N.D. Cal. 2014) ("The Court

12  generally may not look beyond the four corners of a complaint in ruling on a Rule 12(b)(6)

13  motion, with the exception of documents incorporated into the complaint by reference, and any

14  relevant matters subject to judicial notice.")  Accordingly, rather than distracting the Court with

15  arguments irrelevant to the pending motion, Plaintiff will respond to these allegations at a later,

16  proper time.

17  **I.    PROCEDURAL LEGAL STANDARD**

18    "A pleading that states a claim for relief must contain . . . a short and plain statement of

19  the claim showing that the pleader is entitled to relief."  FRCP 8(a)(2). "[S]tating such a claim

20  requires a complaint with enough factual matter (taken as true) to suggest that" the elements of a

21  claim could be met.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "Asking for

22  plausible grounds to infer [the elements] does not impose a probability requirement at the pleading

23  stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal

24  evidence of illegal [conduct]."  *Id.*  "[A] well-pleaded complaint may proceed even if it strikes a

25  savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and

26  unlikely."  *Id.* (quotation omitted).

27    "The court may strike from a pleading an insufficient defense or any redundant,

28  immaterial, impertinent, or scandalous matter."  FRCP 12(f).  "Despite the functions they serve,

3

1   motions to strike are regarded with disfavor because they are often used as a delaying tactic, and

2   because of the policy favoring resolution on the merits."  G. Motion to Strike (Rule 12(f)), Rutter

3   Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-G.  "Regardless of whether prejudice is

4   technically required, most motions to strike will be denied unless the moving party makes some

5   showing of prejudice."  *Id.*

6   **II.     ARGUMENT**

7         **A.     Plaintiff Has Adequately Pled Sexual Harassment and Discrimination**

8               **1.     The Current Law on the "Severe and Pervasive" Requirement**

9       Although courts have long held that sexual harassment must be "severe and pervasive" to

10  be actionable, a recent statute clarified this requirement.  The statute was codified at Cal. Gov't

11  Code § 12923.  "The Legislature hereby declares that harassment creates a hostile, offensive,

12  oppressive, or intimidating work environment and deprives victims of their statutory right to work

13  in a place free of discrimination when the harassing conduct sufficiently offends, humiliates,

14  distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the

15  workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and

16  undermine the victim's personal sense of well-being."  Cal. Gov't Code § 12923(a).  "The plaintiff

17  need not prove that her productivity suffered: she need only prove that 'the harassment so altered

18  working conditions as to make it more difficult to do the job.'"  *Id.*

19      The statute also clarified that "[a] single incident of harassing conduct is sufficient to

20  create a triable issue regarding the existence of a hostile work environment if the harassing

21  conduct has unreasonably interfered with the plaintiff's work performance or created an

22  intimidating, hostile, or offensive working environment."  Cal. Gov't Code § 12923(b).

23      The statute further declared that "[h]arassment cases are rarely appropriate for disposition

24  on summary judgment."  Cal. Gov't Code § 12923(e).

25      "Prior to 2019, [the 'severe and pervasive'] requirement was quite a high bar for plaintiffs

26  to clear, even in the context of a motion for summary judgment."  *Beltran v. Hard Rock Hotel*

27  *Licensing, Inc.*, 97 Cal. App. 5th 865, 878 (2023), review filed (Jan. 16, 2024).  Now, however, the

28  Court should be wary about relying on pre-2020 case law.  *Id.* at 880 ("The trial court relied

heavily on case law decided before section 12923 was adopted. This failed to take into account several key principles . . . ."); CACI Jury Instruction 2524, Directions for Use ("In determining what constitutes 'sufficiently pervasive' harassment, the courts have held that acts of harassment cannot be occasional, isolated, sporadic, or trivial. (*See Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 610 [262Cal.Rptr. 842].) Whether this limitation remains in light of Government Code section 12923 is not clear.")

