1    KATHERINE M. FORSTER (State Bar No. 217609)
Katherine.Forster@mto.com
2    CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
3    LAUREN N. BECK (State Bar No. 343375)
Lauren.Beck@mto.com
4    KYRA E. SCHOONOVER (State Bar No. 343166)
Kyra.Schoonover@mto.com
5    MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
6    Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
7    Facsimile:    (213) 687-3702

8    Attorneys for Defendants BLACKBERRY
CORPORATION and JOHN GIAMATTEO
9

10                  **UNITED STATES DISTRICT COURT**

11              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEELAM SANDHU, an individual, | Case No. 3:24-cv-02002 |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND MOTION TO STRIKE** |
| vs. | |
| BLACKBERRY CORPORATION; a Delaware Corporation; and JOHN GIAMATTEO; an individual, | Hearing Date:    November 18, 2024<br>Time:    9:30 AM<br>Place:    Courtroom C<br>Judge:    Sallie Kim |
| Defendants. | |

1

**TABLE OF CONTENTS**

**Page**

2

3  I.    INTRODUCTION.................................................................................................1

4  II.   ARGUMENT ......................................................................................................3

5        A.   Plaintiff Has Failed to Plead a Plausible Claim for Sex Harassment. .......................3

6             1.   Plaintiff Has Not Pled Severe or Pervasive Harassment Under the
                   Governing Case Law. .........................................................................................4

7

8             2.   Plaintiff Cannot Rely on Vague and Conclusory Allegations to Plead
                   a Sex Harassment Claim. ...................................................................................5

9             3.   Plaintiff's Newly Alleged Facts Do Not Cure Her Failure to Allege
                   Severe or Pervasive Conduct..............................................................................7

10

11            4.   Plaintiff Has Not Pled That Her Ordinary, Workplace Grievances
                   Occurred "Because of" Sex................................................................................10

12       B.   Plaintiff Has Not Pled Facts Showing Sex Discrimination in Pay............................12

13       C.   Plaintiffs' Claims Should Be Dismissed with Prejudice. ........................................15

14       D.   The Court Should Strike Plaintiff's Harassment Allegations from Her
                Fourth Cause of Action, Along with References to Unequal Pay in Her

15              Discrimination Claim. ..........................................................................................15

16  III.  CONCLUSION ................................................................................................15

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
      556 U.S. 662 (2009) ...............................................................................................6, 7

*Austin v. Univ. of Oregon*,
      925 F.3d 1133 (9th Cir. 2019)..............................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
      550 U.S. 544 (2007) ....................................................................................................1

*Doe By & Through Doe v. Petaluma City Sch. Dist.*,
      949 F. Supp. 1415 (N.D. Cal. 1996) ...........................................................................10

*Duke v. City Coll. of San Francisco*,
      445 F. Supp. 3d 216 (N.D. Cal. 2020) ..................................................................3, 14

*Freyd v. Univ. of Oregon*,
      990 F.3d 1211 (9th Cir. 2021)...............................................................................3, 14

*Graves v. DJO, LLC*,
      No. 20-CV-1103 W (KSC), 2023 WL 3565077 (S.D. Cal. Mar. 30, 2023) ................9

*Hatfield v. DaVita Healthcare Partners, Inc.*,
      No. C 13-5206 SBA, 2014 WL 2111237 (N.D. Cal. May 20, 2014)...........................6

*Lazy Y Ranch Ltd. v. Behrens*,
      546 F.3d 580 (9th Cir. 2008)......................................................................................13

*Peterson v. U.S. Bancorp Equip. Fin., Inc.*,
      No. C 10-0942 SBA, 2010 WL 2794359 (N.D. Cal. July 15, 2010) ...........................6

*Space Data Corp. v. X*,
      No. 16-CV-03260-BLF, 2017 WL 11503233 (N.D. Cal. Sept. 25, 2017)...................4

*Sprewell v. Golden State Warriors*,
      266 F.3d 979 (9th Cir. 2001)........................................................................................7

*Tomkins v. Publ. Serv. Elec. & Gas Co.*,
      568 F.2d 1044 (3d Cir. 1977)..................................................................................2, 12

*Whitaker v. Tesla Motors, Inc.*,
      985 F.3d 1173 (9th Cir. 2021)....................................................................................15

Case No. 3:24-cv-02002
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

**STATE CASES**

*Accardi v. Superior Court*,
    17 Cal. App. 4th 341 (1993)....................................................................................2, 11, 12

*Bailey v. San Francisco District Attorney's Office*,
    16 Cal. 5th 611 (2024)...........................................................................................................9

*Haberman v. Cengage Learning, Inc.*,
    180 Cal. App. 4th 365 (2009)..................................................................................... passim

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009)...........................................................................................1, 4, 5, 9

*Lyle v. Warner Bros. Television Prods.*,
    38 Cal. 4th 264 (2006).......................................................................................................4, 5

*Ortiz v. Dameron Hosp. Ass'n*,
    37 Cal. App. 5th 568 (2019).................................................................................................7

*Thomas v. Regents of Univ. of Cal.*,
    97 Cal. App. 5th 587 (2023).................................................................................................5

**STATE STATUTES**

Cal. Gov't Code § 12940(j)..........................................................................................................2

Cal. Gov't Code § 12923.......................................................................................................1, 3, 5

Cal. Lab. Code § 1197.5...............................................................................................3, 13, 14, 15

**FEDERAL RULES**

Fed. R. Civ. Proc. 8(a)(2)............................................................................................................6

