| | |
|---|---|
| Maria A. Bourn<br>Anthony Tartaglio<br>GOMERMAN \| BOURN & ASSOCIATES<br>825 Van Ness Ave, Suite 502<br>San Francisco, CA 94109<br>Telephone: (415) 545-8608<br>Email: maria@gobolaw.com<br>        tony@gobolaw.com<br><br>Attorneys for Plaintiff<br>NEELAM SANDHU | KATHERINE M. FORSTER (SBN 217609)<br>Katherine.Forster@mto.com<br>CRAIG JENNINGS LAVOIE (SBN 293079)<br>Craig.Lavoie@mto.com<br>LAUREN N. BECK (SBN 343375)<br>Lauren.Beck@mto.com<br>KYRA E. SCHOONOVER (SBN 343166)<br>Kyra.Schoonover@mto.com<br>MUNGER, TOLLES & OLSON LLP<br>350 South Grand Avenue, Fiftieth Floor<br>Los Angeles, California 90071-3426<br>Telephone:   (213) 683-9100<br>Facsimile:    (213) 687-3702<br><br>Attorneys for Defendant BLACKBERRY<br>CORPORATION |

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEELAM SANDHU, an individual,<br><br>             Plaintiff,<br><br>vs.<br><br>BLACKBERRY CORPORATION; a Delaware Corporation,<br><br>             Defendant. | **Case No.: 3:24-cv-02002 (SK)**<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>CMC: March 31, 2025 at 1:30 p.m.<br>Trial Date: May 12, 2026<br>Judge: Hon. Sallie Kim |

Plaintiff Neelam Sandhu and Defendant BlackBerry Corporation hereby submit this joint case management conference statement in advance of the case management conference on March 31, 2025. Counsel conducted their Rule 26(f) conference on June 10, 2024 via videoconference. Anthony Tartaglio attended on behalf of Plaintiff. Katherine Forster and Kyra Schoonover attended on behalf of BlackBerry.

**(1) Jurisdiction and Service**. This case is based on diversity jurisdiction in which the substantive law of California applies. There are currently no issues regarding personal jurisdiction or venue. There are no parties remaining to be served.

**(2) Facts.**

Plaintiff's Position: Plaintiff alleges BlackBerry discriminated against Plaintiff based on her gender violating the Fair Employment and Housing Act and subsequently retaliated against her after reporting John Giamatteo's sexual and/or gender harassment. Plaintiff alleges BlackBerry also violated FEHA by failing to prevent harassment, retaliation, and discrimination. Plaintiff also alleges BlackBerry failed to properly pay her based on her gender and that Giamatteo harassed her based on her gender/sex, but the Court dismissed those claims with prejudice on November 21, 2024. Plaintiff still contends Defendant's conduct was illegal and resulted in her wrongful termination in violation of public policy.

BlackBerry's Position: As part of a major reorganization in 2023-24 that involved hundreds of terminations, BlackBerry eliminated the three positions held by Plaintiff Neelam Sandhu: Chief Elite Customer Success Officer, Chief Marketing Officer, and Head of Sustainability. Because Ms. Sandhu's positions were eliminated, keeping her at the company would have required finding a new role for her. But BlackBerry's Interim CEO, Richard Lynch, believed Ms. Sandhu would be a poor fit to be placed in a different role based on her performance, her inability to collaborate with colleagues, and her stated desire (despite these shortcomings) to herself become BlackBerry's next CEO. Mr. Lynch offered Ms. Sandhu the option of messaging her departure as a resignation, but she did not respond to this offer and was terminated in December 2023.

**(3) Legal Issues.** There are no legal issues currently pending for the Court's decision, although BlackBerry anticipates making certain arguments regarding legal issues in a summary judgment motion and Plaintiff is contemplating appellate issues regarding the Court's Order to Partially Dismiss.

**(4) Motions.** BlackBerry twice moved to dismiss Plaintiff's harassment and discriminatory pay claims, with the second motion resulting in dismissal with prejudice of those two claims. *See* Dkt. 51 at 16. BlackBerry contemplates filing a summary judgment motion following discovery. At this time, no other motions are contemplated.

