KATHERINE M. FORSTER (State Bar No. 217609)
Katherine.Forster@mto.com
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
LAUREN N. BECK (State Bar No. 343375)
Lauren.Beck@mto.com
KYRA E. SCHOONOVER (State Bar No. 343166)
Kyra.Schoonover@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendant BLACKBERRY CORPORATION

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

NEELAM SANDHU, an individual,

Plaintiff,

vs.

BLACKBERRY CORPORATION; a Delaware Corporation,

Defendant.

Case No. 3:24-cv-02002-SK

**MOTION FOR RULE 37(c)(1) SANCTIONS**

**[PUBLIC-REDACTED VERSION]**

Hearing Date: November 17, 2025
Time: 9:30 AM
Place: Courtroom C
Judge: Sallie Kim

# TABLE OF CONTENTS

**Page**


NOTICE OF MOTION & MOTION ..... 1

STATEMENT OF RELIEF SOUGHT ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 4

A. Plaintiff Omits Ms. Bath and Mr. Hundal from Disclosures, Crops Their Names from Texts, and Withholds Responsive Communications with Them. ..... 4

B. After Plaintiff Is Deposed—and Less Than Two Weeks Before the Close of Discovery—Plaintiff Adds Ms. Bath and Mr. Hundal to Her Disclosures. ..... 7

III. LEGAL STANDARD ..... 9

IV. ARGUMENT ..... 10

A. The Court Should Exclude Ms. Bath and Mr. Hundal from Supplying Evidence In This Matter. ..... 10

1. Plaintiff's Disclosure of Ms. Bath and Mr. Hundal Was Untimely. ..... 10

2. Plaintiff Cannot Show Her Untimely Disclosures Were Substantially Justified. ..... 12

3. Plaintiff Cannot Show Her Untimely Disclosures Were Harmless. ..... 13

4. Plaintiff's Discovery Conduct Provides Further Context for Why Exclusion Is Warranted. ..... 15

B. BlackBerry Should Be Awarded Its Reasonable Expenses. ..... 15

V. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**


*Baird v. BlackRock Inst. Tr. Co.*,
330 F.R.D. 241 (N.D. Cal. 2019) .......... 2, 10, 11

*Browne v. Clark*,
No. 2:21-cv-02840-AB-AJR, 2025 WL 1683641 (C.D. Cal. May 22, 2025) .......... 15

*California Inst. of Tech. v. Broadcom Ltd.*,
No. CV16-03714 GW, 2017 WL 11001705 (C.D. Cal. Dec. 18, 2017) .......... 10

*Finjan, Inc. v. Proofpoint, Inc.*,
No. 13-cv-05808-HSG, 2015 WL 9900617 (N.D. Cal. Oct. 26, 2015) .......... 14

*Goodman v. Staples The Off. Superstore, LLC*,
644 F.3d 817 (9th Cir. 2011) .......... 9

*Hoffman v. Constr. Protective Servs., Inc.*,
541 F.3d 1175 (9th Cir. 2008) .......... 13

*Homyk v. Chemocentryx, Inc.*,
No. 21-cv-03343-JST (LJC), 2024 WL 5150447 (N.D. Cal. Aug. 8, 2024) .......... 10

*Markson v. CRST Int'l, Inc.*,
No. 5:17-cv-1261-SB, 2021 WL 5969519 (C.D. Cal. Nov. 23, 2021) .......... 2, 11, 12

*Ollier v. Sweetwater Union High Sch. Dist.*,
768 F.3d 843 (9th Cir. 2014) .......... 3, 11, 15

*Plexxikon Inc. v. Novartis Pharms. Corp.*,
No. 17-cv-04405-HSG (EDL), 2019 WL 12038882 (N.D. Cal. Sept. 9, 2019) .......... 14

*R & R Sails, Inc. v. Ins. Co. of Penn.*,
673 F.3d 1240 (9th Cir. 2012) .......... 9

*Russo v. Network Solutions, Inc.*,
No. C-07-3401 MMC (EMC), 2008 WL 114908 (N.D. Cal. Jan. 10, 2008) .......... 15

*Shenwick v. Twitter, Inc.*,
No. 16-cv-05314-JST, 2021 WL 1232451 (N.D. Cal. Mar. 31, 2021) .......... 11

*Theoharis v. Rongen*,
No. C13-1345RAJ, 2014 WL 3563386 (W.D. Wash. July 18, 2014) .......... 2, 12

*Torres v. City of Los Angeles*,
No. CV-13-1200-MWF-(JCGx), 2014 WL 13133503 (C.D. Cal. Aug. 5, 2014) .......... 10

