# EXHIBIT 35

| From: | Phil Kurtz [pkurtz@blackberry.com] |
|---|---|
| Sent: | 12/2/2023 6:26:24 PM |
| To: | Dick Lynch [dick.lynch@blackberry.com] |
| Subject: | RE: Status update |
| Attachments: | NS talking points - 2 Dec.docx; Neelam Sandhu Severance Agreement 12.2.23 v4 (clean).docx |

Dick – here are the draft talking points plus the full severance letter and agreement, which I've worked on through the day with external counsel. Please let me know if you have any comments. ▇ hasn't commented on the talking points today; she must be busy with family matters (she took Thursday and Friday off because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Mary tried to reach Kelly today to set her up for Monday but didn't hear back. Mary will try again tomorrow and will keep me posted.

Phil

---

**From:** Phil Kurtz
**Sent:** Saturday, December 2, 2023 2:37 PM
**To:** Dick Lynch <dick.lynch@blackberry.com>
**Subject:** RE: Status update

No change there.

---

**From:** Dick Lynch <dick.lynch@blackberry.com>
**Sent:** Saturday, December 2, 2023 2:31 PM
**To:** Phil Kurtz <pkurtz@blackberry.com>
**Subject:** RE: Status update

I assume that Kelly Chen is still going to be with Neelam, or has that changed?

---

**From:** Phil Kurtz <pkurtz@blackberry.com>
**Sent:** Saturday, December 2, 2023 1:59 PM
**To:** Dick Lynch <dick.lynch@blackberry.com>
**Subject:** Status update

Dick,

Just to keep you in the loop on activities last evening and today:

- Jenn Bramhill knows what's happening and we've had some exchanges about severance terms. She's prepared a draft termination letter, which I'm about to review.
- I discussed the Monday process with external counsel and we've agreed on talking points for the meeting; I've just sent these to Jenn for review too and will share them with you once I have any edits from her.

Stay tuned…
Phil

- With the company's new direction of business separation, your position has become redundant
- If you like, this can be styled as a resignation and we are prepared to work with you to support that public positioning
- You will be relieved of all job duties and approval authority immediately, with formal termination to occur at the end of this week
- We can make that period one week longer if needed to support a resignation narrative, though you will need to use PTO if you wish to be paid beyond the end of this week
- Your network access will end immediately
- With respect to your email account, if you like: (i) your emails can be forwarded to your EA and she can pass along any personal messages that come in, and/or (ii) we can agree on an automatic outbound reply message from your account
- You will receive contractual entitlements in exchange for a release [review payout terms]
- Severance agreement and termination packet will follow to your personal email address shortly after this meeting

December 4, 2023



Dear Neelam,

This letter confirms that, pursuant to your discussion with Kelly Cheun and me on this date, you have been relieved of all job duties effective immediately and your employment with BlackBerry Corporation ("BlackBerry") will cease effective December 8, 2023 (hereinafter the "Termination Date"). <!-- Commented [1]: For discussion with Neelam: open to extending to December 15, with the additional week taken as PTO. Dates throughout would need revision. -->

Upon the Termination Date, you will receive the following, subject to the terms below.

**Severance Benefits**

- **Termination Compensation** – Following the Termination Date, BlackBerry will continue to pay you your current base salary for a period of fifty (50) weeks (the "Severance Period"), less required payroll deductions and withholdings.

- **Health Insurance Continuation** – If you elect to continue to be covered under BlackBerry's group medical insurance plan, subject to the terms and conditions provided for in the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), BlackBerry will pay 100% of the premiums from the Termination Date through the end of calendar year 2023. Information regarding your COBRA rights will be provided to you as required by law.

- **Release** – The above payments are conditional upon you signing the attached separation agreement and release and returning it to Phil Kurtz, Chief Legal Officer and Corporate Secretary, by the deadline specified therein.

**Salary Through Termination Date**

You will receive payment of your regular salary through the Termination Date, subject to ordinary withholdings and deductions.

