Maria Bourn (SBN 269322)
Anthony Tartaglio (SBN 280286)
GOMERMAN | BOURN & ASSOCIATES
825 Van Ness Avenue, Suite 502
San Francisco, CA 94109
Telephone: (415) 545-8608
Email: maria@gobolaw.com
       tony@gobolaw.com

Attorneys for Plaintiff
NEELAM SANDHU

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEELAM SANDHU, an individual,<br><br>vs.<br><br>BLACKBERRY CORPORATION, a Delaware Corporation,<br><br>Defendant. | Case No.: 3:24-cv-02002-SK<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL**<br><br>Hearing Date:　January 26, 2026<br>Hearing Time:　9:30 AM<br>Location:　　　Courtroom C<br>Judge:　　　　Hon. Sallie Kim |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff NEELAM SANDHU hereby moves this Court for an order denying Defendant BlackBerry Corporation's Administrative Motion to File Under Seal.

## I. INTRODUCTION

Defendant BlackBerry seeks to seal exhibits, which include evidence that goes to the heart of Plaintiff's claims and include anonymous complaints alleging that CEO John Giamatteo engaged in sexual harassment and created a "boys club." These are not mere personnel matters or routine business disputes. They involve allegations of systematic discrimination and harassment at the highest levels of a publicly traded corporation, matters that implicate significant public interests in corporate governance, workplace equality, and the enforcement of civil rights laws in what Defendant considers a "high profile" case. The bottom line is straightforward: BlackBerry has failed to meet the "compelling reasons" to seal documents attached to a motion for summary judgment. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir. 2003).

## II. LEGAL STANDARD

The Ninth Circuit recognizes a "strong presumption in favor of access" to judicial records in civil cases. *Kamakana*, 447 F.3d at 1178. This presumption serves critical democratic functions—ensuring the public's understanding of the judicial process and of significant public events. *Id.* A party seeking to seal a judicial record bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. *Foltz*, 331 F.3d at 1135. That is, the party must "articulate compelling reasons supported by specific factual findings" that outweigh the general history of access and the public policies favoring disclosure, such as the "public interest in understanding the judicial process." *Id.*

The Ninth Circuit has made clear that while a "good cause" standard under Rule 26(c) applies to discovery materials generally, a much higher "compelling reasons" standard applies when those same materials are attached to dispositive motions like motions for summary

judgment. The Court acknowledged explicitly in *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999), and later confirmed in *Foltz*, 331 F.3d at 1136, that the strong presumption of access to judicial records applies fully to dispositive pleadings, including motions for summary judgment and related attachments. The Court adopted this principle of disclosure because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the "public's understanding of the judicial process and of significant public events." *Valley Broadcasting Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1294 (9th Cir. 1986); *accord Foltz*, 331 F.3d at 1135-36.

### III. ARGUMENT

BlackBerry's sealing motion fails because it cannot meet the required "compelling reasons" attached to dispositive motions. The motion suffers from four fatal defects. First, BlackBerry waived confidentiality protections by failing to comply with the Protective Order's requirement to designate confidential deposition testimony within 21 days after transcripts became available. Second, BlackBerry's arguments rest on generalized, boilerplate assertions rather than the specific factual findings *Foltz* demands. Third, the interests BlackBerry invokes—employee privacy, customer confidentiality, and business strategy—do not rise to the level of compelling reasons when balanced against the strong public interest in this case. Fourth, BlackBerry has already disclosed much of the information it now seeks to seal through public press releases and SEC filings.

BlackBerry's failure to meet the Protective Order's timing requirements is dispositive. The depositions at issue were taken between February and September 2025, but BlackBerry waited until December 10, 2025—when filing its summary judgment motion—to seek confidential treatment. Under Section 5.2(b) of the Protective Order, BlackBerry was required to designate specific portions of deposition testimony as confidential within 21 days after transcripts became available. (Dkt. 30 at 7). The Protective Order explicitly states that "[o]nly those portions of the testimony that are appropriately designated for protection within the 21

