KATHERINE M. FORSTER (State Bar No. 217609)
Katherine.Forster@mto.com
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
LAUREN N. BECK (State Bar No. 343375)
Lauren.Beck@mto.com
KYRA E. SCHOONOVER (State Bar No. 343166)
Kyra.Schoonover@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:      (213) 683-9100
Facsimile:      (213) 687-3702

Attorneys for Defendant BLACKBERRY
CORPORATION

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEELAM SANDHU, an individual, | Case No. 3:24-cv-02002-SK |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANT BLACKBERRY CORPORATION'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| BLACKBERRY CORPORATION, a Delaware Corporation, | Hearing Date:      January 26, 2026<br>Time:      9:30 AM<br>Place:      Courtroom C<br>Judge:      Hon. Sallie Kim |
| Defendant. | |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION..................................................................................................1

II.   ARGUMENT ........................................................................................................2

    A.    Plaintiff Cannot Show a Continuous Course of Conduct...........................2

    B.    Plaintiff Does Not Dispute BlackBerry's Arguments as to the Account
        Transfer. ...................................................................................................3

    C.    Plaintiff Does Not Dispute BlackBerry's Arguments as to Treatment by
        Peers. ........................................................................................................4

    D.    Plaintiff's Retaliation and Discrimination Claims as to Her Termination
        Fail. ..........................................................................................................5

        1.    Plaintiff Cannot Show That Improper Intent Contributed to or
            Substantially Motivated Her Termination. ......................................5

            (a)    *Evidence Pertaining to Mr. Lynch* ....................................6

            (b)    *Mr. Giamatteo's Role* .......................................................8

            (c)    *Evidence From Other Coworkers* ....................................10

            (d)    *Other Women's Experiences* ...........................................10

            (e)    *Morrison Foerster Report* ...............................................12

            (f)    *Timing*..............................................................................12

        2.    BlackBerry Has Shown That It Would Have Fired Plaintiff
            Regardless. ...................................................................................12

            (a)    *BlackBerry Has Offered a Consistent Rationale*............13

            (b)    *Plaintiff's Performance and Personality Were Not Relevant.* .........14

            (c)    *Plaintiff's Other Arguments as to Pretext Are Misdirection.*...........14

    E.    Plaintiff Concedes Her Remaining Claims. ............................................15

    F.    Summary Judgment Is Proper Against Punitive Damages.......................15

III.  CONCLUSION ...................................................................................................15

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**<u>Page(s)</u>**

3

**FEDERAL CASES**

4

*Abogados v. AT&T, Inc.*,
    223 F.3d 932 (9th Cir. 2000) ................................................................................................3

5

6

*Anderson v. City & Cnty. of San Francisco*,
    169 F. Supp. 3d 995 (N.D. Cal. 2016) ..................................................................................9

7

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...........................................................................................8, 9

8

9

*Day v. Sears Holdings Corp.*,
    930 F. Supp. 2d 1146 (C.D. Cal. 2013) ...................................................................10, 11, 14

10

*Gunzenhauser v. Garland*,
    2024 WL 1120385 (N.D. Cal. Mar. 14, 2024), *aff'd*, 2025 WL 1392137 (9th
    Cir. May 14, 2025) ................................................................................................................9

11

12

*Henshaw v. Hartford Ins.*,
    2005 WL 1562265 (E.D. Cal. June 30, 2005) ......................................................................7

13

14

*Hittle v. City of Stockton*,
    101 F.4th 1000 (9th Cir. 2024) .............................................................................................7

15

*Kazdoba v. Zoll Medical Corp.*,
    2025 WL 2371806 (N.D. Cal. May 13, 2025) ......................................................................8

16

17

*Lawson v. PPG Indus., Inc.*,
    2025 WL 2493767 (C.D. Cal. Aug. 13, 2025) ....................................................................13

18

*Machado v. Johnson*,
    191 Fed. App'x 531 (9th. Cir. 2006) ..................................................................................11

19

20

*Marentes v. State Farm Mut. Auto. Ins. Co.*,
    224 F. Supp. 3d 891 (N.D. Cal. 2016) ................................................................................15

21

*Merrick v. Farmers Ins. Grp.*,
    892 F.2d 1434 (9th Cir. 1990) ........................................................................................7, 10

22

23

*Oliver v. L'Occitane, Inc.*,
    2015 WL 13916223 (C.D. Cal. Mar. 3, 2015) .....................................................................7

24

*Opara v. Yellen*,
    57 F.4th 709 (9th Cir. 2023) .................................................................................................9

25

26

*In re REMEC Inc. Sec. Litig.*,
    702 F. Supp. 2d 1202 (S.D. Cal. 2010) ................................................................................7

27

*Rodriguez v. Comcast*,
    2020 WL 4368213 (N.D. Cal. July 30, 2020) ...............................................................12, 15

28

# TABLE OF AUTHORITIES
### (continued)

Pages(s)

*Schuler v. Chronical Broad. Co. Inc.*,
  793 F.2d 1010 (9th Cir. 1986)............................................................................11

*Snapkeys, Ltd. v. Google LLC*,
  539 F. Supp. 3d 1040 (N.D. Cal. 2021) ...........................................................3, 5

*Stovall v. Align Tech., Inc.*,
  2022 WL 899416 (N.D. Cal. Mar. 28, 2022) ......................................................11

*Sustrick v. CI Cap. Partners LLC*,
  2025 WL 1626175 (N.D. Cal. May 5, 2025) .........................................................4

*Talamantes v. Costco Wholesale Corp.*,
  2025 WL 1785766 (N.D. Cal. June 27, 2025) ......................................................15

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002).............................................................................9

**STATE CASES**

*Alamo v. Prac. Mgmt. Info. Corp.*,
  219 Cal. App. 4th 466 (2013).............................................................................6

*Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*,
  96 Cal. App. 4th 1017 (2002).............................................................................15

*Harris v. City of Santa Monica*,
  56 Cal. 4th 203 (2013)..................................................................................7, 10

*Husman v. Toyota Motor Credit Corp.*,
  12 Cal. App. 5th 1168 (2017).............................................................................4

*Joaquin v. City of Los Angeles*,
  202 Cal. App. 4th 1207 (2012)...........................................................................15