### 2.    Plaintiff Has Met The "Severe and Pervasive" Standard

Plaintiff pled many specific, non-conclusory facts that—if true—would constitute severe and pervasive harassment.  (*See* Complaint at ¶ 19) (Plaintiff received pushback from white-male co-workers who continuously made it difficult for her to complete her job and created a hostile work environment for her); (*Id.* at ¶ 22) (Plaintiff was required to work harder to get the same recognition as her male co-workers, such as Giamatteo); (*Id.* at ¶ 27) (Giamatteo asked Plaintiff to work for him so that they could travel together); (*Id.* at ¶¶ 29-30) (Giamatteo conducted a business dinner with Plaintiff as if it were a date by being overly friendly with her; attempting to sit uncomfortably close to her; and later talking about how people think he is a "dirty old man" when his daughters go out to eat with him (as Plaintiff had done)); (*Id.* at ¶ 33) (Giamatteo complained to the then-CEO that it was "offensive" to request that he attend collaborative meetings with Plaintiff, which he would not have said if Plaintiff were male); (*Id.* at ¶ 34) (Giamatteo stopped inviting Plaintiff to meetings she should have been invited to; if Giamatteo invited Plaintiff to meetings, he would invite her as a lower-level employee and ask her to do presentations for him; he failed to treat Plaintiff as an executive; he would make false claims to others alleging Plaintiff was not attending meetings when he did not invite her; he would then actively spread the false rumor to employees that Plaintiff was not a good collaborator when in fact he excluded her from being able to collaborate; he would take credit for Plaintiff's work; he would make disparaging comments about Plaintiff to others, including business partners; and Giamatteo started openly telling employees he wanted Plaintiff "out" and he was working on getting Plaintiff "out."); (*Id.* at ¶ 35) (Giamatteo threatened Plaintiff, saying if she "is not nice to him, he has a large network and could impact her career."); (*Id.* at ¶¶ 36-37) (Giamatteo or one of his subordinates sent an

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS AND STRIKE

1    organizational chart to Plaintiff's customers indicating (incorrectly) that she was subordinate to

2    him and then refused to correct the problem); (*Id.* at ¶ 40) (Giamatteo took credit for Plaintiff's

3    work and then when confronted about it, denied it); (*Id.* at ¶ 41) (As a result of Giamatteo's

4    harassment, Plaintiff was forced to spend extra time and effort to avoid being sabotaged by

5    Giamatteo); (*Id.* at ¶ 65) (Plaintiff was fired around the same time Giamatteo became CEO).

6         Although Defendants might try to argue that a particular incident was not egregious, the

7    Court must analyze Giamatteo's course of conduct as a whole, under the totality of the

8    circumstances.  *Caldera v. Dep't of Corr. & Rehab.*, 25 Cal. App. 5th 31, 38 (2018) ("As to

9    whether the alleged conduct is sufficiently severe or pervasive, a jury is to consider the totality of

10   circumstances.") When the Court does so, it should conclude that Plaintiff has pled ample facts

11   demonstrating that Giamatteo "offend[ed], humiliate[d], distresse[d], or intrude[d] upon its victim,

12   so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to

13   perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of

14   well-being."  *See* Cal. Gov't Code § 12923(a).

15              **3.**       **Defendants' Arguments are Unavailing**

16        The Court should reject all of Defendants' arguments.  For example, Defendants argue

17   that "Plaintiff's harassment claim boils down to three alleged incidents across more than two

18   years." (ECF No. 10 at 14.)  That assertion is not correct, as Plaintiff alleged a continual course of

19   harassment and listed a few non-exhaustive examples merely to help illustrate the harassment.

20   And, in any event, there is no rule stating that Plaintiff must plead more than three incidents of

21   harassment.  *See* Gov't Code § 12923(b) ("A single incident of harassing conduct is sufficient to

22   create a triable issue regarding the existence of a hostile work environment if the harassing

23   conduct has unreasonably interfered with the plaintiff's work performance or created an

24   intimidating, hostile, or offensive working environment."); *see also Beltran,* 97 Cal. App. 5th at

25   880 ("Instead, the trial court relied on older cases that did not take these principles into account,

26   such as *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 68 Cal.Rptr.3d 568, where the

27   court concluded that three incidents of harassment over five weeks was not severe and pervasive,

28   and *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 609, 262 Cal.Rptr. 842,

6

1    which stated that 'plaintiff must show a concerted pattern of harassment of a repeated, routine or a

2    generalized nature.' These cases are no longer good law when it comes to determining what

3    conduct creates a hostile work environment in the context of a motion for summary judgment or

4    adjudication.".)