**FEDERAL REGULATIONS**

29 C.F.R. § 1620.15(a)...............................................................................................................13

29 C.F.R. § 1620.17(a)...............................................................................................................13

**OTHER AUTHORITIES**

BlackBerry Executive Team Web Page,
    https://www.blackberry.com/us/en/company/ leadership, as accessed by the
    Wayback Machine for December 7, 2023.
    https://web.archive.org/web/20231207140955/https://www.blackberry.com/us
    /en/company/leadership...................................................................................................3

## I.     INTRODUCTION

Plaintiff's Opposition fails to engage with the Court's prior ruling or the binding authorities on which it relied.  Indeed, Plaintiff does not cite the Court's prior ruling even once in her Opposition—and her First Amended Complaint ("FAC") fails to resolve the deficiencies that the Court's prior order identified.

First, Plaintiff copies-and-pastes allegations from the FAC and summarily asserts that they are sufficient to constitute severe or pervasive sex harassment.  But Plaintiff once again fails to address—or even cite—the leading California authorities on FEHA sex harassment claims, including *Hughes v. Pair*, 46 Cal. 4th 1035 (2009) and *Haberman v. Cengage Learning, Inc.*, 180 Cal. App. 4th 365 (2009)—both cases relied upon in the Court's order dismissing Plaintiff's original complaint.  *See* ECF No. 31 at 13–14.  Instead, Plaintiff re-advances an erroneous theory that California Government Code section 12923 abrogated every FEHA sex harassment case decided prior to 2019.  The Court already rejected that argument, ruling that *Hughes*, *Haberman*, and other pre-2019 cases "retain their precedential value to the extent not abrogated by Cal. Govt. Code § 12923."  *Id.* at 13.

Next, Plaintiff asserts that new, general allegations characterizing John Giamatteo's body language and tone of voice suffice to survive the pleading stage because those characteristics "cannot be easily summarized in writing."  ECF No. 38 at 10.  That is not the law in federal court.  The Supreme Court has made clear that "[a] plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  Considered without any of the conclusory labels Plaintiff has added, the new facts alleged in the FAC—including that Giamatteo "arrived at the dinner in different clothing," smelled of aftershave, and "made prolonged eye contact throughout the dinner," ECF No. 34 (hereinafter "¶ __") at ¶ 40—still rise nowhere near the level of severity that the California Supreme Court rejected as *insufficient* to state a hostile environment claim in *Hughes*.  *See* ECF No. 31 at 13 (relying on *Hughes*'s holding that a defendant's sexual remarks to plaintiff, including that he would "get [her] on [her] knees eventually" and "fuck [her] one way or another," did not establish a hostile environment).

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1    Plaintiff also urges the Court to consider her allegations of ordinary, nonsexual workplace

2  friction as support for her FEHA claim.  For the first time, she attempts to frame her claim as

3  "gender harassment" and argues that Defendants have "seem[ed] to confuse [it] with sexual

4  harassment."  ECF No. 38 at 8.  In reality, gender harassment and sexual harassment are both

5  forms of harassment on the basis of sex under FEHA, and both require a plaintiff to show that the

6  harassing conduct took place "because of" sex or gender.  Cal. Gov't Code § 12940(j).

7  Defendants have never suggested that Plaintiff must plead facts regarding unwelcome sexual

8  conduct, such as lewd acts or sexual advances.  Defendants have maintained only that she must

9  plead what FEHA requires: facts demonstrating that the alleged harassment took place *because of*

10  her sex.  Plaintiff has failed to do so, and her Opposition fails to engage with the Ninth Circuit and

11  district court case law (cited in Defendants' motion) that holds that a plaintiff may not plead a sex

12  harassment claim by offering only conclusory assertions that conduct was tied to her sex.  *See*

13  ECF No. 37 at 16–17.

14    Plaintiff's reliance on *Accardi v. Superior Court*—a case involving a female police officer

15  who was subjected to continuous, overt acts of sexual harassment for over a decade—in particular

16  gets her no further.  17 Cal. App. 4th 341 (1993), *as modified on denial of reh'g* (Aug. 20, 1993).

17  *Accardi* stands for a proposition Defendants have not disputed:  Sexual harassment can be based

18  on non-sexual workplace conduct, as long as a plaintiff has *also* pled facts establishing that the

19  conduct occurred *because of her sex.  See id.* at 348 ("To plead a cause of action for this type of

20  sexual harassment, it is 'only necessary to show that gender is a substantial factor in the

21  discrimination, and that if the plaintiff had been a man she would not have been treated in the

22  same manner.'" (quoting *Tomkins v. Publ. Serv. Elec. & Gas Co.*, 568 F.2d 1044, 1047 n.4 (3d

23  Cir. 1977))).  That is the showing Plaintiff has failed to make under the federal standard.  *See* ECF

24  No. 37 at 15–17.

25    *Accardi*, moreover, highlights the inadequacy of Plaintiff's allegations.  In *Accardi*, the

26  court found that non-sexual conduct was part of a campaign of sexual harassment where a plaintiff

27  had been subjected to years of facially gendered statements and abuse.  *See Accardi*, 17 Cal. App.