**(5) Amendment of Pleadings.**

<u>Plaintiff's Position</u>: At this time, no other amendments to the pleadings are contemplated. Once discovery is completed, Plaintiff contemplates amending her Complaint to address the Court's Order on the Motion to Dismiss gender and/or harassment and discrimination in violation of Labor Code section 1197.5. BlackBerry below suggests setting the deadline to amend the pleadings five months before the close of discovery, and before BlackBerry substantially completes its document production. The Court should reject this suggestion, as it is common for parties to amend the pleadings to conform to the information collected in discovery.

<u>BlackBerry's Position</u>: By rule, any future amendment of Plaintiff's complaint would require leave of Court or BlackBerry's consent. *See* Fed. R. Civ. P. 15(a)(2). Plaintiff's statement that she may later amend her complaint to address the Court's order on her claim under Labor Code Section 1197.5 does not make sense, as the Court dismissed Plaintiff's equal pay and harassment claims with prejudice. *See* Dkt. 51 at 16 ("Because granting leave to amend a second time would be futile, Plaintiff's . . . wage discrimination claims are dismissed WITH PREJUDICE."). To the extent the Court wishes to set a deadline for amending the pleadings, BlackBerry suggests April 21, 2025 (three weeks from the case management conference on March 31, 2025). Given that there have already been two thoroughly litigated pleading motions, BlackBerry believes a near-term deadline would promote efficiency and keep the case on track for trial in May 2026.

**(6) Evidence Preservation**: The parties have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to issues reasonably evident in this action. Each party certifies that it has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information.

**(7) Disclosures.** Each side served Rule 26 disclosures addressing the categories of information required by rule. At present, there is no dispute regarding the adequacy or timeliness of either side's disclosures.

Plaintiff's Position:  Although Plaintiff acknowledges that BlackBerry produced documents as part of its initial disclosures, Plaintiff disputes "that production contained many of the most relevant categories of documents for this litigation."

BlackBerry's Position:  BlackBerry notes that, pursuant to General Order 71, BlackBerry produced roughly 1,200 documents in July 2024—three months after Plaintiff filed suit.  That production contained many of the most relevant categories of documents for this litigation, including: (i) non-privileged communications concerning the factual allegations or claims outlined in Plaintiff's initial complaint between Plaintiff, on the one hand, and John Giamatteo or BlackBerry's Human Resources employees, on the other; (ii) non-privileged documents related to BlackBerry's responses to complaints made by Plaintiff during her employment at BlackBerry; (iii) non-privileged documents concerning the formation and termination of Plaintiff's employment; and (iv) Plaintiff's personnel file.

**(8) Discovery.**  The parties have served and responded to written discovery requests and two depositions have occurred.  The scope of the anticipated discovery is that this case will require a roughly average amount of discovery for a single-plaintiff employment case.  At this point, the parties do not propose any limitations or modifications to the usual discovery procedures.  A stipulated e-discovery order currently appears unnecessary, and there appears to be no need to conduct fact discovery in phases.  There is also no apparent need to change the limitations on discovery imposed under the Federal Rules of Civil Procedure or by local rule.

The parties agree discovery will include the following issues: Plaintiff's job performance, termination, reasons for termination, actions taken to prevent harassment and retaliation, and a November 2023 investigation relating to John Giamatteo.

The parties have the following disagreements about the remainder of the discovery plan:

**(a) Subjects On Which Discovery May Be Needed.**

Plaintiff's Position:  Plaintiff's position is that the subjects on which discovery may be needed include: pay equity issues relating to women employees, investigations conducted into Plaintiff's complaints, hiring practices as it relates to executives, including, but not limited to

hiring Giamatteo, evidence as it relates to witnesses, including, but not limited to "me too" witnesses, and/or evidence as it pertains to punitive damages.