*Vieste, LLC v. Hill Redwood Dev.*,
No. C-09-04024 JSW, 2011 WL 2181200 (N.D. Cal. June 3, 2011) .......... 3, 10, 11, 13

*Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052 (9th Cir. 2005) .......... 13

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001) .......... 3, 9, 15

**FEDERAL RULES**

Fed. R. Civ. P. 26 .......... passim

Fed. R. Civ. P. 37 .......... passim

Fed. R. Civ. P. 45 .......... 8

**OTHER AUTHORITY**

General Order 71 .......... 1, 4, 8, 10, 12

## NOTICE OF MOTION & MOTION

**PLEASE TAKE NOTICE** that on November 17, 2025, at 9:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable Sallie Kim in Courtroom C of the United States District Court for the Northern District of California, Defendant BlackBerry Corporation will and hereby does move for an order excluding Plaintiff Neelam Sandhu's late-disclosed witnesses and awarding BlackBerry its reasonable expenses incurred in connection with this motion. This motion is based on this notice of motion and memorandum of points and authorities, all papers on file in this action, and any argument or authority presented in reply or at the hearing.

## STATEMENT OF RELIEF SOUGHT

Pursuant to Federal Rule of Civil Procedure 37(c)(1), BlackBerry moves to exclude Plaintiff's late-disclosed witnesses—Karamveen Bath and Sundeep Hundal—and to preclude Plaintiff from using their testimony at any motion, hearing, or trial. BlackBerry further seeks an award of its reasonable expenses, including attorneys' fees, under Rule 37(c)(1)(A).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

After fifteen months of fact discovery—and with only eleven days left before the cutoff—Plaintiff amended her Rule 26 disclosures on September 15 to add two new witnesses to vouch for her alleged emotional distress: her sister, Karamveen Bath, and her childhood friend, Sundeep Hundal. Both reside in the United Kingdom. Yet contrary to Rule 26, Plaintiff provided only their email addresses, not their phone numbers or physical addresses (the latter of which is necessary to serve subpoenas abroad). BlackBerry promptly emailed both witnesses with document subpoenas and asked whether they would voluntarily accept service. Neither responded, and fact discovery closed on September 26, 2025.

The governing rules required Plaintiff to timely disclose her witnesses, and the default remedy for her failure to do so is exclusion. At the outset, Plaintiff was required to "[i]dentify persons [she] believe[d] to have knowledge of the facts concerning the claims or defenses at issue in this lawsuit," and Rule 26(e) required her to supplement her disclosures "in a timely manner" during discovery. *See* General Order 71, p. 3; Fed. R. Civ. P. 26(e). Rule 37(c)(1) makes exclusion

the automatic remedy for a violation unless the failure was substantially justified or harmless. *Baird v. BlackRock Inst. Tr. Co.*, 330 F.R.D. 241, 243 (N.D. Cal. 2019).

Plaintiff's failure to timely disclose her sister and friend was neither. When asked during meet and confer for this motion why the witnesses were disclosed late, Plaintiff's counsel explained: "I was thinking about who we were gonna need at trial. We decided: Let's have a couple witnesses to talk about her mental health. And we said: Let's disclose them." (Declaration of Craig Jennings Lavoie ¶ 17.) Counsel candidly admitted: "I'm not claiming they were unavailable to me. Obviously, I could have done it earlier. I'm not going to argue we didn't discover them until a month ago." (*Id.*) Whether viewed as a lack of diligence or an eleventh-hour strategy shift—or both—Plaintiff lacked substantial justification for her late disclosures. *See Markson v. CRST Int'l, Inc.*, No. 5:17-cv-1261-SB (SPx), 2021 WL 5969519, at *4 (C.D. Cal. Nov. 23, 2021) (counsel's "belated realization that . . . witnesses might prove useful" was "insufficient to justify untimely disclosure"); *see also Theoharis v. Rongen*, No. C13-1345RAJ, 2014 WL 3563386, at *8 (W.D. Wash. July 18, 2014) ("Lack of diligence is not substantial justification. . . .").

Nor was the late disclosure harmless. When BlackBerry took Plaintiff's deposition on August 22, 2025—five weeks before the discovery cutoff—her Rule 26 disclosures did not include Ms. Bath, Mr. Hundal, or anyone else with knowledge of her alleged emotional distress. BlackBerry therefore did not question Plaintiff about her interactions with Ms. Bath or Mr. Hundal following her termination from BlackBerry or how they have allegedly observed her emotional distress. Indeed, it was not until September 9, 2025—sixteen days before the discovery cutoff—that Plaintiff's counsel disclosed the new witnesses' last names to BlackBerry. Up to that point, they had been referred to in documents and during Plaintiff's deposition only by their nicknames ("Bina" and "Sunny"). Plaintiff did not provide any contact information for the witnesses until amending her disclosures on September 15, 2025—eleven days before discovery closed—and even then listed only their email addresses. BlackBerry promptly served document requests on Plaintiff and emailed document subpoenas to the witnesses seeking their communications, but Plaintiff refused to respond before discovery closed, and the witnesses did not respond at all.