**Vacation Pay**

You will receive payment for any accrued and unused vacation hours/days up to the Termination Date.

You will also receive the following after the Termination Date:

**Incentive Compensation**

BlackBerry will pay any earned fiscal 2024 Sales Incentive Compensation Pay (SiP) Program bonus to you in accordance with the terms and conditions of your applicable SiP plan.

**Business Expense Reimbursement**

You will be reimbursed for any allowable business expenses incurred up to and including the Termination Date, per the company's Business Expense Reimbursement Policy. If you wish to claim any such unclaimed/not yet submitted allowable business expenses, please submit an expense reimbursement report within seven (7) days of your termination to Kelly Cheun.

**Employee Share Purchase Plan**

If you own BlackBerry shares through the BlackBerry Employee Share Purchase Plan (ESPP), you will need to access your Shareworks account within 90 days to indicate how you would like to receive your proceeds.

**Return of Company Property**

You must return all of BlackBerry's property in your possession (in the office and at your home) or under your control including any American Express credit card, keys, badge and building access cards, parking garage transmitter, laptop and other IT equipment/tools, BlackBerry materials and documents (in any form), on the Termination Date.

We thank you for your contributions to BlackBerry and extend to you our best wishes for the future. If you have any questions re: any of the above matters, please contact me.

Sincerely,


Richard Lynch
Chairman and Interim Chief Executive Officer


Enclosure: Confidential Agreement and General Release

cc: HR File

## SEPARATION AGREEMENT AND RELEASE

This Separation Agreement and Release ("Agreement") is made by and between BlackBerry Corporation (the "Company"), and Neelam Sandhu ("Employee"). This Agreement is effective on the day Employee signs it (the "Effective Date").

WHEREAS, Employee was employed by the Company;

WHEREAS, on or about March 15, 2021, the Company and Employee entered into an employment agreement, which was modified on or about June 15, 2023, and again on or about September 1, 2023 (as amended, the "Employment Agreement");

WHEREAS, the Company has decided to terminate Employee's employment and Employee wishes to release the Company from any claims arising from or related to the employment relationship in exchange for a severance payment;

NOW THEREFORE, in consideration of the mutual promises made herein, the Company and Employee (each individually referred to as a "Party" and collectively as "the Parties") hereby agree as follows:

1. <u>Termination</u>. Employee's employment with the Company will terminate on December 8, 2023 (the "Separation Date").

2. <u>Severance Benefits</u>. Subject to and conditional upon Employee's signing this Agreement no sooner than the Separation Date and no later than December 9, 2023, as well as continuing compliance with the terms and conditions of all sections of this Agreement, Employee will be eligible to receive the severance benefits set forth in Sections 2(a) and (b) (the "Severance Benefits") on the terms provided therein:

    (a) <u>Severance Payments</u>. The Company will continue to pay Employee her base salary, less applicable payroll deductions and withholdings, for a period of fifty (50) weeks from the Separation Date (the "Severance Period").

    (b) <u>Health Insurance Continuation</u>. Employee may elect to continue to be covered under the Company's group medical insurance plan, subject to the terms and conditions provided for in the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"). Provided Employee timely and properly elects COBRA continuation coverage, the Company will pay 100% of the premiums from the Separation Date through the end of calendar year 2023. Information regarding COBRA rights will be provided to Employee as required by law, and Employee is solely responsible for timely and properly electing COBRA continuation coverage.

    (c) <u>Termination of Severance Benefits</u>. If at any time Employee fails to comply with any of Employee's promises and obligations under this Agreement, the Company's obligation to provide any and all Severance Benefits to Employee shall immediately cease and the Company

shall be entitled to repayment of all Severance Benefits paid to Employee, in addition to any other legal or equitable remedies.

(d)   Vacation Pay and Expense Reimbursement. Whether or not Employee signs this Agreement, on the Separation Date, the Company will pay Employee a lump sum amount representing all salary due through the Separation Date and all accrued and unused vacation entitlements up to the Separation Date, less applicable payroll deductions and withholdings. The Company will also reimburse Employee for any allowable business expenses incurred up to and including the Separation Date pursuant to the Company's Business Expense Reimbursement Policy provided that Employee submits a reimbursement report with respect to such expenses within seven (7) days of the Separation Date.