days shall be covered by the provisions of this Stipulated Protective Order." (*Id.*) At the conclusion of Richard Lynch's June 5, 2025 deposition, defense counsel stated: "Before we can go off the record, I don't know that we will need to make any, but we do reserve the right to make confidentiality designations to deposition testimony within 21 days as provided by the protective order in the case." (Lynch Dep. at 264:22-25). Similar statements were made at the conclusion of John Giamatteo's August 28, 2025 deposition. (Giamatteo Dep. at 261:14-17). However, these general reservations did not satisfy the Protective Order's requirement to "identify the specific portions of the testimony as to which protection is sought" within the 21-day deadline. (Dkt. 30 at 7). BlackBerry's months-long delay in seeking confidential treatment—well beyond the 21-day window—constitutes a waiver of any confidentiality protections for the deposition materials. This waiver applies to Exhibits 1, 3, 20, 30, 31, 44, 45, 46, 47, 49, and 50, which contain deposition excerpts from witnesses including John Chen, Neelam Sandhu, Richard Lynch, John Giamatteo, Phil Kurtz, Jennifer Bramhill, Colleen McMillan, Erin Ransom, Mary Slimmon, and Sarah Tatsis. As for the Depositions of Colleen McMillan, Erin Ransom, Mary Slimmon, and Sarah Tatsis Defendant did not make any designations, thus no protection applies. Even if BlackBerry had timely designated the materials—which it did not—the motion would fail on the merits because BlackBerry has not articulated compelling reasons supported by specific factual findings.

BlackBerry's first category—names of third-party employees who participated in investigations or whose employment was discussed—fails because these are witnesses to the very conduct Plaintiff alleges. The Morrison & Foerster investigation identified them as employees that filed complaints about pay disparities, hostile work environment, and sexually inappropriate comments, and later reached a confidential settlement with them. None of these employees have objected based on privacy. Moreover, BlackBerry has not explained why redacting names is necessary when the substantive allegations remain visible.

BlackBerry's second category—anonymous complaints—fares no better. The complaints are already anonymous. (Dkt. 112-1 at 4). BlackBerry seeks to redact details that might identify complainants, but provides only conclusory statements that disclosure would "compromise the integrity of BlackBerry's internal personnel systems and processes." (*Id*.) This falls far short of the specific factual findings *Foltz* requires. The anonymous EthicsLink complaint submitted October 26, 2023—four days before John Chen announced his retirement and just weeks before BlackBerry appointed Giamatteo as CEO—alleged that Giamatteo nearly identical treatment Plaintiff has alleged in her complaint. The complaint is central to understanding Plaintiff's retaliation claim. The public interest in these complaints is particularly strong because they concern allegations of systematic discrimination.

BlackBerry's fifth category—business strategy information—is perhaps the weakest. The information at issue relates to Project Mustard, BlackBerry's November 2023 restructuring plan. This restructuring was publicly announced on December 11, 2023. (BB13-00022505; Dkt. 111 at 8). The strategic information BlackBerry now seeks to seal—contained in Exhibit 48, which includes handwritten notes from November 2023—is over two years old. BlackBerry has not shown how disclosure of stale strategic planning documents would cause current competitive harm. Mere speculation about potential harm is insufficient under *Foltz*.

## IV. CONCLUSION

This case involves serious allegations of workplace sexual harassment and discrimination by BlackBerry's current CEO based on complaints from approximately ten women spanning a decade. An anonymous EthicsLink complaint was filed just days before the CEO appointment, triggering a Morrison & Foerster investigation. Summary judgment will adjudicate substantive rights and serve as a substitute for trial on these serious allegations in what Defendant considers a "high profile" gender discrimination case. The public has a compelling interest in understanding how this Court resolves claims of systematic discrimination by corporate leadership. This interest is heightened because the accused individual, John

Giamatteo, is now BlackBerry's CEO. CEOs of publicly traded companies occupy positions of public trust affecting employees, shareholders, customers, and communities. When serious allegations of sexual harassment and discrimination are made against a CEO—especially allegations corroborated by multiple witnesses and spanning multiple companies—the public has a compelling interest in understanding how those allegations were investigated and resolved.

BlackBerry's attempt to seal the investigation materials would prevent the public from evaluating how BlackBerry responded when multiple women alleged that a senior executive engaged in sexual harassment, what evidence the investigators found, and what witnesses reported. These questions go to the heart of workplace equality and corporate accountability—matters of obvious public importance.

Dated: December 16, 2025                    **GOMERMAN | BOURN & ASSOCIATES**

                                                      */s/ Maria Bourn*

                                                     Maria Bourn
                                                     Anthony Tartaglio
                                                     Attorney for PLAINTIFF
                                                     NEELAM SANDHU