*Lampkin v. Cnty. of Los Angeles*,
  112 Cal. App. 5th 920 (2025).............................................................................13

*Lawson v. PPG Arch. Finishes, Inc.*,
  503 P.3d 659 (Cal. 2022) ..............................................................................3, 4

*Martin v. Bd. of Trs. of Calif. State Univ.*,
  97 Cal. App. 5th 149 (2023)...............................................................................8

*McRae v. Dep't of Corr.*,
  142 Cal. App. 4th 377 (2006)........................................................................1, 2, 3

*Morgan v. Regents of Univ. of Cal.*,
  88 Cal. App. 4th 52 (2000)...................................................................3, 4, 6, 10, 13

*Mueller v. Cnty. of Los Angeles*,
  176 Cal. App. 4th 809 (2009).............................................................................4

*Vatalaro v. Cnty of Sacramento*,
  79 Cal. App. 5th 367 (2022)...............................................................................6

TABLE OF AUTHORITIES
(continued)

Pages(s)

*Yanowitz v. L'Oreal*,
    116 P.3d 1123 (Cal. 2005) ...................................................................................2, 4, 5

STATE STATUTES

Cal. Lab. Code § 1102.5................................................................................... *passim*

1    I.    **INTRODUCTION**

2         Plaintiff's Opposition fails to put forth evidence that BlackBerry's decision to part ways with

3    her as part of a major restructuring was discriminatory, retaliatory, or improper.  Indeed, Plaintiff's

4    former roles have not existed at BlackBerry since her separation—a fact she does not contest.

5    Instead, she grasps to avoid summary judgment through three moves the law does not permit.

6         *First*, Plaintiff tries to manufacture an adverse employment action by lumping together

7    disconnected workplace events—spanning different time periods, decisionmakers, and alleged

8    motivations—as a single continuous course of conduct.  But the law does not allow that where the

9    events are not tied to a single protected act, a single chain of command, or any coherent retaliatory

10   course.  *See McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 391 (2006).  And in any

11   case, the components of Plaintiff's "collective actions" theory are full of holes—including a lack of

12   evidence that the alleged bad actors were *aware* of protected activity, let alone motivated by it.

13        *Second*, Plaintiff attempts to fill evidentiary gaps with speculation—conflating awareness

14   with motive, relying on non-decisionmakers' remarks to impute intent to Mr. Lynch (who she

15   concedes decided to terminate her), and pressing a cat's-paw theory contrary to law and built on

16   conjecture.  Plaintiff urges that leadership suspected she submitted an anonymous complaint and

17   that Mr. Lynch was briefed on her prior complaints.  But even if Plaintiff could establish that Mr.

18   Lynch was aware of a protected complaint before deciding to terminate her, neither suspicion nor

19   knowledge of protected activity shows retaliatory intent.  Plaintiff further claims a jury could infer

20   that Mr. Lynch "assured" John Giamatteo he would "get rid of" her, and that unnamed people told

21   her Mr. Giamatteo would not sign his CEO contract until she was fired.  The first is pure speculation,

22   and the second is hearsay-on-hearsay unsupported by personal knowledge.  Finally, Plaintiff urges

23   the Court to infer intent from a handful of communications that do not include Mr. Lynch or discuss

24   Plaintiff's termination—and which therefore cannot show intent.  In sum, Plaintiff has no admissible

25   evidence that anyone beside Mr. Lynch made the decision to terminate her (because no one else

26   did), and no evidence that retaliation or discrimination contributed (because they did not).

27        *Finally*, Plaintiff asks the Court to infer pretext from scattershot anecdotes untethered from

28   the only decision that matters: Mr. Lynch's restructuring-driven elimination of Plaintiff's roles.  She

1   cites testimony from witnesses in different departments, with different supervisors, at different

2   times, who cannot offer evidence that improper motives drove Mr. Lynch's decision to eliminate

3   Plaintiff's roles.  She offers no basis to conclude that these individuals were similarly situated to

4   her, and no authority to suggest that the Court should treat a handful of experiences as proof of a

5   "pattern," much less one connected to Mr. Lynch.  Nor can Plaintiff salvage this evidence through

6   rhetoric about "culture" or a "boys' club."  At a large corporation—particularly one undergoing

7   contraction—there will always be former employees with negative views about the company.  The

8   question at summary judgment is not whether Plaintiff can assemble criticism.  It is whether she can

9   offer admissible evidence that retaliation or discrimination motivated her termination.  She cannot.

10  **II.    ARGUMENT**

11       **A.    Plaintiff Cannot Show a Continuous Course of Conduct.**

12       The critical premise of Plaintiff's Opposition is her claim that a jury should assess whether

13  the "collective actions" of numerous BlackBerry employees over a two-year period "constitute an

14  adverse employment action."  Opp. at 14.  That premise is wrong:  The law is clear that actions by

15  different decisionmakers that bear little relationship to each other cannot be grouped as a single

16  "continuous course of conduct" for the adverse-action inquiry.  *See McRae*, 142 Cal. App. 4th at

17  391 (series of actions, taken by "many different persons, for different reasons, some of which

18  indisputably had nothing to do with [the employee's] protected conduct," could not constitute a

19  single course of conduct).  The *McRae* court expressly differentiated *Yanowitz v. L'Oreal*, 116 P.3d

20  1123 (Cal. 2005)—Plaintiff's sole authority for her claim that the challenged conduct should be

21  viewed "collectively," Opp. at 14—because in *Yanowitz*, unlike *McRae*, "all of the allegedly

22  wrongful acts were engaged in by the plaintiff's immediate supervisor and his supervisor, and all

23  were taken in response to a single protected act by the plaintiff."  *McRae*, 142 Cal. App. 4th at 391.

24       Here, similar to *McRae*, Plaintiff urges the Court to assess six unrelated alleged acts by at

25  least three different decisionmakers as a single adverse action: (1) exclusion from meetings by Mr.

26  Giamatteo in late 2021; (2) "being cut out of key business decisions" by unidentified coworkers

27  (presumably including Mr. Giamatteo); (3) the 2023 transfer of accounts by John Chen; (4) a "denial

28  of a salary increase" by Mr. Chen upon her promotion to CMO in 2023; (5) a denial of the title of

1    "Chief Customer Officer" by Mr. Chen; and (6) her termination by Mr. Lynch.  Opp. at 14.