5        Defendants also appear to argue that Plaintiff must prove—at the pleading stage—that

6    Giamatteo was motivated to harass Plaintiff because she is a woman.  (ECF No. 10 at 14)

7    ("Plaintiff's remaining allegations about workplace slights by Giamatteo—such as failing to invite

8    her to meetings—cannot plausibly be alleged as motivated by Plaintiff's sex . . .")  But a

9    defendant's mental state may be (and usually is) inferred from circumstantial evidence.  And, in

10   any event, Plaintiff is not required to prove up Defendants' mental states at the pleading stage,

11   before discovery has even begun.  Even in fraud cases—where the pleading standard is more

12   stringent than the one here—"[m]alice, intent, knowledge, and other conditions of a person's mind

13   may be alleged generally."  FRCP (9)(b); *see also Thomas v. Regents of Univ. of California,* 97

14   Cal. App. 5th 587, 614, (2023), reh'g denied (Dec. 29, 2023), review denied (Feb. 28, 2024)

15   ("Because the intent and motivation behind McGuire's boorish treatment of his student soccer

16   players are uniquely within his knowledge, Thomas was not required to allege these matters with

17   particularity.")

18       Defendants spend quite a bit of time in their motion discussing cases enacted before the

19   passage of Cal. Gov't Code § 12923(e).  As discussed previously, the precedential value of these

20   cases is now dubious.  That is particularly so in this context, at the pleading stage, because the

21   Legislature has explicitly discouraged courts from dismissing harassment claims through pre-trial

22   motion practice.  Cal. Gov't Code § 12923(e) ("Harassment cases are rarely appropriate for

23   disposition on summary judgment.")  In support of their assertion that the cases they cite are still

24   good law, Defendants cite a string of unpublished Federal opinions.  (ECF No. 10 at 16.)  When

25   interpreting California law, however, the Court must focus its analysis on the text of the statute

26   itself, which is not ambiguous.

27       When Defendants argue that Giamatteo's alleged conduct was not "severe," Defendants

28   make two serious errors.  First, they analyze each incident in isolation, rather than assessing

7

1   Giamatteo's course of conduct as a whole.  *See, e.g.*, ECF No. 10 at 17 (arguing that the alleged

2   joking about his daughters was not severe).  Second, they rely on case law that is now dubious in

3   light of Gov't Code § 12923.  *See id.*  Defendants do not properly focus on the applicable legal

4   standard, which is codified at Gov't Code § 12923(a).[1]

5          Defendants' argument that "Plaintiff's allegations are also devoid of specific facts"

6   misunderstands the legal standard for motions to dismiss.  To be sure, had Plaintiff pled only that

7   "Giamatteo harassed me," that would have been insufficient.  *See Twombly*, 550 U.S. at 555 ("[A]

8   formulaic recitation of the elements of a cause of action will not do.")  But Plaintiff pled many

9   facts in support of her causes of action, as discussed previously in the Introduction.  And although

10  Plaintiff is required to plead facts, those facts do not need to be detailed.  *Id.* (noting that a

11  complaint "does not need detailed factual allegations" to survive a motion to dismiss.)

12         Defendants argue that "a plaintiff cannot sustain a hostile environment claim by making

13  allegations about behavior that is not sexual at all nor connected to sexual allegations."  (ECF No.

14  10 at 19) (quotation omitted).  The Court must reject any argument that sexual harassment must be

15  lewd and lascivious.  "Sexually harassing conduct need not be motivated by sexual desire."  Cal.