28  at 351; *see also id.* at 346 (highlighting that plaintiff's male coworkers made "statements that her

-2-
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1 | baton was only useful to perform sex acts," "spread[] rumors that she had slept with superior

2 | officers in order to receive favorable assignments," and "admitt[ed] to her that there were double

3 | standards and t[old] her she must live with them").  Only in combination with a litany of overt

4 | sex-based hostility did the court agree that *other* workplace acts committed against the plaintiff,

5 | including unsubstantiated complaints about her performance and untrue rumors about her abilities,

6 | were plausibly related to her sex.  *Id.* at 350–51.  In contrast, Plaintiff has failed to assert any

7 | plausible, specific allegations of sex-based statements or conduct to pair with her laundry list of

8 | alleged workplace grievances.

9 |      Plaintiff's discriminatory pay claim likewise fails.  As Defendants argued, Plaintiff must

10 | plead facts showing that she performed "substantially similar work" as her male colleagues at

11 | BlackBerry "when viewed as a composite of skill, effort, and responsibility."  Cal. Lab. Code

12 | § 1197.5.  Plaintiff has failed to allege any facts suggesting that her job required similar skill and

13 | responsibility as the company's two Presidents, Giamatteo and Mattias Eriksson.  To the contrary,

14 | the documents that Plaintiff attached to the FAC confirm that she occupied a lower-level role

15 | requiring a substantially different level of skill and responsibility than a company President.[1]  *See*

16 | ECF No. 38 at 12–13 (first citing *Freyd v. Univ. of Oregon*, 990 F.3d 1211 (9th Cir. 2021)

17 | (comparing plaintiff with other tenured professors in the Psychology Department); and then citing

18 | *Duke v. City Coll. of San Francisco*, 445 F. Supp. 3d 216, 230 (N.D. Cal. 2020) (comparing

19 | plaintiff with other associate vice chancellors of student affairs)).

20 | **II.**    **ARGUMENT**

21 |      **A.**    **Plaintiff Has Failed to Plead a Plausible Claim for Sex Harassment.**

22 |      Plaintiff makes several flawed arguments in opposing the dismissal of her sexual

23 | harassment claim.  *First*, Plaintiff incorrectly claims that a statement of legislative intent passed in

24 |

25 | [1] *See* BlackBerry Executive Team Web Page, https://www.blackberry.com/us/en/company/
leadership, as accessed by the Wayback Machine for December 7, 2023.

26 | https://web.archive.org/web/20231207140955/https://www.blackberry.com/us

27 | /en/company/leadership (hereinafter "BlackBerry Executive Team Web Page"); *see also* ECF No.
34 at 6 nn.1–3 (citing same).  The BlackBerry Executive Team Web Page is attached to

28 | Defendants' Motion as Appendix A.  *See* ECF No. 37, app. A.

1    2019, Cal. Gov't Code § 12923, changed the pleading standard for severe or pervasive

2    harassment—an argument this Court has already rejected.  *Second*, Plaintiff erroneously asserts

3    that the FAC's allegations about Giamatteo's demeanor survive the federal pleading standard.

4    *Third*, Plaintiff falsely asserts that she has pled severe or pervasive conduct under the "totality of

5    circumstances," despite the fact that she has not pled incidents that might meet that standard, even

6    when taken together.  ECF No. 38 at 10.  *Finally*, Plaintiff falsely claims that everyday workplace

7    grievances can support a sexual harassment claim, even though Plaintiff has not pled any facts

8    tying that alleged conduct to her sex.[2]  In doing so, Plaintiff declines to engage with Ninth Circuit

9    and district court case law, cited in Defendants' motion, holding that conclusory allegations that

10   conduct is tied to sex do not suffice under the federal pleading standard to convert ordinary

11   workplace slights to sexual harassment.

12

13                    **1.        Plaintiff Has Not Pled Severe or Pervasive Harassment Under the
                                   Governing Case Law.**

14         Plaintiff's Opposition fails to engage with the leading California authorities on FEHA

15   sexual harassment claims—including the California Supreme Court's holdings in *Lyle* and

16   *Hughes*, and the California Court of Appeal's holding in *Haberman*.  Those cases make it clear

17   that Plaintiff's allegations do not meet the "severe or pervasive" element required to state a sexual

18   harassment claim.  *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 278–79 (2006)

19   (plaintiff must show she was "subjected to sexual advances, conduct, or comments that were (1)

20   unwelcome; (2) because of sex; and (3) sufficiently severe or pervasive to alter the conditions of

21   her employment and create an abusive work environment" (citations omitted)); *see also Hughes*,

22   _____

23   [2] Plaintiff asks the Court to disregard a paragraph in Defendants' Motion that discusses facts not in
     the FAC.  ECF No. 38 at 4.  Defendants do not ask the Court to consider those facts in deciding
24   this Motion or to accept them as true.  Rather, Defendants included the paragraph to provide brief
     context about the case.
25
     Plaintiff also asks the Court to disregard the redline attached to Defendants' Motion.  ECF No. 38
26   at 4–5.  Defendants provided the redline solely for the Court's ease of reference in evaluating
     amendments to the FAC.  *See, e.g.*, *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL
27   11503233, at *2 (N.D. Cal. Sept. 25, 2017) (noting that plaintiff filed a redlined comparison of the
28   second amended complaint and third amended complaint).

1  46 Cal. 4th at 1040, 1043 (three isolated sexual remarks, including the statement defendant would

2  "get [plaintiff] on [her] knees eventually" and "fuck [her] one way or another," were insufficient

3  to constitute sex harassment); *Haberman*, 180 Cal. App. 4th at 383–84 (numerous sexual jokes,

4  remarks about plaintiff's appearance, and explicit discussions of sex with plaintiff were

5  insufficient to show pervasive or severe harassment).