BlackBerry's Position: Plaintiff's suit is not a group or class action, but rather a single-plaintiff employment action. BlackBerry agrees discovery should encompass material relevant to Plaintiff's job performance and termination, as well as her retaliation allegations, but Plaintiff's attempts to take discovery on claims the Court has already dismissed (such as equal pay) or that Plaintiff abandoned in motion to dismiss briefing (such as a negligent hiring theory with regard to John Giamatteo) are improper. In addition, Plaintiff's efforts to take discovery on the situations of other women who worked in different business units than Plaintiff, and did not work for John Giamatteo, or Richard Lynch, the decision-maker involved in Plaintiff's termination, are improper and not proportional to the needs of the case. Even under the "me too" case law Plaintiff refers to, such discovery is not relevant to Plaintiff's claims. *See, e.g.*, *Day v. Sears Holding Corp.*, 930 F.Supp.2d 1146, 1185 (2013) (evidence related to another female employee who claimed to have been retaliated against was "of minimal relevance" where "there [was] no evidence that . . . the decisionmakers in [the plaintiff's] case, were involved in [the other employee's] termination"). BlackBerry has worked extensively in meet and confer with Plaintiff's counsel to avoid burdening the Court with motion practice on these issues, and will continue to do so.

**(b) Depositions.**

Plaintiff's Position: The lengthy arguments below about the ten-deposition limit are premature because only two depositions have occurred yet. Additionally, before Plaintiff took *a single deposition*, BlackBerry's counsel (on 2/10/2025) sent an e-mail stating: "please know that BlackBerry will oppose any effort by Plaintiff to exceed the 10-deposition limit set by the Federal Rules." Accordingly, all of BlackBerry's arguments below about Plaintiff's alleged lack of prudence in taking depositions are a red herring: BlackBerry opposed modifying the 10-deposition limit before a single deposition was taken.

BlackBerry's Position: Plaintiff has not been prudent in selecting deponents who are relevant to her retaliation allegations, job performance, or termination, and she appears to be

proceeding on an assumption that the Court will grant leave for her to exceed the ten-deposition limit. *See* Fed. R. Civ. P. 30(a)(2)(A)(i) ("A party must obtain leave of court . . . if the parties have not stipulated to the deposition and . . . the deposition would result in more than 10 depositions being taken[.]"). Thus far, Plaintiff has taken depositions of two women who formerly worked at BlackBerry, neither of whom were involved in Plaintiff's termination, and both of whom testified that they had never worked closely with Plaintiff. Plaintiff's initial outreach about these and four other depositions is what prompted BlackBerry's February 10 email, putting Plaintiff on fair notice that it believes the 10-deposition limit is appropriate in this case. Plaintiff has signaled that she intends to depose a third ex-BlackBerry employee who worked in a different business unit from both Plaintiff and John Giamatteo. Plaintiff is additionally in the process of scheduling depositions of two former BlackBerry HR representatives who left BlackBerry before Plaintiff's termination. None of these witnesses worked closely with Plaintiff or were involved in any way in her termination.

BlackBerry expects Plaintiff will want to depose John Giamatteo, Dick Lynch (the executive who made the decision to terminate her), and individuals who conducted the November 2023 investigation of Giamatteo, but she is quickly exhausting her ten depositions on people who are peripheral or irrelevant to her claims.

BlackBerry has objected to Plaintiff's depositions of irrelevant witnesses and repeatedly cautioned Plaintiff that it will strongly oppose any effort to exceed the ten-deposition limit. In response, Plaintiff's counsel stated in an email that Plaintiff will "probably" seek more than ten depositions. Rather than proceed prudently by prioritizing core witnesses—such as John Giamatteo, Dick Lynch, and the people who performed a November 2023 investigation of Giamatteo—BlackBerry foresees Plaintiff asking the Court for leave to depose core witnesses after already exhausting her ten depositions on people who are far afield. *See San Francisco Health Plan v. McKesson Corp.*, 264 F.R.D. 20, 21 (D. Mass. 2010) ("[T]he purpose of the limitation in [Rule 30(a)] is to force counsel to think long and hard about who they want to depose and to depose only those who are really important.").

Plaintiff no doubt has strong feelings about her termination, but this is not a group or class action, and ten depositions for Plaintiff—in addition to any depositions BlackBerry itself will take within its ten-deposition limit—are more than sufficient for a single-plaintiff employment action. If Plaintiff were permitted to take more than ten depositions, or to engage in broad discovery regarding BlackBerry's culture or the situations of unrelated women who have left BlackBerry, it would place unfair pressure on BlackBerry to resolve Plaintiff's suit for financial reasons unrelated to the merits of her claims. *Cf. Alvarado-Herrera v. Acuity* (D. Nev. 2023) 344 F.R.D. 103, 106 (D. Nev. 2023) (citation omitted) (noting that the Federal Rules mandate "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality," which is designed to "provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery").