Plaintiff's proposed "solution"—that BlackBerry conduct informal Zoom depositions without any document discovery—would unfairly advantage Plaintiff and penalize BlackBerry for her failure to follow the rules. Rule 26 disclosures exist for a reason, as do discovery deadlines, and the consequences for failure to comply are clear. As Judge Ryu explained under similar circumstances, "[h]ad [the sponsoring party] properly disclosed . . . these witnesses, either in their initial disclosures or in a timely supplementation pursuant to Rule 26(e), [the opponent] would have been adequately informed that these individuals possessed discoverable information that supported [the sponsoring party's] case and could have made educated choices about how best to use their discovery resources." *Vieste, LLC v. Hill Redwood Dev.*, No. C-09-04024 JSW, 2011 WL 2181200, at *3 (N.D. Cal. June 3, 2011) (excluding witnesses disclosed two weeks before discovery cutoff). That opportunity is now permanently lost, and the costs to BlackBerry of reopening fact discovery would be unfairly prejudicial.

Although the Court need not find bad faith to exclude Ms. Bath and Mr. Hundal, *see Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001), Plaintiff's conduct throughout discovery provides additional context for why exclusion is warranted. In September 2024, Plaintiff produced snippets of text messages that she had sent to two individuals—whose identities BlackBerry could not discern because the screenshots had been cropped to omit their names and surrounding context. For nine months, BlackBerry repeatedly requested that Plaintiff produce complete versions of the messages, without manipulating the screenshots to conceal the recipients' identities. When Plaintiff finally did so in June 2025, the production revealed for the first time that the correspondents were "Bina" and "Sunny"—later identified as Ms. Bath and Mr. Hundal. The production also included many pages of previously withheld texts with Ms. Bath and Mr. Hundal that were responsive to BlackBerry's discovery requests and damaging to Plaintiff's case. Plaintiff's belated disclosure of these same individuals as trial witnesses—after her earlier actions improperly concealed their identities—exemplifies the kind of gamesmanship that Rule 26 is designed to prevent. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) ("We . . . have warned litigants not to indulge in gamesmanship with respect to the disclosure obligations of Rule 26." (cleaned up).)

BlackBerry respectfully requests that the Court (i) exclude Ms. Bath and Mr. Hundal from supplying evidence at any motion, hearing, or trial; and (ii) award BlackBerry its reasonable fees and costs for bringing this motion.

## II. BACKGROUND

### A. Plaintiff Omits Ms. Bath and Mr. Hundal from Disclosures, Crops Their Names from Texts, and Withholds Responsive Communications with Them.

Plaintiff served her initial disclosures in July 2024, identifying 44 individuals she "believe[d] to have knowledge of the facts concerning the claims or defenses at issue in this lawsuit." (Lavoie Decl. ¶ 2 & Ex. A at 1–6.); *see* General Order 71, at p. 3 (setting disclosure requirements for employment cases alleging adverse action). Plaintiff added four more people in amended disclosures the following month, bringing her total to 48 disclosed individuals in this single-plaintiff employment action. (*Id.* at ¶ 4 & Ex. C at 1–6.)

As discovery progressed, Plaintiff produced only a handful of text messages, all of which were cropped. Instead of providing complete screenshots of her conversations, Plaintiff produced narrow snippets reflecting portions of her own messages—omitting the identity of the other participant and all of their responses. (*Id.* at ¶ 6 & Ex. E at 1–5.) In one instance, Plaintiff's snippet cut off one of her messages mid-sentence. (*Id.* & Ex. E at 1.) For example, two of the five text messages Plaintiff produced are shown below, each consisting solely of Plaintiff's words with no context or counterpart identified:






BlackBerry repeatedly demanded that Plaintiff correct her production by providing complete versions of the text exchanges. BlackBerry met and conferred with Plaintiff or sent correspondence about the issue on September 27 and November 21, 2024; January 30, February 10, and April 17, 2025; and again on June 6, 2025, when BlackBerry warned it would move to compel if Plaintiff did not produce the messages in full. (Lavoie Decl. ¶ 7.) On June 12, 2025—nine months after her initial production—Plaintiff finally produced fuller versions of the text messages. (*Id.* at ¶ 8 & Ex. F at 1–24.) The newly produced material showed that Plaintiff had been communicating with two individuals identified in the message headers only as "Bina" and "Sunny." (*Id.* & Ex. F.) Based on these texts, BlackBerry still could not determine who these individuals were, their relationship to Plaintiff, or whether they had ever worked at BlackBerry.