(e)   Tax Consequences.

i.   The Company makes no representations or warranties with respect to the tax consequences of the payment of any sums to Employee under the terms of this Agreement. Employee agrees and understands that Employee is responsible for payment, if any, of local, state and/or federal taxes on the sums paid hereunder by the Company and any penalties or assessments thereon. Employee further agrees to indemnify and hold the Company harmless from any claims, demands, deficiencies, penalties, assessments, executions, judgments, or recoveries by any government agency against the Company for any amounts claimed due on account of Employee's failure to pay federal or state taxes or damages sustained by the Company by reason of any such claims, including reasonable attorneys' fees.

ii.   The intent of the Parties is that payments and benefits under this Agreement comply with Section 409A of the Internal Revenue Code of 1986, as amended, and the regulations and guidance promulgated thereunder ("Section 409A"), to the extent subject thereto, and accordingly, to the maximum extent permitted, this Agreement shall be interpreted and administered to be in compliance therewith.

iii.   Each amount to be paid or benefit to be provided under this Agreement shall be construed as a separate and distinct payment for purposes of Section 409A. To the extent required to avoid accelerated taxation and/or tax penalties under Section 409A, amounts reimbursable to Employee under this Agreement shall be paid to Employee on or before the last day of the year following the year in which the expense was incurred and the amount of expenses eligible for reimbursement (and in-kind benefits provided to Employee) during one year may not affect amounts reimbursable or provided in any subsequent year.

iv.   The Company makes no representation that any or all of the payments described in this Agreement will be exempt from or comply with Section 409A and makes no undertaking to preclude Section 409A from applying to any such payment. Employee understands and agrees that Employee shall be solely responsible for the payment of any taxes, penalties, interest or other expenses incurred by Employee on account of non-compliance with Section 409A.

Employee understands, acknowledges, and agrees that the Severance Benefits in subsections (a) and (b) are being given as consideration in exchange for executing this Agreement. Employee

CONFIDENTIAL

BB13-00018746

further acknowledges that Employee is not entitled to any additional payment or consideration not specifically referenced in this Agreement and acknowledges that, with the exception of any earned fiscal 2024 Sales Incentive Compensation Pay (SiP) Program bonus, which will be paid in accordance with the terms and conditions of Employee's applicable SiP plan, Employee has been paid all wages, bonuses, and other compensation of any kind due to Employee as a result of her employment with the Company.

3. Release and Waiver of Claims.

(a) General Release. In consideration for the Severance Benefits and the Company's promises in this Agreement, Employee, on behalf of Employee and Employee's heirs, executors, administrators, and assigns, hereby completely and irrevocably releases the Company, and any of its affiliated, related, parent or subsidiary companies and its and their present and former shareholders, members, interest holders, owners, managers, directors, or officers, attorneys and employees, and each of their respective successors and assigns (the "Released Parties") from any and all claims Employee may now have or have ever had against the Released Parties, including without limitation, all claims arising from Employee's employment or termination of employment (the "Released Claims"). The Released Claims include, but are not limited to, all claims for breach of contract, breach of quasi-contract, promissory estoppel, detrimental reliance, and breach of the implied covenant of good faith and fair dealing; all tort Claims, including claims for fraud, defamation, slander, libel, negligent or intentional infliction of emotional distress, personal injury, negligence, compensatory or punitive damages, negligent or intentional misrepresentation, and discharge in violation of public policy; and any statutory claims, including any claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991; the Civil Rights Acts of 1866 and/or 1871, 42 U.S.C. Section 1981; the Equal Pay Act of 1963, 29 U.S.C. § 206(d); the Americans with Disabilities Act, 42 U.S.C. 12101 et seq., 29 U.S.C. § 621 et seq.; the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.; the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.; the federal Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. § 2102 et seq.; the California WARN Act, California Labor Code § 1400 et seq.; the California Fair Employment and Housing Act, Cal. Gov. Code§ 12900 et seq.; the California Labor Code and the orders of the California Industrial Welfare Commission; the California Business and Professions Code; and any other claims for violation of any federal, state, or local statutes, ordinances or common law, including, without limitation, claims for alleged retaliation or wrongful termination of any kind, and any and all claims for attorneys' fees and costs.