2    That is improper.  Plaintiff has offered no evidence that these alleged acts were related to a

3    common protected activity or to each other.  *See McRae*, 142 Cal. App. 4th at 391.  The alleged

4    exclusion from meetings was cured by January 2022, *see infra* p. 4 n.1, nearly two years before

5    Plaintiff's termination and *before* any actionable protected conduct, *see* Mot. at 16.  The claim that

6    Plaintiff was "cut out of key business decisions" does not refer to *any* clear actor, much less one

7    with knowledge of protected conduct or intent to retaliate.  And Plaintiff's allegations relating to the

8    account transfer, her promotion to CMO, and her title all involve personnel decisions by Mr. Chen

9    with no causal link to any protected activity, *see* Mot. at 12–13.  The Court therefore must assess

10   each retaliation and discrimination theory on its own—despite Plaintiff's "attempt[] to tie the

11   complained-of actions together by asserting that they were all in some way engineered or furthered"

12   by Mr. Giamatteo "as part of his plan to discredit and injure her."  *McRae*, 142 Cal. App. 4th at 391.

13          **B.**          **Plaintiff Does Not Dispute BlackBerry's Arguments as to the Account Transfer.**

14   Plaintiff offers no meaningful response to BlackBerry's arguments related to the 2023

15   account transfer, each of which is independently fatal to her position.  She has thereby forfeited any

16   argument related to that transfer.  *See Snapkeys, Ltd. v. Google LLC*, 539 F. Supp. 3d 1040, 1050

17   (N.D. Cal. 2021) (failure to raise argument in response to summary judgment motion constitutes

18   waiver); *Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) (same).

19          ***First***, Plaintiff does not dispute that the account transfer was not an adverse employment

20   action because it was paired with her promotion to CMO.  *Compare* Mot. at 12–13, *with* Opp. at 14

21   (arguing only that the transfer is part of a continuous course).  Her Opposition, to the contrary,

22   concedes that the promotion and transfer were a package.  *See* Opp. at 4 ("While she gained the

23   CMO title, valuable Elite customer accounts were simultaneously transferred . . . .").  That waiver

24   is fatal to her claims under FEHA and Labor Code Section 1102.5 ("Labor Code 1102.5"), which

25   each require Plaintiff to demonstrate an adverse action.  *See Morgan v. Regents of Univ. of Cal.*, 88

26   Cal. App. 4th 52, 69 (2000); *Lawson v. PPG Arch. Finishes, Inc.*, 503 P.3d 659, 663 (Cal. 2022).

27   ***Second***, Plaintiff effectively concedes that the transfer had no relationship to any protected activity.

28   As BlackBerry explained, the only activity with a potential causal connection to the transfer was her

1    February 2023 complaint, which did not disclose or put BlackBerry on notice of unlawful activity,

2    as a complaint must to qualify as protected conduct.  *See* Mot. at 13; *Husman v. Toyota Motor Credit*

3    *Corp.*, 12 Cal. App. 5th 1168, 1193–94 (2017) (complaint must put employer on notice of conduct

4    FEHA prohibits); *Sustrick v. CI Cap. Partners LLC*, 2025 WL 1626175, at *2 (N.D. Cal. May 5,

5    2025) (Kim, J.) (complaint must disclose "a violation of state or federal statute" to qualify for

6    whistleblower protection under Labor Code 1102.5).  The most Plaintiff says in response is that

7    complaints need not include "magic words like 'discrimination' or 'harassment.'"  Opp.  at 14.

8    BlackBerry does not disagree.  But that does not explain how the February 2023 complaint—which

9    concerned only professional friction like exclusion from client communications and meetings, with

10   no claims connected to gender or any other unlawful conduct—should have put BlackBerry on

11   notice of discrimination or harassment, or "disclosed" a violation of state or federal law.  *See* Mot.

12   at 13, 14 n.3; *Mueller v. Cnty. of Los Angeles*, 176 Cal. App. 4th 809, 821–22 (2009) (complaints

13   focused on personnel grievances cannot support a whistleblower claim).  ***Finally***, Plaintiff does not

14   offer *any* argument that Mr. Chen acted with improper intent, nor address BlackBerry's argument

15   that Mr. Chen's simultaneous choice to promote her is "strong evidence" to the contrary, Mot. at

16   20, 22.  Again, that independently dooms her claims.  *See Morgan*, 88 Cal. App. 4th at 54; *Lawson*,

17   503 P.3d at 664 (whistleblower liability requires Plaintiff to show retaliatory intent).

18        **C.    Plaintiff Does Not Dispute BlackBerry's Arguments as to Treatment by Peers.**

19        Plaintiff has similarly failed to address several independently dispositive arguments for why

20   alleged conduct by Mr. Giamatteo and the so-called "boys club" does not constitute retaliation or

21   discrimination.   ***First***, she offers no argument that conduct by Mr. Giamatteo and her other

22   coworkers amounts to an adverse employment action when not combined with her termination.[1]

---

[1] Neither of the examples in Plaintiff's Opposition, (1) "exclusion from meetings," or (2) "being cut out of key business decisions," is adverse.  Actions are adverse only if they are "reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion." *Yanowitz*, 116 P.3d at 1139.  Plaintiff's alleged exclusion from meetings does not meet that standard, because the calls mattered little to her career.  She concedes they were "for [Mr. Giamatteo's] direct reports" and "optional for [her] to attend," Ex. 3 (Sandhu Dep.) at 220:15-221:7, and that, after she was invited in January 2022, *id.* at 218:17-221:7, she attended only a handful of times, *id.* 220:7-9 (suggesting she attended "one, maybe two of the meetings" after receiving the invite); *accord* Ex.

1    *Compare* Mot. at 14–16, *with* Opp. at 14–15 (arguing only that conduct is a continuous course).

2    Plaintiff has thus forfeited any argument that alleged treatment from her peers was an adverse action,

3    leaving an irreparable hole in her claims under both FEHA and Labor Code 1102.5.  **Second**,

4    although the Court can end the analysis there, Plaintiff's retaliation theories related to her peers fail

5    for an additional, independent reason:  Plaintiff has alleged *no* protected activity with a causal link

6    to the conduct she describes.  She forfeits any response to BlackBerry's argument that rebuffing a

7    sexual advance is not protected activity under FEHA, Mot. at 15, by failing to address the point.