16  Gov't Code § 12940(j)(4)(C); *Thomas*, 97 Cal. App. 5th at 609 ("The plaintiff must show that the

17  harassing conduct took place because of the plaintiff's sex, but need not show that the conduct was

18  motivated by sexual desire.") (quotation omitted).  And here, Plaintiff has alleged that Giamatteo

19  harassed and undermined her because Plaintiff was a woman who refused to submit to him and

20  conform to sexist stereotypes about docility and obedience.  Had she been a man, none of this

21  would have happened.  Accordingly, she has adequately pled sexual harassment.  *See Thomas*, 97

22  Cal. App. 5th at 609 ("For example, a female plaintiff can prevail by showing that the harassment

23  was because of the defendant's bias against women or that an employer created a hostile work

24

25  ─────────────────

26  [1] "The Legislature hereby declares that harassment creates a hostile, offensive, oppressive, or
    intimidating work environment and deprives victims of their statutory right to work in a place free
    of discrimination when the harassing conduct sufficiently offends, humiliates, distresses, or

27  intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace,
    affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine

28  the victim's personal sense of well-being."

1   environment because the employer feels important or powerful while humiliating women.")

2   (quotations omitted).

3          Defendants seem to argue that an adverse action cannot be both retaliatory and harassing.

4   (ECF No. 10 at 19-20) (apparently arguing that because actions were retaliatory, they cannot also

5   be harassing).  But Giamatteo could have had multiple unlawful motivations for his actions.  And,

6   in any event, at the pleading stage, Plaintiff is allowed to plead multiple theories of the case, even

7   if they are inconsistent with each other.  FRCP 8(d)(3) ("A party may state as many separate

8   claims or defenses as it has, regardless of consistency.")

9          Defendants contend that "courts routinely disregard allegations that are non-sexual and

10  non-gendered when evaluating whether a plaintiff has stated a harassment claim."  (Motion at 20.)

11  This argument is not consistent with the current case law:

12              The defendants argue (and the trial court concluded) that they do not allege
13              pervasive *sexual* harassment because the alleged conduct and comments were not
                of a sexual or hostile gender-based nature. We disagree. As we have explained,
14              there is no legal requirement that hostile acts be overtly sex- or gender-specific in
                content, whether marked by language, by sex or gender stereotypes, or by sexual
15              overtures. Even with no express reference to sex or gender, harassment creating a
                hostile environment may constitute sexual harassment if the plaintiff can prove she
16              would not have been treated in the same manner if she were a man.

17  *Thomas*, 97 Cal. App. 5th 587 at 612–13 (quotations and citations omitted).

18          **B.       Plaintiff Has Pled Facts Showing Sex Discrimination in Pay**

19          Plaintiff has pled facts indicating that she was paid less for doing work substantially

20  similar to the work that Giamatteo performed.[2]

21          To prove a prima facie case of wage discrimination, "a plaintiff must establish that, based

22  on gender, the employer pays different wages to employees doing substantially similar work under

23  substantially similar conditions."  *Allen v. Staples, Inc*., 84 Cal. App. 5th 188, 194 (2022).  A

24  California opinion has held that even a complaint that "is not a model of pleading" is sufficient to

25  withstand a demurrer.  *See Bass v. Great W. Sav. & Loan Assn*., 58 Cal. App. 3d 770, 773–74, (Ct.

26  App. 1976) ("Although the second cause of action is not a model of pleading and although

27  _____

28  [2] Plaintiff does not oppose the request to dismiss the Equal Pay Act claim against Giamatteo, so
    long as the claim against Blackberry survives.

9

1    patently it seeks to recover sums far in excess of those for which appellant is entitled to bring suit

2    under section 1197.5, it does make a decisive allegation that respondent paid more compensation

3    to its male salesmen who are no more qualified than appellant for substantially the same work

4    performed by appellant.")

5        Plaintiff held several positions on the executive team, (ECF No. 1 at ¶¶ 15 & 18), and her

6    primary job duties encompassed sales, marketing, and customer retention.  (*Id*. at ¶ 25)

7    ("PLAINTIFF's metrics demonstrated expanded success which included, but was not limited to,

8    achieving exceptional double digit billings growth, closing multiple large multi-year deals, and

9    delivering record customer and prospect engagement . . . .")  Before becoming CEO, Giamatteo

10    was the head of the Cyber Security Business Unit.  (*Id*. at ¶ 25.)  Accordingly, both Plaintiff and

11    Giamatteo were executive-level employees tasked with growing Blackberry's business.

12        To be sure, their job duties were not identical.  But their job duties are not required to be

13    identical—they just need to be "substantially similar."  And here, they were.  Both employees

14    were executives within Blackberry, were tasked with developing customer relationships to grow

15    the business, and reported to the CEO.