6        Recognizing she cannot prevail under these authorities, Plaintiff ignores them and recycles

7  an argument that section 12923 effectively overruled all pre-2020 authorities. *See, e.g.*, ECF No.

8  38 at 7 (summarizing "[t]he [c]urrent [l]aw on the '[s]evere and [p]ervasive' [r]equirement" and

9  citing only section 12923); *id.* (warning the Court "to be wary about relying on pre-2020 case

10  law"). But the Court already rejected Plaintiff's argument in ruling on Defendants' prior motion

11  to dismiss, holding that, "[w]hile Plaintiff is correct about the shift in California law, insofar as it

12  clarifies the statute generally . . . this legislative clarification did not alter the law on how courts

13  are to interpret 'severity' or 'perv[asiv]eness' of alleged conduct. Thus, cases preceding the 2019

14  amendment retain their precedential value to the extent not abrogated by Cal. Govt. Code §

15  12923." ECF No. 31 at 12–13. With good reason: California courts have continued to rely on

16  *Hughes*, *Lyle*, and *Haberman* as governing law since the 2019 amendments took effect—including

17  in ruling on motions to dismiss.[3] As Defendants explained in prior briefing on this issue, even

18  *Thomas v. Regents of University of California*, a 2023 case on which Plaintiff has relied

19  extensively in her briefing, applied both *Lyle* and *Hughes* for its substantive analysis of sexual

20  harassment. *See Thomas v. Regents of Univ. of Cal.*, 97 Cal. App. 5th 587, 608 (2023), *reh'g*

21  *denied* (Dec. 29, 2023), *review denied* (Feb. 28, 2024); *see also* ECF No. 26 at 6–7 (discussing

22  same). Plaintiff's failure to respond to Defendants' arguments applying *Lyle* and *Hughes* is

23  telling—she has not pled severe or pervasive harassment under those cases.

24

          **2.**      **Plaintiff Cannot Rely on Vague and Conclusory Allegations to Plead a**
25                     **Sex Harassment Claim.**

26        The Court previously dismissed Plaintiff's sex harassment claim because she had advanced

27

28  [3] Defendants previously provided a long list of such cases. *See* ECF No. 26 at 14 n.3.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1  "a multitude of bald assertions of legal conclusions, as well as vague allegations." ECF No. 31 at

2  15. Yet Plaintiff's Opposition erroneously suggests that she can rely on *additional* vague and

3  conclusory allegations about Giamatteo's demeanor—such as that "his tone of voice had sexual

4  undertones," ¶ 40—to plead a sex harassment claim. Plaintiff's arguments misapprehend the

5  pleading standard in federal court.

6       Plaintiff first argues that Defendants are "demand[ing] a level of specificity not required by

7  the law," because Federal Rule of Civil Procedure 8(a)(2) states that a complaint requires only a

8  "short and plain" statement of a claim. ECF No. 38 at 10. But it is well-settled that a plaintiff

9  cannot state a claim for relief by pleading "labels and conclusions," or "naked assertions" devoid

10 of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

11 Courts routinely dismiss claims where, as here, a complaint relies on "vague and conclusory

12 allegations of harassment" that are not based on articulable facts. *See Hatfield v. DaVita*

13 *Healthcare Partners, Inc.*, No. C 13–5206 SBA, 2014 WL 2111237, at *6 (N.D. Cal. May 20,

14 2014) (dismissing FEHA claim where plaintiff made "vague and conclusory allegations of

15 harassment"); *Peterson v. U.S. Bancorp Equip. Fin., Inc.*, No. C 10–0942 SBA, 2010 WL

16 2794359, at *3 (N.D. Cal. July 15, 2010) (dismissing hostile environment claim where plaintiff's

17 allegations were "too vague and conclusory to state a claim for sexual harassment").

18      Plaintiff has alleged a multitude of vague and conclusory statements about Giamatteo's

19 behavior, often labeling it as "sexual" or "suggestive," without providing "salient fact[s]" to back

20 up those descriptions. *See* ECF No. 31 at 15. For example, Plaintiff alleges again that Giamatteo

21 asked her to work for him and travel together. ¶ 39. She has added in the FAC that his "tone was

22 sexually suggestive" and it was an "unwelcome exchange which made [her] very uncomfortable."

23 *Id.* But these do not constitute *facts* about anything Giamatteo said or did that could plausibly

24 constitute sexual harassment. Plaintiff's allegations follow this same script throughout the FAC.

25 When describing the one-on-one dinner she attended with Giamatteo, Plaintiff alleges that "his

26 behaviors exhibited sexual undertones"; "his body language was sexually suggestive"; and his

27 "tone of voice had sexual undertones." ¶ 40. Again, these are not facts: They are conclusory

28 labels that add little substance, if any, to Plaintiff's allegations.

1      Plaintiff also contends that she could not easily summarize Giamatteo's "subtle gestures

2  and vocal inflections" in writing, and therefore a jury should be allowed to decide whether his

3  behavior was "benign or sinister." ECF No. 38 at 10. But that argument ignores that allegations

4  in federal court "must contain sufficient factual matter . . . to state a claim to relief that is plausible

5  on its face." *Iqbal*, 556 U.S. at 678. Federal courts do not "accept as true allegations that are

6  merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v.*

7  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

8      Plaintiff also ignores that sex harassment must be both subjectively and *objectively* severe

9  to be actionable. It is not sufficient for Plaintiff to plead her subjective experience, such as that

10  her exchanges with Giamatteo were "unwelcome" or made her "uncomfortable." Harassment

11  must satisfy both a subjective and an objective standard, with the "objective severity of

12  harassment . . . judged from the perspective of a reasonable person in the plaintiff's position,

13  considering all the circumstances." *Ortiz v. Dameron Hosp. Ass'n*, 37 Cal. App. 5th 568, 583

14  (2019) (internal quotation marks and citation omitted). Plaintiff's vague and conclusory

15  allegations do not plausibly show objective severity.