**(c)  Document Production.**

Plaintiff's Position:  Beginning in June of 2024, Plaintiff served requests for production of documents.  After several letters back and forth,  Defendant asserted it would produce discovery on a "rolling basis" and would "substantially complete" document productions by March 31, 2025.  Given the incomplete discovery received so far, Plaintiff does not know when Defendant will complete its document production.

BlackBerry's Position.  BlackBerry began this case by producing more than 1,200 documents pursuant to the enhanced initial disclosures that require early production of the most vital documents and information in employment matters.  Since then, it has produced documents on a rolling basis in response to Plaintiff's documents requests, including a recent production of nearly 1,700 documents on March 5.  In total, BlackBerry has produced roughly 3,400 documents, and it is aiming to substantially complete production on or shortly after the date of the case management conference: March 31.

Plaintiff's document productions have thus far been small and incomplete, but BlackBerry is attempting to resolve these issues in meet and confer to avoid burdening the Court with motion practice.

**(d)  Additional Issues.**

Plaintiff's Position: Plaintiff anticipates there will be an issue regarding whether Defendant conducted an investigation into Plaintiff's complaints about Giamatteo. Second, Plaintiff anticipates there will be an issue regarding producing "me too" evidence as it relates to other employees that had similar complaints as to Plaintiff. Third, Plaintiff notes that, during depositions, Defendant has used exhibits it had not produced in discovery. Plaintiff anticipates this will be an ongoing issue and will need to seek intervention to properly facilitate discovery.

BlackBerry's Position. BlackBerry has elected to waive attorney-client privilege over a November 2023 investigation conducted by Morrison & Foerster of anonymously-submitted allegations against John Giamatteo, so it does not share Plaintiff's anticipation of a dispute over that issue. BlackBerry agrees there may ultimately be a ripe dispute regarding whether "me too" evidence is a proper subject of discovery, but meet and confer has yet to be exhausted on that issue. With respect to documents used at depositions, Plaintiff has elected to depose individuals who are far afield from her claims. Accordingly, there are documents related to those individuals that Plaintiff has not (and could not) properly seek in discovery. On occasions where BlackBerry has used un-produced documents during the depositions of far-afield witnesses, it is because those documents were not responsive to any of Plaintiff's pending document requests, and Plaintiff has not contended otherwise. BlackBerry further notes that Plaintiff has chosen to start taking depositions while document production is mid-stream, with full awareness that BlackBerry has yet to complete its production.

**(9)  Class Actions.** This is not a class action.

**(10)  Related Cases.** There are no related cases.

**(11)  Relief.**

Plaintiff's Position: Plaintiff intends to seek compensatory damages, special damages, general damages, costs, prejudgment interest, attorney fees and costs, equitable relief, and/or any other further relief as the court deems just and proper. At this point, a calculation of damages would be premature as it is subject to expert discovery, which has yet to occur. Further, Plaintiff is still searching for new employment, meaning that her economic damages are not yet reasonably

ascertainable. Nevertheless, because the Court has asked for an *estimate* of claimed damages, Plaintiff discloses the following as an *estimate* to date, subject to change upon expert discovery and as damages change:

| Category | Amount | Comments |
|---|---|---|
| Wage Discrepancy While Working | $600,000 | Underpaid approximately $200,000 per year x three years |
| Lost Wages | $971,365 | Compensation Plaintiff would have earned had she stayed at Blackberry. |
| Lost Expected Stock | $800,00 | $400,000 stock per year Plaintiff would have received in 2024 and 2025 |
| Stock Options | $1,267,693 | 280,463 shares rescinded multiplied by today's (3/9/2025) share price of $4.52 |
| Mental Health Treatment Costs | $3,220 | |
| Emotional Distress (Non-economic) Damages | $10,000,000 | |
| Job-searching expenses | $8,400 | LinkedIn Premium subscription, travel related to job applications and industry events, etc. |
| Severance Pay | $307,692 | |

| Category | Amount | Comments |
| --- | --- | --- |
| Attorney's Fees and Costs | TBD | |
| Punitive Damages | $42,650,000 | BB revenue last fiscal year was $853M of which 5% is $42.65M. a material amount is required to be awarded to deter BB from behaving this way again. |
| Total Estimate Pre-Expert Disclosure | $56,608,370 | |