Plaintiff's production also revealed that she had withheld numerous additional messages that were plainly responsive to BlackBerry's discovery requests and damaging to Plaintiff's case. Her text production expanded from five cropped images to more than twenty pages of back-and-forth with "Bina" and "Sunny." These messages were directly responsive to BlackBerry's requests for all communications concerning Plaintiff's employment at BlackBerry, termination, and claims of harassment or retaliation, as well as anything referring to John Giamatteo. Plaintiff has offered no explanation for why these materials—central to her claims and defenses—were surgically withheld and produced only after BlackBerry warned that it would move to compel.

The newly produced messages show Plaintiff in an unflattering light and are damaging to her claims. *First*, the messages support BlackBerry's position that Plaintiff struggled to work collaboratively with colleagues. The messages show Plaintiff [redacted]

[redacted] (*Id.* at ¶ 8 & Ex. F at 15.) After recounting ordinary workplace events—such as being left off a meeting invite—Plaintiff referred to Mr. Giamatteo as an [redacted] (*Id.* & Ex. F at 8, 11, 22.) All of these [redacted] were withheld from Plaintiff's initial snippets.

The texts also include Plaintiff's admission to her sister that [redacted] (*Id.* & Ex. F at 23.) Plaintiff evidently understood the significance of this statement while cropping the screenshots for her initial production, because she cut the sentence in half to omit the damaging part:

| **September 2024 Production** | **June 2025 Production** |
|---|---|
|  | [redacted] |

*Second*, the late-produced messages undermine the core of Plaintiff's retaliation theory—her claim that Mr. Giamatteo inappropriately touched her at a dinner in October 2021. The messages chronicle in detail Plaintiff's interactions with Mr. Giamatteo from December 2021 onward. (*Id.* & Ex. F. at 5–24.) Yet in all those messages—which are frequent, detailed, and unfiltered—Plaintiff never once mentions any touching or physical contact. That omission undermines her central allegation that Giamatteo made a sexual advance and then retaliated against her for rejecting it.

**B. <u>After Plaintiff Is Deposed—and Less Than Two Weeks Before the Close of Discovery—Plaintiff Adds Ms. Bath and Mr. Hundal to Her Disclosures.</u>**

BlackBerry deposed Plaintiff on August 22, 2025. (Lavoie Decl. ¶ 9 & Ex. G.) During that deposition, BlackBerry examined Plaintiff about the late-produced text messages, during which Plaintiff identified "Sunny" as a childhood friend and "Bina" as her sister, but their actual names were not mentioned. (*Id.* at ¶ 9 & Ex. G at 1.) Neither person had been disclosed as a potential witness on any topic, and none of the text messages Plaintiff had produced with them were dated in 2024 or 2025—the period of unemployment during which Plaintiff alleges she suffered mental distress. (*Id.* at ¶ 9.) Accordingly, BlackBerry did not question Plaintiff about how either individual might have observed any alleged emotional distress following her departure from BlackBerry. (*Id.*)

Six days later—on August 28, 2025, the day after the de facto deadline for serving discovery requests (30 days before the discovery cutoff on September 26)—Plaintiff's counsel announced during the deposition of a BlackBerry witness that Plaintiff intended to call "Bina" and "Sunny" as emotional-distress witnesses at trial, but did not provide their actual names. (Lavoie Decl. ¶ 10.)

On September 4, 2025—22 days before the discovery cutoff—Plaintiff's counsel sent an email stating: "[P]lease take notice that Plaintiff is considering calling a friend and a sister as trial witnesses regarding the emotional harm she has suffered (Sunny and Bina) … I'm still working on getting contact info and last names from the client." (*Id.* at ¶ 11 & Ex. H at 5.) BlackBerry responded that Plaintiff's email did not comply with the disclosure requirements of Rule 26, that any amended disclosure at this stage would be untimely, and that adding new witnesses so late in discovery would prejudice BlackBerry by depriving it of a fair opportunity to conduct full discovery and manage its ten-deposition limit. (*Id.* & Ex. H at 4.) In subsequent correspondence, Plaintiff's counsel offered to "facilitate" depositions of the new witnesses and remarked that it might "require some hustle and creativity to get there," but did not address why the witnesses were disclosed late or BlackBerry's concerns about the lack of document discovery. (*Id.* & Ex. H at 2–3.)

On September 9, 2025, Plaintiff's counsel disclosed the witnesses' surnames for the first time—Hundal for "Sunny" and Bath for "Bina"—while stating he was still "working on getting

contact info." (Lavoie Decl. ¶ 12 & Ex. H at 1.) The witnesses' first names (Sundeep and Karamveen) were not provided.