EMPLOYEE UNDERSTANDS AND AGREES THAT THIS AGREEMENT CONTAINS A GENERAL RELEASE OF ALL CLAIMS.

(b) Waiver of California Civil Code Section 1542. Employee understands and agrees that this release specifically covers known and unknown claims. Employee expressly waives and releases all rights and benefits under Section 1542 of the California Civil Code or any other comparable statute of any jurisdiction. Section 1542 states as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE

MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

        (c)    Agreement Not to File. Subject to the provisions of Section 6, Employee represents that Employee has not initiated, filed, or caused to be filed and agrees not to initiate, file or cause to be filed any Released Claims against any Released Parties. In addition, Employee agrees not to initiate, file, cause to be filed, or otherwise pursue any Released Claims, either as an individual on Employee's own behalf or as a representative, member or shareholder in a class, collective or derivative action against the Released Parties. Employee also agrees not to solicit, assist, support or in any other way cooperate in the initiation or prosecution of any action or proceeding brought against the Released Parties, or any of them, by a third party, except if compelled to do so by legal process.

        (d)    Exceptions to Release. Employee understands that Employee is not waiving any right or claim that cannot be waived as a matter of law, such as workers' compensation claims or claims for unemployment benefits.

    4.    Confidentiality of Agreement. To the furthest extent allowed by law, Employee shall hold the provisions of this Agreement in strictest confidence and shall not publicize or disclose it or its terms in any manner; except that Employee may disclose this Agreement (i) in confidence to Employee's spouse, attorneys, accountants, or tax preparers; and (ii) insofar as such disclosure may be necessary in any proceeding to enforce this Agreement, provided either that the proceeding is confidential or if not, that such disclosure is under seal. If disclosure of any term of this Agreement is compelled by legal process, Employee shall notify the Company reasonably prior to such disclosure, so that the Company may, at its option, seek a protective order. To the extent applicable, nothing in this Agreement prevents Employee from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that the Employee has reason to believe is unlawful.

    5.    Continuing Obligations. Employee shall continue to maintain the confidentiality of all confidential and proprietary information of the Company and shall continue to comply with all of her confidentiality and other obligations under the Employment Agreement that continue after the termination of Employee's employment, which terms are incorporated by reference herein and remain in full force and effect.

    6.    Protected Rights; Defend Trade Secrets Act.

        (a)    Protected Rights. Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement shall prohibit or interfere with Employee exercising protected rights, including rights under the National Labor Relations Act; filing a charge with the Equal Employment Opportunity Commission; reporting possible violations of law to or participating in an investigation by any federal, state, or local government agency or commission such as the National Labor Relations Board, the Department of Labor, OSHA, the Department of Justice, or the Securities and Exchange Commission. Employee does, however, waive any right to receive any personal relief, monetary award or benefit resulting from such a charge, report, or investigation related to any Released Claims, except that Employee may receive and fully retain a monetary award from a government-administered whistleblower award program. Employee may

disclose information as set forth in this Section 6 without the Company's prior authorization. Nothing in this Agreement waives any rights that are not subject to waiver by private agreement or otherwise cannot be waived as a matter of law.

(b) Defend Trade Secrets Act Notification. Employee is hereby notified that 18 U.S.C. § 1833(b) states as follows: "An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that-(A) is made-(i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal." Accordingly, notwithstanding any other provision of this Agreement to the contrary, Employee has the right to (1) disclose in confidence trade secrets to federal, state, and local government officials, or to an attorney, for the sole purpose of reporting or investigating a suspected violation of the law or (2) disclose trade secrets in a document filed in a lawsuit or other proceeding so long as that filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with 18 U.S.C. § 1833(b) or create liability for disclosures of trade secrets that are expressly allowed by 18 U.S.C. § 1833(b).