8    *See Snapkeys*, 539 F. Supp. 3d at 1050.  And she does not address BlackBerry's showing that she

9    lacks any evidence that Mr. Giamatteo knew of her claimed report of an alleged sexual advance to

10   Mr. Chen (or Mr. Rai), *see* Mot. at 15–16 (no evidence Mr. Giamatteo was aware of *any* potentially

11   protected activity before July 2022, months into conduct Plaintiff claims was retaliatory), or that

12   members of the so-called "boys club" knew of protected activity at any relevant time, Mot. at 16.

13   **D.    Plaintiff's Retaliation and Discrimination Claims as to Her Termination Fail.**

14       Having waived (and failed to support) arguments related to the account transfer and

15   treatment by her peers, Plaintiff is left only with theories regarding her termination.  For the reasons

16   set forth below, she cannot meet her burdens to demonstrate that her termination was driven by

17   retaliatory or discriminatory intent under *either* Labor Code 1102.5 or FEHA.

18       **1.    Plaintiff Cannot Show That Improper Intent Contributed to or Substantially Motivated Her Termination.**

19

20       Plaintiff concedes that Mr. Lynch was responsible for her termination, *see* Opp. at 2, and

21   makes five allegations to suggest he acted with improper intent: (1) he speculated Plaintiff was

22   involved in the EthicsLink complaint and was told she made prior complaints; (2) Mr. Giamatteo

23   drove her firing; (3) other women experienced retaliation; (4) BlackBerry did not adopt suggestions

24   from the Morrison Foerster report; and (5) her termination was close in time to a complaint.  For the

25   reasons below, none is sufficient to meet Plaintiff's burden under Labor Code 1102.5 or FEHA.

26   _____

     30 (Giamatteo Dep.) at 213:8-25 (Mr. Giamatteo removed Plaintiff from the meetings over a year
27   after she was added, because she had joined only two or three weekly calls)  Nor has Plaintiff shown
     that being "cut out of key business decisions" was adverse.  She fails to identify what decisions she
28   was excluded from or by whom, much less offer any *evidence* that she was excluded or that the
     decisions affected her "job performance or prospects for advancement." *Yanowitz*, 116 P.3d at 1139.

1

### (a)        *Evidence Pertaining to Mr. Lynch*

2        Mr. Lynch testified that Ms. Sandhu's termination was not based on retaliatory motive, Ex.

3   20 (Lynch Dep.) at 260:13-22, and was decided by November 13, *id.* at 260:2-12, and Plaintiff offers

4   no evidence to the contrary.  *See Morgan*, 88 Cal. App. 4th at 76 (at summary judgment, Plaintiff

5   "must do more than establish a prima facie case and deny the credibility of the defendant's

6   witnesses").  She points to evidence that, at unspecified times, Mr. Lynch discussed the possibility

7   that she filed the EthicsLink complaint and was told about one or more of her earlier complaints.

8   *See* Opp. at 15.  But there is no evidence Mr. Lynch was aware of complaints *before* selecting her

9   for separation, *compare* Mot. at 11–12, *with* Opp. at 15–16, nor is there evidence that the

10  (unspecified) prior complaints were protected, *see supra* p. 4 (Feb. 2023 complaint not protected).[2]

11       Such vague evidence about knowledge or speculation does not meet Plaintiff's threshold

12  burden under Labor Code 1102.5 to show, "by a preponderance of the evidence," that retaliation

13  was a "contributing factor" in her termination.  *Vatalaro v. Cnty of Sacramento*, 79 Cal. App. 5th

14  367, 379–80 (2022).  It likewise does not meet her burden under FEHA to demonstrate by "specific"

15  and "substantial" evidence that retaliation or discrimination was a "substantial motivating factor."

16  *Alamo v. Prac. Mgmt. Info. Corp.*, 219 Cal. App. 4th 466, 483 (2013) ("substantial motivating

17  factor"); *Morgan*, 88 Cal. App. 4th at 68–69 (circumstantial evidence must be "specific" and

18  "substantial").  As BlackBerry explained in its Motion, even *knowledge* of protected activity does

19  not show retaliatory intent.  *See* Mot. at 17–19.  Plaintiff does not address this argument, and she

20  offers no authority for her claim that mere knowledge of complaints, or speculation by Mr. Lynch—

21  a natural human reaction to an anonymous complaint in the workplace—show retaliatory intent.

22       Plaintiff's arguments about "[c]onsciousness of guilt," Opp. at 22–23, fare no better.  That

23  Mr. Lynch asked for a version of the Morrison Foerster report without names, given "what personnel

24  actions [were] planned," does not support any such inference.  His email, sent to BlackBerry's chief

25  ───────────────────

26  [2] Plaintiff suggests that Mr. Lynch was told by October 28, 2023 (before her comments during the
Morrison Foerster investigation) about prior complaints she made.  But the only support she cites is

27  an email that does not copy Mr. Lynch, reference Mr. Lynch, or specify *what* prior complaints were
discussed.  *See* Opp. at 15–16 (citing Pl. Ex. 31, an email between Lisa Disbrow, Mike Daniels, and

28  Phil Kurtz).  She thus points to no evidence supporting her claim that "Lynch knew about at least
one of Sandhu's protected complaints" before deciding to eliminate her roles.  *Id.*

1    legal officer, reflects attention to how multiple planned terminations might look in the event of a

2    challenge.  It is not unlawful, or evidence of improper motive, to consider potential litigation risk,

3    and Plaintiff offers no authority otherwise.  *See In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202,

4    1250 (S.D. Cal. 2010) ("[T]he fact that a member of the Board of Directors contacted an attorney

5    for advice is not evidence that the transaction was deceptive").  As to BlackBerry's severance offer:

6    Plaintiff—like the other executives whom Mr. Lynch selected for termination, Ex. 31 (Kurtz Dep.)

7    at 67:1-17—had an employment contract that called for severance in exchange for a release in the

8    event of termination without cause, *see* Pl. Ex. 7 at 3 (outlining those terms); *accord* Pl. Ex. 8.