16        Defendants suggest that Plaintiff is required to allege multiple comparators.  (ECF No. 10

17    at 23.)  But a recent California published opinion, when analyzing the analogous Federal statute,

18    held the opposite:

19
20
> Authorities under the federal EPA have held that a plaintiff claiming gender-based
> pay disparity may establish a prima facie case by showing that she was paid less in
> salary than a single male comparator. (*See Dubowsky v. Stern, Lavinthal,*
> *Norgaard & Daly* (1996) 922 F.Supp. 985, 990 ["[The p]laintiff need only
> establish that she was paid differentially because of her sex with respect to a single
> male employee to prove her [federal] EPA claim. [Citations.]".) Thus, plaintiff's
> evidence—that she was paid $22,000 less in base salary than Narlock as an ASM
> and $48,000 less in base salary than him as a FSD—was sufficient to carry her
> initial burden on her EPA claim and shift to Staples the burden of showing there
> was no triable issue of fact on one of the four exceptions to that claim.

21
22
23
24
25    *Allen v. Staples, Inc*., 84 Cal. App. 5th 188, 194–95 (2022).  And because this is a diversity suit,

26    California case law must guide the Court's analysis on matters of substance (as opposed to

27    procedure).  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 79–80 (1938).

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS AND STRIKE

1     **C.**     **Plaintiff's "Final Paycheck" Claim**

2     Plaintiff has pled that when she was terminated, Blackberry did not pay out the money it

3 owed her.  (Complaint at Seventh Cause of Action.)  After the motion to dismiss was filed, the

4 parties met and conferred about this issue.  As a result of these meet-and-confer efforts, Plaintiff

5 has decided to voluntarily dismiss the Seventh Cause of Action.  Accordingly, Plaintiff does not

6 oppose Defendants' request to dismiss the Seventh Cause of Action.

7     **D.**     **Plaintiff is Not Pursuing a Negligent Hiring Theory of the Case**

8     Defendants move the Court to strike the "negligent hiring" portion of the sixth cause of

9 action, which is for negligent hiring, firing, and retention. (Motion at 19.)  Defendants are

10 apparently not challenging the negligent firing and retention portions of this cause of action. *Cf.*

11 *Doe v. Cap. Cities*, 50 Cal. App. 4th 1038, 1054 (1996) ("California case law recognizes the

12 theory that an employer can be liable to a third person for negligently hiring, supervising, or

13 retaining an unfit employee.")  Plaintiff is not actually challenging the decision to hire Giamatteo

14 in 2021.  She is challenging the decision to retain and promote him after Plaintiff informed

15 Blackberry of his misconduct.  It therefore appears that Defendants are moving to strike

16 superfluous verbiage, rather than a legal theory that Plaintiff is actually pursuing.  Plaintiff

17 therefore does not oppose this request to strike, although there seems to be nothing to be gained by

18 striking the phrase "negligent hiring" from the Complaint.  The clarification that Plaintiff makes

19 here should be sufficient to address Defendants' concerns as to this issue.

20     **E.**     **The Court Should Not Strike Plaintiff's Harassment and Discrimination**

21  **Allegations**

22     Defendants ask the Court to strike references to "discrimination" and "harassment" in the

23 Complaint.  (ECF No. 10 at 27.)  As previously explained, however, Plaintiff has pled facts

24 demonstrating discrimination and harassment.  The request to strike is therefore improper.

25 **III.**    **CONCLUSION**

26     For these reasons, the Court should deny the partial motion to dismiss.

27

28

1    Dated: June 24, 2024                    GOMERMAN | BOURN & ASSOCIATES

2

3                                      By:    _/s/ Anthony Tartaglio_____
                                             Anthony Tartaglio
4                                            Attorney for Plaintiff
                                             JANE DOE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS AND STRIKE