16
17           **3.      Plaintiff's Newly Alleged Facts Do Not Cure Her Failure to Allege
                       Severe or Pervasive Conduct.**

18      In its order granting Defendants' motion to dismiss Plaintiff's prior complaint, the Court

19  found that Plaintiff had alleged only "three sets of allegations that could relate to a claim for

20  hostile work environment" and that those incidents, "either individually or taken together, do not

21  allege behavior that is severe or pervasive." *See* ECF No. 31 at 14.[4] In the FAC, Plaintiff has

22  added only one entirely new allegation: that Giamatteo allegedly "inappropriately touched" an

23

24  [4] The Court identified the three allegations as follows: First, that "Giamatteo asked Plaintiff to
    work for him and did not give Plaintiff a 'business reason' as to why"; Second, that "Giamatteo

25  had invited Plaintiff to dinner and attempted to 'woo' her"; And third, that Giamatteo was "overly
    friendly" during the dinner and made a comment about himself being perceived as a "dirty old

26  man" when out with his daughters. *See* ECF No. 31 at 14; *see also* ¶ 39 (Giamatteo's alleged
    comment about traveling with Plaintiff for work), ¶¶ 40–41 (the alleged after-work dinner between

27  Giamatteo and Plaintiff), ¶ 41 (Giamatteo's alleged joke about how he is perceived when in public

28  with his daughters.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1    unidentified woman in an unspecified way at an unspecified BlackBerry event on an unspecified

2    date.[5]  *See* ¶ 93.  Plaintiff has also added the allegation that, when Giamatteo allegedly told

3    Plaintiff he had a large network and could impact her career if she was not nice to him, Giamatteo

4    allegedly "emphasized the word 'nice' in a manner that was sexually suggestive."  ¶ 44.[6]  None of

5    these five incidents could plausibly be characterized as sexual harassment, and none cure her

6    failure to allege pervasive or severe harassment.

7         Plaintiff claims in her Opposition that Defendants erred by "analyzing incidents in

8    isolation, rather than as a whole."  ECF No. 38 at 9.  Plaintiff also claims that she is "not required

9    to plead a particular number of incidents of harassment" to demonstrate either severity or

10   pervasiveness because only one incident can suffice.  *Id*.  Both arguments are inconsistent with the

11   weight of precedent and with the Court's analysis in assessing Plaintiff's initial complaint.

12        Contrary to Plaintiff's claims, courts routinely count and analyze the number of incidents

13   of alleged harassment to determine whether conduct is pervasive or severe.  In *Haberman*, for

14   example, the court counted that plaintiff had alleged thirteen incidents of harassment against her

15   male coworker.  Among these incidents, the plaintiff alleged that her coworker joked in her

16   presence about the size of his penis; remarked that she was "pretty" and "'drop dead' gorgeous";

17   told her on the phone while trailing her in his car that he was "coming right up behind her and it

18   felt pretty good"; expressed interest in casual sex and asked on two occasions whether plaintiff

19   had any friends who just wanted to have sex; and asked plaintiff how she knew whether someone

20   was "good in bed."  180 Cal. App. 4th at 383–84.  The court concluded that these "brief and

21   isolated" comments over a two- to three-year period did not establish conduct sufficiently severe

22

23   [5] As Defendants stated in their Motion, this allegation is so non-specific that it must be
     disregarded.  *See* ECF No. 37 at 13–14.  Plaintiff has failed to explain how she became aware of
24   this incident or how it allegedly contributed to a hostile work environment for her.  Plaintiff also
     does not address this allegation or Defendants' discussion about it in her Opposition.

25

26   [6] Plaintiff's initial complaint alleged that Giamatteo had told Plaintiff he had a large network and
     could impact her career if she was not nice to him, but did not include the additional claim that he
27   "emphasized the word 'nice' in a manner that was sexually suggestive."  *Compare* ECF No. 1 at ¶
     35 *with* FAC at ¶ 44.  Therefore, the Court's prior order did not identify the one-on-one meeting as
28   one of Plaintiff's allegations that could relate to hostile work environment.  *See* ECF No. 31 at 14.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1   or pervasive to sustain a sex harassment claim. *Id.* at 385. Other courts have followed the same

2   conceptual approach. *See Graves v. DJO, LLC,* No. 20-CV-1103 W (KSC), 2023 WL 3565077, at

3   *17 (S.D. Cal. Mar. 30, 2023) (holding that "three alleged acts of harassment" over a 13-month

4   period fell far short of establishing "a pattern of continuous, pervasive harassment"). Indeed, it is

5   difficult to imagine how a court could determine whether conduct was pervasive without

6   evaluating how often it occurred.