BlackBerry's Position: BlackBerry received Plaintiff's damages estimate for the first time on March 20, only two court days before this case management statement was due. However, BlackBerry offers the following preliminary positions regarding how damages should be calculated if liability is established. *First*, Plaintiff's lost earnings must take into account her failure to mitigate damages by securing alternative employment. Plaintiff was terminated in December 2023 and, to BlackBerry's knowledge, she has not worked or earned income in the sixteen months since then. Reasonable diligence on Plaintiff's part would have yielded new employment by now. *Second*, no damages can or should be awarded for alleged unequal pay, given that the Court dismissed Plaintiff's equal-pay claim with prejudice based on failure to state a claim. *Third*, no damages should be awarded for "severance pay," as it is a not a valid category of damages, particularly in combination with alleged lost earnings. *Fourth*, the scope of Plaintiff's non-economic damages for emotional distress should bear some reasonable relationship to her alleged economic damages, and Plaintiff's alleged punitive damages should bear some reasonable relationship to her alleged compensatory damages.

**(12) Settlement and ADR.** The Court has assigned a mediator to work with the parties, and the deadline to complete mediation is July 7, 2025. The parties are working to identify a

mediation date, but Plaintiff's counsel has a trial scheduled in June 2025 that is impacting the ability to find a date. It is possible the parties will seek a modest extension of the deadline to complete mediation.

**(13) Other References.** This case is not suitable for binding arbitration, a special master, or an MDL panel.

**(14) Narrowing of Issues.** BlackBerry's motion to dismiss/strike narrowed the issues before the Court. BlackBerry currently anticipates filing a motion for summary judgment to further narrow the issues. The Northern District of California's Standing Order for joint case management conference statements requires that the parties "jointly identify (in bold or highlight) one to three issues which are the most consequential to the case and discuss how resolution of these issues may be expedited."

Plaintiff's Position: At this time, Plaintiff believes no Court intervention is necessary to narrow the issues.

BlackBerry's Position: **To the extent the Court has availability and interest in resolving any such issue now, BlackBerry submits that obtaining clarity on the permissibility of "me too" discovery and the proper number of depositions would be helpful. If it would beneficial to the Court, the parties could submit briefing on these issues.** Alternatively, the parties could continue their meet and confer efforts to try to resolve these issues without Court intervention, then follow procedure for briefing discovery disputes as necessary.

**(15) Scheduling.** The Court has issued a scheduling order, and no party is currently seeking an amendment to the case schedule.

**(16) Trial.** Plaintiff has demanded a jury trial. The Court has set the trial to begin on May 12, 2026, with a length of seven days. *See* Dkt. 58 at 1 ("The Court informed parties the trial will be seven days.").

**(17) Disclosure of Non-party Interested Entities or Persons.** The parties have filed the required disclosure form.

**(18) Professional Conduct.** All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

| | | |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | Dated: March 24, 2025 | GOMERMAN | BOURN & ASSOCIATES |
| 4 | | |
| 5 | | |
| 6 | | By: */s/ Anthony Tartaglio* |
| 7 | | Maria Bourn |
| 8 | | Anthony Tartaglio |
| 9 | | Attorneys for Plaintiff |
| 10 | | Neelam Sandhu |

Dated: March 24, 2025                    MUNGER, TOLLES & OLSON LLP

By:             */s/ Katherine Forster*

KATHERINE FORSTER

Attorney for Defendant

BLACKBERRY CORPORATION

- 12 -
**THIRD JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

I, Katherine Forster, affirm that before this document was filed with the Court, I first obtained the approval of Plaintiff's counsel to sign this document on his behalf.

Dated: March 24, 2025    MUNGER, TOLLES & OLSON LLP


By: */s/ Katherine Forster*
    KATHERINE FORSTER
    Attorney for Defendant
    BLACKBERRY CORPORATION