On September 15, 2025—eleven days before the discovery cutoff—Plaintiff served amended Rule 26 disclosures adding Karamveen Bath and Sundeep Hundal. (*Id.* at ¶ 13 & Ex. I at 1–7.) Contrary to General Order 71's requirement to provide the "present or last known address and telephone number," Plaintiff listed only email addresses. (*Id.*)

The next day, September 16, 2025, BlackBerry served document requests on Plaintiff seeking a complete set of her communications with Ms. Bath and Mr. Hundal. (*Id.* at ¶ 14 & Ex. J at 3–8.) Given the eleventh-hour disclosure, BlackBerry asked Plaintiff to provide written responses and production on an accelerated schedule. Plaintiff's counsel refused, stating "we have 30 days to respond to the requests" and "[w]e will respond when the responses are due"—i.e., weeks after the discovery cutoff. (*Id.* at ¶ 15 & Ex. K at 2–3.)

Separately, BlackBerry prepared document subpoenas and emailed them to the addresses supplied for Ms. Bath and Mr. Hundal, asking whether they would accept service. (*Id.* at ¶ 16 & Ex. L at 1–21.) Neither individual responded. (*Id.* at ¶ 16.) Plaintiff's counsel—while expressly stating that they do not represent the witnesses—served "Plaintiff's Objections" to the subpoenas, asserting, among other things, a lack of jurisdiction over U.K. residents, Rule 45 place-of-compliance issues, and insufficient time for compliance. (*Id.* at ¶ 18 & Ex. M at 2–3.) Plaintiff's objections proposed a voluntary Zoom deposition "without the document requests listed in the subpoena." (*Id.*)

BlackBerry scheduled a meet and confer among lead counsel in an effort to avoid motion practice. (*Id.* at ¶ 17.) Plaintiff's counsel stated when scheduling the meet and confer that Plaintiff's lead counsel, Maria Bourn, would attend, but Ms. Bourn did not appear. (*Id.*) During the meet and confer on September 23, 2025, BlackBerry explained that Plaintiff's late disclosure violated Rule 26, that the failure was neither substantially justified nor harmless, and that BlackBerry would be eligible to receive its fees and costs if motion practice proved necessary. (*Id.*) Plaintiff declined to withdraw the witnesses. (*Id.* at ¶¶ 17, 21.)

Fact discovery closed on Friday, September 26, 2025. (Lavoie Decl. ¶ 19.) Two days later—on Sunday, September 28—Plaintiff's counsel sent BlackBerry a partial screenshot of an email he received from one of the witnesses, Ms. Bath, offering dates in October (after the close of discovery) for a voluntary Zoom deposition. (*Id.* at ¶ 20 & Ex. O at 3–4.) BlackBerry responded that BlackBerry itself had not received any response to its subpoenas from Ms. Bath or Mr. Hundal and that BlackBerry would not proceed with any depositions given the absence of document productions from Plaintiff and the witnesses. (*Id.* at ¶ 20 & Ex. O at 2.)

## III. LEGAL STANDARD

Rule 26(a)(1)(A)(i) requires each party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Parties must supplement those disclosures "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).

When a party fails to meet those obligations, Rule 37(c)(1) provides the consequence: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence at a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

The exclusion rule "gives teeth" to Rule 26 by "forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011). Rule 37(c)(1) is a "'self-executing,' 'automatic' sanction designed to provide a strong inducement for disclosure." (*Id.* at 827 (quoting Fed. R. Civ. P. 37 advisory committee's note (1993 amendment)).) "Courts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded." *Yeti by Molly, Ltd.*, 259 F.3d at 1106.

## IV. ARGUMENT

### A. The Court Should Exclude Ms. Bath and Mr. Hundal from Supplying Evidence In This Matter.

Plaintiff's disclosure of new witnesses only eleven days before the fact discovery deadline was indisputably untimely, and she cannot meet her burden of showing her failure was substantially justified or harmless. The appropriate and automatic remedy under Rule 37(c)(1) is exclusion of Ms. Bath and Mr. Hundal from supplying evidence in this case.

#### 1. Plaintiff's Disclosure of Ms. Bath and Mr. Hundal Was Untimely.

General Order 71, which both supersedes and incorporates Rule 26(a), required Plaintiff to "[i]dentify persons [she] believe[d] to have knowledge of the facts concerning the claims or defenses at issue in this lawsuit, and a brief description of that lawsuit." General Order 71, p. 3. Federal Rule 26(e)(1)(A) further required Plaintiff to supplement her disclosures "in a timely manner if [she] learn[ed] that in some material respect [her] disclosure . . . [was] incomplete or incorrect, and if the additional or corrective information ha[d] not otherwise been made known to the other parties during the discovery process or in writing." *See* General Order 71, p. 2 (providing that initial disclosures are "subject to F.R.C.P. 26(e) regarding supplementation").