7. Return of Company Property. Employee shall return all the Company property and confidential and proprietary information in Employee's possession to the Company prior to the Separation Date, including without limitation all identification cards or badges, access codes or devices, keys, laptops, computers, telephones, mobile phones, hand-held electronic devices, credit cards, electronically stored documents or files, physical files, and any other Company property in Employee's possession. Employee's eligibility for and receipt of the Severance Benefits is expressly conditioned upon return of all Company Property.

8. Non-Disparagement. Employee agrees that Employee shall not at any time make, publish or communicate to any person or entity in any forum any defamatory or disparaging remarks, comments or statements concerning the Company, its businesses or the Released Parties. This Section does not, in any way, restrict or impede Employee from exercising protected rights, to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order.

9. Knowing and Voluntary Acknowledgments and Affirmations. Employee specifically represents, warrants, and confirms the following: (a) that the Company has timely and properly paid Employee all salary, wages, bonuses, accrued vacation earned and all other benefits or compensation due to Employee as of the Separation Date in accordance with applicable law; (b) except as expressly provided herein, Employee is not entitled to and will not receive any additional compensation or benefits from the Company after the Separation Date; (c) all of the decisions of the Company regarding her pay and benefits or other terms or conditions of her employment through the Effective Date of this Agreement were not discriminatory or retaliatory based on age, disability, race, color, sex, religion, national origin, protected activity, or any other classification protected by law; (d) Employee has not filed any claims, complaints, or actions of any kind against any of the Released Parties with any federal, state, or local court or government or administrative agency; (e) neither the Company, nor Employee has engaged in any unlawful

CONFIDENTIAL

BB13-00018749

conduct relating to the business of the Company, and Employee further acknowledges that to the extent she has raised any allegations about alleged unlawful acts in the workplace through the Company's internal complaint process, this Agreement is and intended to be a negotiated settlement to resolve those allegations; (f) Employee has had at least five (5) calendar days in which to consider whether to sign this Agreement, and if Employee signs sooner, she has done so voluntarily; and (g) Employee understands that she has the right to consult with counsel regarding this Agreement.

10. No Admission. Employee understands and agrees that this Agreement is not an admission of guilt or wrongdoing by the Company, and that the Company does not believe or admit that it has done anything wrong.

11. Severability. In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision.

12. Entire Agreement. This Agreement, including the terms of any agreements incorporated by reference herein, represents the entire agreement and understanding between the Company and Employee concerning Employee's separation from the Company, and supersedes and replaces any and all prior agreements and understandings concerning Employee's relationship with the Company and Employee's compensation by the Company.

13. No Oral Modification. This Agreement may only be amended in writing signed by Employee and a duly authorized representative of the Company.

14. Governing Law and Dispute Resolution. This Agreement shall be governed by the laws of the State of California. Employee and the Company hereby irrevocably submit to the exclusive jurisdiction of federal and state courts in the State of California and waive the defense of inconvenient forum to the maintenance of any action or proceeding in such venue.

15. Counterparts. This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned.

16. Voluntary Execution of Agreement. This Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the Parties hereto, with the full intent of releasing all claims. The Parties acknowledge that:

(a) They have read this Agreement and have been given sufficient time to consider the terms of this Agreement before signing it;

(b) They have been represented in the preparation, negotiation, and execution of this Agreement by legal counsel of their own choice or that they have voluntarily declined to seek such counsel;

(c) They understand the terms and consequences of this Agreement and of the releases it contains;

(d) They are fully aware of the legal and binding effect of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the respective dates set forth below.

**BlackBerry Corporation**

**DATED:** December ___, 2023         By: _____
                                          Name:
                                          Title:

**Neelam Sandhu,** an individual

**DATED:** December ___, 2023         _____

CONFIDENTIAL
BB13-00018751