9    Compliance with that contract does not suggest improper intent.  *Cf. Oliver v. L'Occitane, Inc.*, 2015

10   WL 13916223, at *9 (C.D. Cal. Mar. 3, 2015) (no inference of intent where offer is "general

11   policy"); *Henshaw v. Hartford Ins.*, 2005 WL 1562265, at *8 n.4 (E.D. Cal. June 30, 2005) (same).

12   Finally, Plaintiff relies on misleadingly cropped testimony from Mr. Lynch.  *See* Opp. at 22–23.

13   The full sentence she cites explains that Mr. Lynch felt Plaintiff could not portray her departure as

14   a resignation (as BlackBerry offered) if she was perceived as having been fired by the new CEO.[3]

15         The fact that Mr. Lynch described Plaintiff as "opinionated" and "aggressive" likewise does

16   not show improper intent.  *See* Opp. at 21 (arguing that the comments reflect gender stereotyping).

17   The comment is not clearly related to gender.  *See Hittle v. City of Stockton, California*, 101 F.4th

18   1000, 1015 (9th Cir. 2024) ("[R]emarks made by a decisionmaker must be 'clearly sexist, racist, or

19   similarly discriminatory' to create an inference of discriminatory motive.").  Nor was it made in

20   connection with Ms. Sandhu's termination.  *See* Ex. 20 (Lynch Dep.) at 35:4–36:3 (commenting in

21   2025 on impressions from years prior); *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir.

22   1990) ("[S]tray 'remarks, when unrelated to the decisional process, are insufficient to demonstrate

23   that the employer relied on illegitimate criteria, even when such statements are made by the

24   decisionmaker in issue.'") (citations omitted); *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 231

25   (2013) (same).  Courts have found starker comments incapable of showing animus.  *See, e.g.*,

26

27   _____
     [3] The full sentence Plaintiff cites reads:  "I wanted Neelam to be able to leave head high and not be
     pro – be perceived as having been fired by the new incoming CEO, so I was anxious to delay the
28   announcement on John until such time as Neelam had made her decision and hopefully would have
     decided to resign or portray the thing as a resignation."  Ex. 20 (Lynch Dep.) at 199:21–200:18.

1  *Kazdoba v. Zoll Med. Corp.*, 2025 WL 2371806, at *9 (C.D. Cal. May 13, 2025) (three religion-

2  related remarks were at most "weak circumstantial evidence of discriminatory animus" and did not

3  overcome employer's stated grounds for termination, even though remarks were made by those

4  "involved in the termination decision") (citing cases).

5                                    *(b)      Mr. Giamatteo's Role*

6          Lacking evidence that Mr. Lynch was motivated by retaliatory or discriminatory intent,

7  Plaintiff pins her case on a theory that Mr. Giamatteo, instead of Mr. Lynch, drove her firing (as a

8  so-called "cat's paw"). The theory fails for two separate reasons. **First**, a cat's paw theory cannot

9  extend to Mr. Giamatteo, who did not supervise Plaintiff. BlackBerry made this argument in its

10 Motion, and Plaintiff fails to offer any case law supporting extension of the doctrine to a non-

11 supervisor like Mr. Giamatteo. *Compare* Mot. at 20-21, *with* Opp. at 16-17.

12         **Second**, Plaintiff offers no admissible evidence to support her claim that Mr. Giamatteo

13 influenced her firing. *See, e.g.*, *Martin v. Bd. of Trs. of Calif. State Univ.*, 97 Cal. App. 5th 149, 169

14 (2023) (affirming summary judgment against a cat's paw theory where plaintiff "fail[ed] to show"

15 that the biased employee "significantly participated in the decision to terminate" the plaintiff).

16 Plaintiff's argument relies entirely on two assertions: (1) that Mr. Lynch "assured Giamatteo that he

17 would get rid of Sandhu," Opp. at 16, and (2) that Mr. Giamatteo "would not sign his CEO contract

18 unless she was fired," Opp. at 17. But Plaintiff presents *no* admissible evidence in support of these

19 assertions, making them mere speculation insufficient to defeat summary judgment. *Cafasso v. Gen.*

20 *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a

21 plaintiff must set forth non-speculative evidence of specific facts").

22         To the first point, Plaintiff insists that because Mr. Lynch "communicated with Giamatteo"

23 at one point during the investigation and "Lynch and Kurtz exchanged messages about the need to

24 'keep' Mr. Giamatteo 'calm' during the transition," "the jury could rationally infer that as part of

25 the permanent-CEO negotiations, Lynch assured Giamatteo that he would get rid of Sandhu." Opp.

26 at 16–17. But that inference is not reasonable. Plaintiff offers no basis to conclude Mr. Giamatteo

27 and Mr. Lynch ever discussed her during the investigation—much less that Mr. Lynch promised to

28 fire her. Although courts must draw reasonable inferences in the non-moving party's favor, they

need not, and may not, credit conjecture untethered to the record. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) ("At summary judgment, this court need not draw *all* possible inferences in Harvest's favor, but only all *reasonable* ones."); *Cafasso*, 673 F.3d at 1061 (refusing to infer retaliation where facts showed "only that this set of events could conceivably have occurred"); *Gunzenhauser v. Garland*, 2024 WL 1120385, at *2 (N.D. Cal. Mar. 14, 2024), *aff'd*, 2025 WL 1392137 (9th Cir. May 14, 2025) ("conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment").[4]

Plaintiff's second assertion—that "multiple employees told her Giamatteo said he would not sign his CEO contract unless she was fired," Opp. at 17—likewise cannot create a question of fact, because it is unsupported by any admissible evidence. It is based solely on Ms. Sandhu's testimony that multiple, unnamed individuals told her that they were told, *by other individuals*, that Mr. Giamatteo demanded her firing—i.e., unattributed hearsay-on-hearsay. *See* Ex. 3 (Sandhu Dep.) at 48:17–50:10; 51:8-21; 51:3-7 ("Q. At any point did you speak to anyone who told you, 'John Giamatteo told me he would not sign his CEO contract unless you were fired?' . . . A. No."). Ms. Sandhu has offered no evidence that any of the unnamed speakers had personal knowledge or made the statement within the scope of their employment, *contra* Opp. at 17 n.8; indeed, she was unable to identify even one of the speakers, despite claiming that there were several. *Id.* The account is therefore inadmissible. *Anderson v. City & Cnty. of San Francisco*, 169 F. Supp. 3d 995, 1024 (N.D. Cal. 2016) ("Plaintiff's statements regarding what others may have told her lack foundation and constitute inadmissible hearsay."); *Opara v. Yellen*, 57 F.4th 709, 726–27 (9th Cir. 2023) ("'uncorroborated and self-serving' testimony" could not create question of fact) (cleaned up).