7          It is true, as Plaintiff argues, that a single incident of harassing conduct *can* be sufficiently

8   severe to state a claim for sex harassment. But none of the incidents in Plaintiff's complaint rise

9   to that level. The case Plaintiff cites to demonstrate a single actionable incident of harassment,

10  *Bailey v. San Francisco District Attorney's Office*, 16 Cal. 5th 611 (2024), is remarkably

11  distinguishable. *Bailey* involved an African-American plaintiff who alleged that her coworker

12  called her the N-word. *Id.* at 619. The court, emphasizing that the N-word was in some ways

13  uniquely poisonous, concluded that use of racial epithets could create a hostile work environment

14  based on even a single incident.[7] *Id.* at 631 (noting "the odious and injurious nature of the N-word

15  in particular"). Plaintiff has not alleged anything that remotely approaches the severity of the

16  incident in *Bailey*. Indeed, courts have determined that far more serious incidents of sex

17  harassment were not sufficiently severe to state a sex harassment claim. *See Hughes*, 46 Cal. 4th

18  at 1040 (defendant's comments to plaintiff that he would "get [her] on [her] knees eventually" and

19  "fuck [her] one way or another" did not constitute severe harassing conduct).

20         Plaintiff does not seriously argue that she has alleged any severe incidents in the FAC—

21  because she has not. With respect to her one-on-one dinner with Giamatteo, she alleges that he

22  changed clothes before coming to dinner and that he was wearing aftershave. ¶ 40. She also

23  alleges that he "looked [her] up and down when they met"; "leaned over the table" in an

24  "attempt[] to touch her hands/arms"; "made prolonged eye contact"; and, when leaving the

25

26  ―――――――――――――――
    [7] The court also noted that the plaintiff and the coworker who used the epithet had to work in
27  physically close quarters and coordinate to cover each other's work. *Bailey*, 16 Cal. 5th at 633
    ("[A] coworker whom one sees at the water cooler is quite different than a coworker with whom
28  one shares an office space or work duties.").

1  restaurant, "attempted to walk very close" to her and "again touch[ed] her" (though there is no

2  allegation that Giamatteo touched her a first time). *Id.* Under binding case authorities, none of

3  this could plausibly constitute a severe incident of harassing conduct.

4
### 4.    Plaintiff Has Not Pled That Her Ordinary, Workplace Grievances Occurred "Because of" Sex.
5

6  Like Plaintiff's initial complaint, the amended complaint alleges a laundry list of non-

7  sexual workplace frictions. Like Plaintiff's initial complaint, the amended complaint also fails to

8  plead any non-conclusory connection between those workplace slights and Plaintiff's sex.

9  Both gender harassment and sexual harassment require a causal link between the alleged

10  harassing conduct and the person's sex or gender. *See, e.g., Doe By & Through Doe v. Petaluma*

11  *City Sch. Dist.*, 949 F. Supp. 1415, 1425 (N.D. Cal. 1996) (alleged harasser must "intend to select

12  the recipient of his conduct on the basis of her gender, that is, to engage in disparate treatment

13  based on sex"). Plaintiff argues, and Defendants agree, that she is not required to plead facts

14  showing that Giamatteo's conduct was motivated by sexual desire. ECF No. 38 at 7–8.

15  Defendants have never adopted that position: Instead, Defendants highlighted that Plaintiff must

16  plead facts showing that her allegations occurred "because of" her sex—in other words, that she

17  must plead some *facts* suggesting that her alleged mistreatment in the workplace was motivated by

18  her sex or gender. *See* ECF No. 37 at 17.

19  Like Plaintiff's original complaint, the FAC has failed to plead *any* non-conclusory facts

20  tying the various workplace slights Plaintiff complains of to her sex. The FAC claims that

21  Giamatteo created a "boy's club" at BlackBerry and then asserts that he "would mistreat, harass,

22  and marginalize women with impunity." ¶ 35. The FAC includes no factual details about these

23  other women, or the circumstances of their alleged mistreatment, harassment, or marginalization.

24  Plaintiff also repeatedly adds a conclusory refrain to the various workplace slights the FAC

25  describes: that "[m]ale co-workers were not treated" the same way. ¶ 37; *see also* ¶¶ 50–53, 55,

26  56 (concluding that Giamatteo "was not harassing men in this manner"). Plaintiff's Opposition

27  ignores Ninth Circuit precedent rejecting that approach. In *Austin*, the Ninth Circuit held that a

28  complaint did not adequately plead sex discrimination by simply claiming that complained-of

1  conduct was related to sex, or by including the bare allegation that members of the other sex were

2  treated differently.  *See Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019) (complaint

3  alleging that female students were not treated the same way as male students was insufficient to

4  show university was biased against men).  As the *Austin* court explained:  "Just saying so is not

5  enough.  A recitation of facts without plausible connection to gender is not cured by labels and

6  conclusory statements about sex discrimination."  925 F.3d at 1138.  Plaintiff's Opposition fails to

7  grapple with that case law—or to engage with the many district court cases Defendants' motion

8  cited for the same conclusion.  *See* ECF No. 37 at 17 (collecting cases rejecting complaints that

9  tied conduct to sex only by stating that conclusion, or by pleading bare assertions that members of

10  the opposite sex were treated differently).