Plaintiff failed to meet these obligations. She omitted both witnesses—her sister, Karamveen Bath, and her childhood friend, Sundeep Hundal—from her initial disclosures in July 2024 and her amended disclosures in August 2024. She did not add them until September 15, 2025, and even then listed only email addresses rather than the required physical addresses and telephone numbers. Courts in this Circuit consistently hold that witness disclosures made only weeks before the close of discovery are untimely. *See, e.g.*, *Baird,* 330 F.R.D. at 246–48 (holding disclosure six weeks before close of discovery was untimely); *Homyk v. Chemocentryx, Inc.,* No. 21-cv-03343-JST (LJC), 2024 WL 5150447, at *1 (N.D. Cal. Aug. 8, 2024) (same, seven weeks before close of discovery); *California Inst. of Tech. v. Broadcom Ltd.*, No. CV16-03714 GW (AGRx), 2017 WL 11001705, at *3 (C.D. Cal. Dec. 18, 2017) (same, nine days); *Torres v. City of Los Angeles*, No. CV-13-1200-MWF-(JCGx), 2014 WL 13133503, at *6 (C.D. Cal. Aug. 5, 2014) (same, ten days); *Vieste, LLC,* 2011 WL 2181200, at *2 (same, two weeks).

Nor is this a case where the witnesses' identities or their purported knowledge had "otherwise been made known" to BlackBerry so as to excuse a formal supplement. *See* Fed. R. Civ. P. 26(e)(1)(A). The "made known" exception is stringent: A collateral disclosure must be "in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response." *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST, 2021 WL 1232451, at *2 (N.D. Cal. Mar. 31, 2021) (citation omitted). Even "[s]imply identifying the individual by name is insufficient; there must be sufficient information to show that 'these individuals possessed discoverable information that supported [the disclosing party's] case,'" so the opponent "could have made educated choices about how best to use their discovery resources." *Baird*, 330 F.R.D. at 246–47 (citing *Vieste*, 2011 WL 2181200, at *3); *see also Shenwick*, 2021 WL 1232451, at *2 ("[M]erely pointing to places in the discovery where the information was mentioned in passing is not sufficient.").

Plaintiff's initial text-message production *obscured* the individuals' names entirely, and her later production showed only the nicknames "Bina" and "Sunny," offering no way to discern who they were and no indication that they possessed knowledge of Plaintiff's alleged post-termination emotional distress. BlackBerry first learned at Plaintiff's August 22, 2025 deposition that "Bina" was Plaintiff's sister and "Sunny" was her childhood friend—and even then, their actual names were not provided until weeks later. "A passing reference in a deposition to a person with knowledge . . . who could conceivably be a witness does not satisfy a party's disclosure obligations," as "an adverse party should not have to guess which undisclosed witnesses may be called to testify." *Ollier,* 768 F.3d at 863. And where, as here, an opposing party "received no indication . . . until the close of discovery that [the disclosing party] intended to call [the individuals] as witnesses, it is understandable that [the opponent] did not pursue discovery concerning them." *Markson,* 2021 WL 5969519, at *3. Indeed, Plaintiff's own September 4, 2025 email—stating "Please take notice that Plaintiff is considering calling a friend and a sister as trial witnesses regarding the emotional harm she has suffered (Sunny and Bina)" and acknowledging counsel was still "working on getting contact info and last names"—confirms that the information had *not* previously been made available. (Lavoie Decl. ¶ 11 & Ex. H at 5.)

Because Plaintiff waited until eleven days before the cutoff to serve amended disclosures identifying Ms. Bath and Mr. Hundal—and because their identities and relevance were not otherwise made known in a manner equivalent to a proper supplement—her disclosures were untimely under Rule 26 and General Order 71.

**2. Plaintiff Cannot Show Her Untimely Disclosures Were Substantially Justified.**

Plaintiff cannot meet her burden of showing her untimely disclosures were substantially justified. The only explanation Plaintiff's counsel has offered is that, late in discovery, counsel decided they would like to present two emotional-distress witnesses at trial. (Lavoie Decl. ¶ 17 (Plaintiff's counsel: "I was thinking about who we were gonna need at trial. We decided: Let's have a couple witnesses to talk about her mental health." "I'm not claiming they were unavailable to me. Obviously, I could have done it earlier. I'm not going to argue we didn't discover them until a month ago.").) That is a lapse in planning, not a justification.