What the *admissible* evidence shows is that Mr. Giamatteo was not involved at all. *See* Ex. 20 (Lynch Dep.) at 92:19-21, 92:25–93:2 ("Q. Did Mr. Giamatteo . . . ever tell you that he thought Ms. Sandhu should be fired?  A. No. . . . Q. Did Mr. Giamatteo ever tell you that he wanted Ms. Sandhu to be fired before he became CEO?  A. No."); *id.* at 212:1-5 ("Q. Other than through a more

---

[4] Plaintiff's insistence that "it is highly implausible that a temporary, caretaker, interim CEO . . . would have fired the company's Chief Marketing Officer . . . without the approval of the heir-apparent CEO," Opp. at 17 fares no better, because it depends on the same unsupported speculation.

general email that would have gone to many people, did you advise John Giamatteo that you would be terminating Ms. Sandhu's employment?  A. No.").  Plaintiff has thus failed to show that anyone but Mr. Lynch contributed to her firing.  *Cf. Morgan*, 88 Cal. App. 4th at 76 (plaintiff "must do more than establish a prima facie case and deny the credibility of the defendant's witnesses.").

### (c)    Evidence From Other Coworkers

Having failed to show improper intent by Mr. Lynch or influence from Mr. Giamatteo, Plaintiff attempts to import animus by citing commentary from three individuals: Lisa Disbrow, Tim Foote, and Phil Kurtz.  *See* Opp. at 16, 22.  But none of these individuals was involved in the termination decision.  *See, e.g.*, Ex. 30 (Lynch Dep.) at 210:25-212:4 (Mr. Lynch was the sole decisionmaker; neither Mr. Kurtz nor Ms. Disbrow were involved in the decision); Ex. 31 (Kurtz. Dep.) at 183:21-23 ("Q. Were you involved in the decision to terminate Ms. Sandhu?  A. No.").  Indeed, Plaintiff does not even contend that Ms. Disbrow, Mr. Foote, or Mr. Kurtz contributed to her firing.  Their comments therefore cannot show impermissible intent affected the decision.  *See Harris*, 56 Cal. 4th at 231 (FEHA "does not prohibit discrimination 'in the air,'"—only in actual employment decisions.  As such, "thoughts, beliefs, or stray remarks that are unconnected to employment decisionmaking . . . alone do not support a claim under [FEHA].");  *Merrick*, 892 F.2d at 1438 (stray remarks insufficient to avoid summary judgment).

### (d)    Other Women's Experiences

Plaintiff next turns to evidence related to other women's experiences at BlackBerry.  For five reasons, the experiences of other women do not show retaliatory or discriminatory intent.

***First***, none bears on Mr. Lynch, the decisionmaker in Ms. Sandhu's termination.  Ms. McMillan, Ms. Ransom, Ms. Slimmon, and Ms. Tatsis never worked with Mr. Lynch.  *See* Ex. 44 (McMillan Dep.) at 36:24-25; Ex. 45 (Ransom Dep.) at 18:15-18; Ex. 46 (Slimmon Dep.) at 73:18-23; Ex. 47 (Tatsis Dep.) at 30:14-15.  And neither Ms. Dickman nor Ms. Bramhill offered negative testimony relevant to him or his tenure as CEO.  *See* Ex. 42 (Dickman Dep.) at 45:19–46:7; 28:4-5; Ex. 49 (Bramhill Dep.) at 91:2-16.  Their experiences are therefore irrelevant to Plaintiff's termination.  *See Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1185 (C.D. Cal. 2013) (evidence suggesting improper intent that did not concern decisionmakers in termination was

1    irrelevant); *Machado v. Johnson*, 191 Fed. App'x 531, 533 (9th. Cir. 2006) (Unpub. Disp.) (refusing

2    to consider allegedly discriminatory conduct by actor "not linked to the decision to fire [plaintiff]").

3        ***Second***, Plaintiff has not shown that any of these individuals—scattered across different

4    departments, with different supervisors—were similarly situated to her.  *Stovall v. Align Tech., Inc.*,

5    2022 WL 899416, at *12 (N.D. Cal. Mar. 28, 2022) (me-too evidence had only "minimal relevance,"

6    and did not "rise to substantial evidence of pretext," because it did not bear on the decisionmakers

7    in plaintiff's case and there was no evidence that the individuals at issue were similarly situated).

8        ***Third***, scattered anecdotes from just six employees cannot suggest discriminatory or

9    retaliatory intent.  As BlackBerry's Motion explained—in another argument Plaintiff fails to

10   address—courts infer such intent only from statistical evidence demonstrating a "stark pattern" that

11   rules out other variables.  *Compare* Mot. at 23, *with* Opp. at 23 (not addressing the argument).

12       ***Fourth***, Plaintiff misstates the evidence.  She asserts that Ms. Tatsis and Ms. Dickman were

13   fired in retaliation for protected activity.  *See* Opp. at 11.  But Ms. Tatsis was not terminated.  *See*

14   Ex. 47 (Tatsis Dep.) at 53:1-3 ("Q. Ms. Tatsis, did you leave BlackBerry voluntarily?  A. Yes.").

15   And Ms. Dickman did not testify to any retaliation.  *See* Ex. 42 (Dickman Dep.) at 126:25-127:25

16   (stating, when asked if she knew of "facts that would lead you to conclude" that "Mr. Giamatteo

17   fired you for participating in the Morrison Foerster investigation": "I would think no, because I

18   didn't say anything negative about him in that interview.").  Plaintiff's purported evidence to the

19   contrary—statements in an email from Ms. Dickman's *lawyer*, about which Ms. Dickman

20   disclaimed knowledge, *see* Pl. Ex. 42 at 114:1-25—is inadmissible hearsay.