11        Plaintiff also asks the Court to consider all the allegations in the FAC as one continual

12  pattern of harassment, citing *Accardi v. Superior Court*, 17 Cal. App. 4th 341.  But the facts in

13  *Accardi* were not remotely similar to Plaintiff's allegations.  From the very day the *Accardi*

14  plaintiff started work, "she was advised that male officers did not wish to have a female officer on

15  patrol with them."  *Id.* at 350.  For the next decade, she was subjected to an ongoing campaign of

16  overt sex harassment from her coworkers, including acts like: "making statements that her baton

17  was only useful to perform sex acts"; "spreading rumors that she had slept with superior officers

18  in order to receive favorable assignments"; "admitting to her that there were double standards and

19  telling her she must live with them"; "allowing derogatory and condescending remarks to be made

20  about her, and women in general; and making sexual advances to her."  *Id.* at 346.  At the same

21  time, the *Accardi* plaintiff was subject to non-overtly sexual acts, as coworkers spread rumors

22  about her, singled her out for unfavorable shifts, complained about her performance, and other

23  similar behaviors.  *Id.*

24        The *Accardi* court considered all of the plaintiff's allegations as part of her sex harassment

25  claim because she had sufficiently demonstrated "a continuous manifestation of a sex-based

26  animus."  *Id.* at 351.  That reasoning does not apply here.  Plaintiff has pointed to, at best, five

27

28

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1    isolated incidents with Giamatteo—none of which are overtly gendered.[8]  Unlike the plaintiff in

2    *Accardi*, who pled a range of specific and explicitly gendered-comments from coworkers—

3    including that they did not want a woman working alongside them—Plaintiff offers no non-

4    conclusory allegations that tie the workplace treatment she complains of to sex.  *See* ECF No. 37

5    at 16 (detailing conclusory allegations and absence of facts).  She does not allege, for example,

6    that Giamatteo made a derogatory comment about women, told crude or sexist jokes, or engaged

7    in any other behavior that plausibly evidences "sex-based animus."  *Accardi* is thus no help to her.

8         *Accardi* also does not stand for the proposition that a plaintiff can plead sex harassment by

9    relying on nongendered, ordinary allegations of workplace friction without pleading facts from

10   which a court can infer that the events occurred due to the plaintiff's sex.  To the contrary, it holds

11   that a Plaintiff relying on non-gendered workplace slights must "*show* that gender is a substantial

12   factor in the discrimination and that if the 'plaintiff had been a man, she would not have been

13   treated in the same manner.'"  17 Cal. App. 4th at 348 (emphasis added) (quoting *Thomkins*, 568

14   F.2d at 1047).  *Showing* that the ordinary workplace friction is linked to Plaintiff's gender or

15   would not have occurred if she was a man is precisely what Plaintiff's FAC fails to do.

16        **B.        Plaintiff Has Not Pled Facts Showing Sex Discrimination in Pay.**

17        Plaintiff has also failed to state a claim that BlackBerry violated California's prohibition

18   against discriminatory pay.  Although Plaintiff alleges that she performed certain job duties in

19   common with the President of the Cyber Business Unit (Giamatteo) and the President of

20   BlackBerry's Internet of Things Business Unit (Mattias Eriksson), she fails to allege that her role

21   at BlackBerry required similar skill or responsibility.  Nor could she:  As documents attached to

22   the FAC reveal, Plaintiff was not a President at BlackBerry and did not occupy an equivalent

23

24   ─────────────────────

     [8] The "decade-long campaign" of  harassment in *Accardi* was also part of a broader culture of

25   workplace sexual harassment among coworkers and supervisors.  *Accardi*, 17 Cal. App. 4th at
     350–51.  Plaintiff has pled that Giamatteo alone committed the five alleged incidents of sex

26   harassment in the Complaint.  Yet she asks the Court to consider that he "and other white males"
     engaged in a host of "harassment" at work, including excluding her from meetings, laughing at her

27   when she talked in meetings, and downgrading her contributions.  ¶ 36.  As with Giamatteo,
     Plaintiff has pled no facts that would allow the court to infer that these men acted with sex-based

28   animus.

1    leadership role within the company.[9] *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580,  588 (9th

2    Cir. 2008) (courts "need not accept as true allegations contradicting documents that are referenced

3    in the complaint").  Section 1197.5 requires a plaintiff to identify comparators who performed

4    "substantially similar work, when viewed as a composite of skill, effort, and responsibility." Cal.

5    Lab. Code § 1197.5.  Plaintiff's allegations do not satisfy these elements.

6           Plaintiff's Opposition entirely ignores the "responsibility" element of section 1197.5,

7    presumably because it is fatal to her claim.  Equal responsibility turns on "the degree of

8    accountability required in the performance of the job, with emphasis on the importance of the job

9    obligation."  29 C.F.R. § 1620.17(a).  Plaintiff has pled no facts to suggest that her roles at

10   BlackBerry—which were at various times Chief Marketing Officer, Chief Customer Success

11   Officer, and/or Head of Sustainability—required similar responsibility as serving as a President of

12   the company.  In fact, the FAC strongly suggests that Plaintiff's job required less responsibility, as

13   she admits that she had a "significantly smaller team than Giamatteo had supporting him."[10]  ¶ 34.

14   Courts routinely dismiss claims where plaintiffs fail to compare their responsibilities with those of

15   their comparators.  *See* ECF No. 37 at 20–21 (listing cases).

16          Plaintiff also claims that she has alleged "equal skill" to Giamatteo and Eriksson because

17   "all used general managerial and executive skills at BlackBerry."  ECF No. 38 at 13.  That is not

18   how courts analyze the equal skill component of section 1197.5.  As Defendants explained, equal

19   skill includes "such factors as experience, training, education, and ability," as measured "in terms

20   of the performance requirements of the job" at issue.  29 C.F.R. § 1620.15(a).  Merely using the

21   same *types* of skills does not establish that the roles required the *same level* of skill.  Indeed, the

22   BlackBerry Executive Team Web Page, referenced in the FAC, reveals that Giamatteo and

23

24   [9] *See* ECF No. 37, app. A (BlackBerry Executive Team Web Page).