*Markson v. CRST International, Inc.* is directly on point. 2021 WL 5969519, at *4. There, the defendant supplemented its disclosures with new witnesses on the last day of discovery after "consider[ing] additional arguments it could make" following depositions and mediation. The court rejected that rationale, holding that a "belated realization that . . . witnesses might prove useful" was "insufficient to justify untimely disclosures," particularly where the opponent had no reason to anticipate those witnesses. (*Id.* at *2, 4.) As the court explained, the defendant had not "provide[d] any reason to believe its belated reconsideration of its defense arguments could not have occurred earlier," and "made no showing it could not have discovered these witnesses . . . earlier." (*Id.*) So too here: Plaintiff always knew of her sister and childhood friend, yet BlackBerry proceeded through nearly all of discovery without having any idea who they were and with no inkling Plaintiff would seek to have them vouch for her emotional distress.

"Lack of diligence is not substantial justification," and Plaintiff's counsel's decision to wait until the closing days of fact discovery to plan how Plaintiff will try to prove her case at trial falls squarely in that category. *See Theoharis*, 2014 WL 3563386, at *8. Because Plaintiff identifies no

new evidence, no intervening order, and no external barrier that prevented timely disclosure, substantial justification is foreclosed.

**3. Plaintiff Cannot Show Her Untimely Disclosures Were Harmless.**

Plaintiff cannot meet her burden of showing harmlessness because BlackBerry has been prejudiced in multiple, independent ways.

*First*, as the Ninth Circuit has held, a late disclosure that causes "[d]isruption to the schedule of the court and other parties . . . is not harmless." *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005); *see Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) ("modifications to the court's and the parties' schedules," including re-opening discovery, "support[] a finding that the failure to disclose was not harmless"). This case already afforded a sixteen-month discovery period during which BlackBerry incurred substantial expense, including by producing thousands of documents and investing significant time in depositions of, among others, BlackBerry's current and former Chief Executive Officers and its Chief Legal Officer. Extending discovery to pursue new document requests, international subpoenas, and additional depositions would impose precisely the kind of disruption that the Ninth Circuit has deemed not harmless. Having already shouldered the burden and cost of a full discovery cycle, BlackBerry should not be forced to incur still more expense because Plaintiff failed to make timely use of the generous discovery period she was given.

*Second*, BlackBerry completed the most important deposition in the case—Plaintiff's—without knowing that her sister and childhood friend might later testify at trial about her alleged emotional distress and without a complete production of Plaintiff's communications with them. When BlackBerry deposed Plaintiff on August 22, 2025, neither Ms. Bath nor Mr. Hundal appeared in her Rule 26 disclosures, nor had Plaintiff given any informal indication they would be trial witnesses. Because Plaintiff's disclosures arrived after Plaintiff's deposition and after the deadline to serve new written discovery, BlackBerry lost the opportunity to question Plaintiff about these witnesses or their post-termination communications. *See Vieste, LLC,* 2011 WL 2181200, at *3 (late disclosure deprived party of "a meaningful opportunity to take discovery").

*Third*, the timing of Plaintiff's disclosures foreclosed BlackBerry's ability to obtain documents from any source—either from Plaintiff herself or from the two witnesses. The de facto deadline to serve requests for production passed on August 27, 2025—one day before Plaintiff first announced an intent to rely on "Bina" and "Sunny," and more than two weeks before she amended her disclosures. When BlackBerry nonetheless served document requests on September 16, 2025, Plaintiff refused to respond on an expedited schedule—using the discovery cutoff as a shield after waiting to disclose her witnesses. The same timing made it impracticable to obtain documents from the new witnesses who live in the U.K. because formal process under the Hague Convention or via letters rogatory would take weeks or months, not days. When BlackBerry sought to expedite the process by emailing document subpoenas directly to the international witnesses, neither responded. And Plaintiff's counsel—while disclaiming representation of the witnesses—volunteered objections, including an argument that this Court lacks jurisdiction over the U.K. witnesses. The result is that BlackBerry was denied the records it would have obtained had Plaintiff disclosed her witnesses on time—records essential to evaluating any claim by the individuals that they observed Plaintiff in mental distress. *See Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 17-cv-04405-HSG (EDL), 2019 WL 12038882, at *3 (N.D. Cal. Sept. 9, 2019) (prejudice where late disclosure deprived party of "the opportunity to timely obtain documents and testimony").

*Fourth*, hurried depositions without document production or prior testimony from Plaintiff would not cure the harm. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 9900617, at *3 (N.D. Cal. Oct. 26, 2015) ("It was not reasonable to expect [defendant] to divert time and resources to prepare for and take the depositions of [two witnesses] who were disclosed at the eleventh hour."). Even if BlackBerry had attempted to depose Ms. Bath and Mr. Hundal in the eleven days before discovery closed, any examination—without the underlying documents—would have been uninformed, and it could not restore BlackBerry's ability to conduct appropriate document discovery both before and after their depositions. Courts recognize that "a belated deposition cannot cure the prejudice [a party] will suffer because [it] has already been deprived of the opportunity to pursue further discovery that may have arisen from [the late disclosed witness's] documents or testimony." *Plexxikon*, 2019 WL 12038882, at *4.

In sum, Plaintiff's late disclosure deprived BlackBerry of critical questioning at Plaintiff's deposition, denied BlackBerry access to core documents from both Plaintiff and the foreign witnesses, and would require reopening discovery and upending a long-established schedule after sixteen months of costly discovery. That prejudice is concrete and incurable. Plaintiff therefore cannot carry her burden to show harmlessness, and exclusion under Rule 37(c)(1) is warranted.

#### 4. Plaintiff's Discovery Conduct Provides Further Context for Why Exclusion Is Warranted.

While the Court need not find bad faith to order exclusion, *see Yeti by Molly*, 259 F.3d at 1106, the record here reflects discovery gamesmanship that underscores the prejudice to BlackBerry. Plaintiff initially produced cropped, self-serving snippets of messages involving these witnesses, failed to produce pages of responsive surrounding messages for nine months despite repeated requests, and waited until after her deposition and after the last effective date to serve requests for production to inform BlackBerry she would rely on the witnesses. The Court may properly consider that record in ordering exclusion. *Ollier,* 768 F.3d at 863 ("We—and the Advisory Committee on the Federal Rules of Civil Procedure—have warned litigants not to indulge in gamesmanship with respect to the disclosure obligations of Rule 26." (cleaned up).)

### B. <u>BlackBerry Should Be Awarded Its Reasonable Expenses.</u>

If the Court agrees that Plaintiff failed to timely disclose Ms. Bath and Mr. Hundal, and that these untimely disclosures were not substantially justified or harmless, the Court should award BlackBerry "reasonable expenses incurred to bring the Motion." *Browne v. Clark*, No. 2:21-cv-02840-AB-AJR, 2025 WL 1683641, at 8 (C.D. Cal. May 22, 2025) (awarding costs for failing to make timely disclosures of two witnesses). Rule 37(c)(1)(A) expressly provides that the Court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure" to make required disclosures. This sanction may be imposed in addition to excluding the untimely disclosed witnesses. *See id.*; *see also Russo v. Network Solutions, Inc.*, No. C-07-3401 MMC (EMC), 2008 WL 114908, at *2 (N.D. Cal. Jan. 10, 2008).

Plaintiff's conduct warrants such an award. This dispute is not a close call: Plaintiff's disclosures were plainly untimely, unjustified, and not harmless. BlackBerry identified these issues

during the meet-and-confer process and gave Plaintiff the opportunity to withdraw the witnesses and avoid motion practice. (Lavoie Decl. ¶ 17.) Despite the clear infirmities of her position, Plaintiff refused, forcing BlackBerry to incur fees to prepare this motion and the Court to expend resources resolving it. (*Id.*) Plaintiff's delay also required BlackBerry to scramble by drafting document requests and subpoenas, engaging in additional meet-and-confers, and attempting to obtain Plaintiff's cooperation in late-served discovery. These efforts, necessary only because of Plaintiff's noncompliance, caused BlackBerry to incur additional expense.

For purposes of this motion, BlackBerry seeks only a portion of its actual expenses: $24,864. (Lavoie Decl. ¶ 29.) This amount reflects eight hours of time spent by Craig Jennings Lavoie at $1,467 per hour and twelve hours of time spent by Kyra Schoonover at $1,094 per hour. (*Id.* at ¶ 30.) BlackBerry does not seek reimbursement for significant additional time counsel and professionals actually devoted to preparing this motion. (*Id.*) As detailed in the accompanying declaration, the rates for BlackBerry's counsel are consistent with the prevailing market rates for attorneys with similar biographies, accolades, experience, and educational background. (*Id.* at ¶¶ 23-29.) The requested award is therefore both restrained and reasonable.

## V. CONCLUSION

For the reasons set forth above, BlackBerry respectfully requests that the Court (1) exclude Plaintiff's late-disclosed witnesses, Karamveen Bath and Sundeep Hundal, and enter an order that Plaintiff may not use those witnesses to supply evidence on any motion, at a hearing, or at trial in this matter; and (2) award BlackBerry its reasonable expenses of **$24,864** incurred in bringing this motion pursuant to Rule 37(c)(1)(A).

DATED: October 13, 2025 MUNGER, TOLLES & OLSON LLP

By: Craig Jennings Lavoie
CRAIG JENNINGS LAVOIE

Attorneys for Defendant BLACKBERRY CORPORATION