21       ***Finally,*** as to Ms. McMillan, Plaintiff relies only on Ms. McMillan's *belief* that complaints

22   influenced her firing.  But Ms. McMillan's opinion about her experience does not establish that she

23   was retaliated against.  *See Schuler v. Chronical Broad. Co. Inc.*, 793 F.2d 1010, 1011 (9th Cir.

24   1986) (without corroborating evidence, "subjective personal judgments do not raise a genuine issue

25   of material fact").  And it cannot raise a fact issue with respect to *Plaintiff's* termination.  *See Day*,

26   930 F. Supp. 2d at 1185 (other women's opinions that they were retaliated against "are not sufficient

27   to raise triable issues of fact as to whether [the employer's] proffered explanation for [plaintiff's]

28   termination was pretextual").  That is particularly true because Plaintiff has not shown that Ms.

1    McMillan was similarly situated, or indicated how her termination—by a different supervisor,

2    months *before* Mr. Lynch's tenure as CEO and Ms. McMillan's participation in the Morrison

3    Foerster investigation—bears on Ms. Sandhu's.  *See* Ex. 44 (McMillan Dep.) at 17:21-24.

4    <center>*(e)    Morrison Foerster Report*</center>

5    Plaintiff next claims that a jury can infer discrimination or retaliation because BlackBerry

6    did not implement suggestions from Morrison Foerster.  The timeline forecloses that inference:  The

7    report was issued *after* Mr. Lynch decided Plaintiff's roles would be eliminated, *see* Mot. at 7-8

8    (Mr. Lynch decided on separations by November 13, two weeks before the report issued), and just

9    two weeks before the end of Mr. Lynch's tenure as interim CEO, *see* Ex. 20 (Lynch Dep.) at 186:22–

10   187:11.  It is not reasonable to expect a company to implement reforms within two weeks, or to

11   draw an inference of unlawful motive on the part of its CEO on these facts.  In any case, Plaintiff

12   overstates the evidence.  The report's conclusion was a finding of no wrongdoing by Mr. Giamatteo,

13   Mot. at 8.  And despite Plaintiff's insistence that BlackBerry "implemented virtually none of

14   MoFo's recommended reforms," Opp. at 24–25, the only testimony she cites states that BlackBerry

15   *did* in fact implement several of the report's suggestions.  *See* Ex. 30 (Lynch Dep.) at 187:23–188:25

16   (survey and exit interviews); Ex. 31 (Kurtz Dep.) at 151:16–155:8 (survey and mentorship groups).

17   <center>*(f)    Timing*</center>

18   Lacking affirmative evidence of retaliatory intent, Plaintiff is left only with the short interval

19   between her complaints in November 2023 and her termination.  As BlackBerry explained in its

20   Motion, Mot. at 19, timing alone is insufficient to survive summary judgment, where, as here,

21   BlackBerry has offered a legitimate rationale for Plaintiff's termination.  *See Rodriguez v. Comcast*,

22   2020 WL 4368213 at *7 (N.D. Cal. July 30, 2020) (Kim, J.).

23   **2.    BlackBerry Has Shown That It Would Have Fired Plaintiff Regardless.**

24   BlackBerry has shown that it would have fired Plaintiff regardless of any protected activity,

25   satisfying its full burden under Labor Code 1102.5, and defeating Plaintiff's required showing under

26   FEHA.[5]   The undisputed evidence indicates that BlackBerry eliminated Plaintiff's roles in a

27

28   [5] Under Labor Code 1102.5, BlackBerry is entitled to summary judgment because it can show it is

1    restructuring and that—two years after Ms. Sandhu's departure—the company still does not have a

2    CMO, Chief Elite Customer Success Officer, or executive outside the legal department in charge of

3    sustainability functions. *See* Dkt. 111-3 (Bramhill Decl.) ¶ 9-12. Plaintiff has conceded she has no

4    evidence to the contrary. Ex. 3 (Sandhu Dep.) 221:21–222:16 (testifying that she has "no idea" if

5    BlackBerry hired a CMO or Elite Officer to replace her after her departure). She does not dispute

6    that BlackBerry announced its planned restructuring to investors both before and after Plaintiff's

7    termination. *See* Mot. at 6, 9; BB13-00022363. And she concedes that Mr. Lynch told her that her

8    termination was due to restructuring. FAC ¶ 79. The most she claims is that the Elite team was

9    "not [disbanded]." Opp. at 18. But the sole evidence she cites does not support that proposition.

10   *See id.* (citing Giamatteo Dep. at 47:2-14, stating that the Elite group was disbanded by early 2024).

11       Plaintiff's arguments that BlackBerry's restructuring was pretext, or that it would not have

12   terminated her absent retaliation, are misdirection and do not undermine BlackBerry's showing.

13                     *(a)    **BlackBerry Has Offered a Consistent Rationale.***

14       Plaintiff's suggestion that BlackBerry has shifted its rationale is wrong. Plaintiff concedes

15   that BlackBerry told her it was eliminating her role due to cost-cutting, Opp. at 19, as stated in

16   BlackBerry's Motion, Mot. at 17. Plaintiff's sole argument, Opp. at 19–20, depends not on disputed

17   evidence but on a willful misreading of BlackBerry's litigation papers. The documents are clear

18   that *after* deciding to eliminate Plaintiff's roles for cost-cutting reasons, BlackBerry declined to find

19   her a new role (which it had no obligation to do) for additional reasons. Those include Mr. Lynch's

20   understanding that Plaintiff had demonstrated an inability to get along with coworkers, and his belief

21   BlackBerry's cost-cutting plans required reducing executive head-count—a goal that would be

22   thwarted if he gave Ms. Sandhu a new executive-level job. *See* Mot. at 17. Those additional reasons

23

24   "highly probable" it would have terminated Plaintiff "for legitimate, independent reasons," absent
     any protected activity. *Lawson v. PPG Indus., Inc.*, 2025 WL 2493767, at *6 (C.D. Cal. Aug. 13,
25   2025). BlackBerry's showing that it would have terminated Plaintiff regardless of protected activity
     is a complete defense. *Lampkin v. Cnty. of Los Angeles*, 112 Cal. App. 5th 920, 926–27 (2025). At
26   step two of the FEHA inquiry, BlackBerry must only produce a legitimate reason for the termination,
     which it has plainly done, Mot. at 10. For the reasons explained *supra* pp. 12–15, BlackBerry is
27   entitled to summary judgment on Plaintiff's FEHA claims because she has failed to demonstrate, at
     the third step, that BlackBerry's stated reasons are pretextual. *Morgan*, 88 Cal. App. 4th at 68–69.
28

1    for a different decision (not to find her a new role) are consistent with BlackBerry's reason for

2    eliminating Plaintiffs roles, and thus do not suggest pretext or show a shifting explanation.  *See Day*,

3    930 F. Supp. 2d at 1173 ("the fact that defendants articulated additional, consistent explanations for

4    Day's discharge after the termination decision was made is not evidence of pretext.").[6]

5                    ***(b)      Plaintiff's Performance and Personality Were Not Relevant.***

6            That Mr. Lynch did not evaluate Plaintiff's performance, including her interaction with

7    peers, likewise does not indicate that her firing was pretextual or would not have occurred but for

8    her complaints.  Mr. Lynch testified that Ms. Sandhu's performance was not relevant because the

9    termination decision focused on her *roles*, not her work in them.  Ex. 20 (Lynch Dep.) at 89:23–

10   90:23, 244:20–245:4 ("[T]he primary decision had nothing to do with performance.").  Far from

11   suggesting pretext, Mr. Lynch's inattention to performance (including with peers) is *consistent* with

12   the fact that BlackBerry terminated Ms. Sandhu based on cost and organizational structure alone.

13                  ***(c)      Plaintiff's Other Arguments as to Pretext Are Misdirection.***

14           Plaintiff attempts to show pretext with two additional claims:  First, that other executives

15   chose to resign before being terminated, and second, that certain executives retain corporate-level

16   responsibilities after BlackBerry's restructuring.  Neither aids her.  ***First***, that other executives chose

17   to resign does not indicate, as Ms. Sandhu claims, that they were not selected for termination.  *See*

18   Opp. at 17–18.  To the contrary, it shows only that they chose to accept severance instead of

19   requiring formal termination.  Ms. Sandhu does not offer a competing interpretation for the

20   contemporaneous evidence, which shows Mr. Lynch selected all three executives for termination at

21   the same time.  *See* Mot. at 7; Ex. 33 (BB13-00018714); Ex. 48 (BB13-00019036) at 5; *see also* Ex.

22   30 (Lynch Dep.) at 202:24-203:21.  ***Second***, Mr. Lynch's goal was to *reduce* BlackBerry's corporate

23   layer, Mot. at 6, which the company did in part by terminating Ms. Sandhu and disbanding her

24

---

25   [6] Plaintiff further claims BlackBerry's interrogatory responses "state[] that one reason Sandhu was
     fired was because 'Plaintiff told interim CEO Richard Lynch that she wanted to be CEO herself,'"
26   and that Mr. Lynch testified otherwise, *see* Opp. at 21 (citing Pl. Ex. 26 at 11:18).  She goes so far
     as to allege BlackBerry "lied" in its interrogatory response, Opp. at 25.  But Plaintiff repeats the
27   same willful misreading.  BlackBerry's response gives only one reason for her termination—
     restructuring—and cites Plaintiff's desire to be CEO as a second and complementary reason why it
28   "declined to place Plaintiff in another role" once hers were eliminated.  Pl. Ex. 26 at 11.

1    teams.  BlackBerry did not (and could not) cut its corporate layer entirely, and the maintenance of

2    some corporate-level functions does not suggest the effort to *reduce* such roles and costs was pretext.

3                **E.**    **Plaintiff Concedes Her Remaining Claims.**

4            Plaintiff offers no argument supporting her claims for failure to prevent, wrongful

5    termination, or negligent hiring and retention.  Summary judgment is therefore proper against each

6    claim.  *Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 919 (N.D. Cal. 2016)

7    ("When a non-moving party opposes summary judgment with respect to some claims, but not others,

8    'a court may, when appropriate, infer from a party's partial opposition that relevant claims or

9    defenses that are not defended have been abandoned.'" (quotation omitted)).

10               **F.**    **Summary Judgment Is Proper Against Punitive Damages.**

11           To support her request for punitive damages, Plaintiff offers just four facts, none of which

12   constitute "clear and convincing evidence" of "malice, oppression, or fraud," *Rodriguez*, 2020 WL

13   4368213, at *8.  That BlackBerry's legal director sought advice from outside counsel on whether to

14   explore the possibility that Plaintiff fraudulently submitted the EthicsLink complaint, and that Mr.

15   Lynch assessed potential litigation risk related to planned terminations, are both lawful, and indeed

16   prudent, actions for corporate officers, *cf. Joaquin v. City of Los Angeles*, 202 Cal. App. 4th 1207,

17   1224 (2012) (employers faced with complaints "can lawfully ask: is the accusation true?")—and

18   neither has "the character of outrage frequently associated with crime," *Am. Airlines, Inc. v.*

19   *Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1050–51 (2002).  Evidence regarding

20   me-too witnesses does not show intentional discrimination, *see supra* pp. 10–12, but even if it did,

21   it would not justify punitive damages.  *Talamantes v. Costco Wholesale Corp.*, 2025 WL 1785766,

22   at *8 (N.D. Cal. June 27, 2025) (intentional discrimination alone insufficient).  Finally, Plaintiff's

23   claim that BlackBerry "lied" in discovery responses misstates the record.  *See supra* p. 14 n.6.

24   Because Plaintiff has nothing that resembles "clear and convincing evidence" of "malice,

25   oppression, or fraud," summary judgment is warranted against her request for punitive damages.

26   **III.**   **CONCLUSION**

27           For the reasons set forth above, the Court should grant summary judgment against each of

28   Plaintiff's claims in their entirety, as well as Plaintiff's request for punitive damages.

1  DATED:  January 12, 2026                MUNGER, TOLLES & OLSON LLP

2                                          By:  _____/s/ Katherine M. Forster_____

3                                               KATHERINE M. FORSTER

4                                          Attorneys for Defendant BLACKBERRY
                                           CORPORATION

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28