25   [10] On the BlackBerry Executive Team Web Page she cites in the FAC, Plaintiff was not listed
     alongside the company presidents.  *See* ECF No. 37, app. A (BlackBerry Executive Team Web
26   Page).  She appeared instead in a separate section lower down the page titled "Senior Leaders,"
27   alongside other lower-ranking executives.

28

1  Eriksson's roles required materially different skills from Plaintiff's in terms of education and prior

2  work experience.  *See* ECF No. 37 at 20 (comparing backgrounds for the jobs).  Plaintiff claims

3  that Defendants' "focus on the individuals' resumes is unavailing," but to the contrary, these facts

4  demonstrate that Plaintiff's role did not require substantially similar skill when considering her

5  experience and education.  ECF No. 38 at 13.

6         The two cases Plaintiff relies on to claim that her allegations are sufficient under section

7  1197.5 involved plaintiffs who—unlike Ms. Sandhu—held *the same position* as their alleged

8  comparators.  In *Freyd v. University of Oregon*, the court determined there was a triable issue of

9  fact as to whether a plaintiff shared substantially similar jobs with three other comparators.  990

10  F.3d 1211 (9th Cir. 2021).  All of the comparators were tenured professors in the Psychology

11  Department, meaning they would all "conduct research, teach classes, advise students, and serve

12  actively on departmental, college, and university committees and in other roles in service to the

13  institution."  *Id.* at 1220–21.  Given the overwhelming similarities, the court held that it did not

14  matter if the professors "do not teach the same courses, or supervise the same doctoral students, or

15  manage the same centers."  *Id.*  The differences in this case are far more stark:  Plaintiff is

16  comparing herself to higher-level executives with whom she did not share the same job position.

17         The other case on which Plaintiff relies, *Duke v. City College of San Francisco*, is equally

18  unhelpful to her.  445 F. Supp. 3d 216 (N.D. Cal. 2020).  *Duke* involved an associate vice

19  chancellor of student affairs who alleged he performed substantially similar work as another

20  associate vice chancellor of student affairs.  *Id.* at 230.  The court explained that "[i]t is reasonable

21  to conclude that two associate vice chancellors overseeing the same area of responsibility (i.e.,

22  student affairs) would have the same job responsibilities."  *Id.*  These facts do not support

23  Plaintiff's claim in this case, where she has offered comparators with vastly different seniority, job

24  titles, and degrees of responsibility over other team members.  *See also* ECF No. 37 at 19

25  (collecting Equal Pay Act cases with comparators who occupy the same jobs).[11]

26

27  [11] As Defendants argued in their Motion, Plaintiff failed to compare her pay to either Giamatteo's
   or Eriksson's quantitatively, which suggests that she was likely paid far less.  Plaintiff takes issue

28  with this argument in her Opposition, pointing out that "the size of the pay disparity" is not a

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1    Finally, the Court should reject Plaintiff's assertion that she may be able to identify

2    additional comparators through discovery.  Plaintiff should know whether any other executive at

3    BlackBerry performed substantially similar work as her.  And even if she does not have that

4    knowledge, a plaintiff may not rely on "anticipated discovery to satisfy" pleading obligations;

5    "rather, pleadings must assert well-pleaded factual allegations to advance to discovery." *Whitaker*

6    *v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021).

7    **C.    Plaintiffs' Claims Should Be Dismissed with Prejudice.**

8    Defendants argued in their Motion that Plaintiff's claims for hostile work environment and

9    discriminatory pay should be dismissed with prejudice.  Plaintiff does not address this argument in

10    her Opposition.  Since the request is unopposed, and further amendment would be futile,

11    Defendants respectfully request that the claims be dismissed with prejudice.

12    **D.    The Court Should Strike Plaintiff's Harassment Allegations from Her Fourth Cause of Action, Along with References to Unequal Pay in Her Discrimination**

13    **Claim.**

14    Plaintiff cannot sustain claims for failure to prevent harassment because Plaintiff has not

15    adequately pled that any underlying harassment occurred.  The Court should strike the term

16    "harassment" from Plaintiff's fourth cause of action against BlackBerry for failure to prevent

17    harassment, discrimination, and retaliation.

18    Likewise, Plaintiff cannot use allegations of unequal pay as support for her eighth cause of

19    action (for discrimination) and ninth cause of action (for failure to prevent discrimination and

20    retaliation) because she has failed to plead a plausible claim for disparate pay under section

21    1197.5.  The Court should strike all unequal pay allegations from Plaintiff's eighth and ninth

22    causes of action.

23    **III.    CONCLUSION**

24    For the foregoing reasons, Defendants respectfully request that this Court grant the Motion

25    to Dismiss the FAC and Motion to Strike.

26

27    defense to an Equal Pay Act case.  ECF No. 38 at 13.  Defendants do not suggest that Plaintiff was required to plead her pay to sustain a claim—but rather that her decision to omit that fact renders

28    her claim even less plausible.

1   DATED:  October 28, 2024                    MUNGER, TOLLES & OLSON LLP

2

3                                               By: _____

4                                                    KATHERINE M. FORSTER

5                                               Attorneys for Defendants BLACKBERRY
                                                CORPORATION and JOHN GIAMATTEO
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE