UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEELAM SANDHU,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BLACKBERRY CORPORATION, et al.,<br><br>　　　　Defendants. | Case No. 24-cv-02002-SK<br><br>**NOTICE OF QUESTIONS** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING QUESTIONS FOR THE HEARING SCHEDULED ON JANUARY 26, 2026 at 9:30 A.M. VIA PUBLIC ZOOM WEBINAR.

The Court intends to address the questions below at the hearing. The Court advises the parties that it will not accept written answers to the questions. The parties shall be prepared to address the following questions at the hearing:

(1) *This question is directed to both parties*: Retaliation claims under the FEHA are analyzed under the *McDonnell Douglas* framework. *Moses v. Aerotek, Inc.*, No. 17-CV-06251-BLF, 2021 WL 1643221, at *4 (N.D. Cal. Apr. 27, 2021). Plaintiffs bringing retaliation claims under the FEHA must show (1) that they engaged in a protected activity, (2) the employer subjected them to an adverse employment action, and (3) a causal link existed between the protected activity and the adverse employment action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). Once this prima facie case is established, the employer must offer a "legitimate, nonretaliatory reason for the adverse employment action." *Id.* If the employer offers said legitimate, nonretaliatory reason, "the burden shifts back to the employee" to prove that the nonretaliatory reason was pretextual. *Id.*

    Defendant argues that "Plaintiff cannot establish a prima facie case of retaliation based on her termination because the evidence establishes that Richard Lynch was unaware Plaintiff had engaged in any protected activity at the time he decided to terminate her, and Plaintiff cannot put forth evidence to the contrary." (Dkt. No. 111, p. 19.) Defendant asserts that Mr. Lynch had made the decision to terminate Plaintiff on November 13, 2023, and that at that time, was not aware Plaintiff engaged in any protected activity. (*Id.* (citing Dkt. No. 111, Ex. 20 (Lynch Dep.) at 259:10-260:22).) Plaintiff presents evidence to the contrary. For example, see Dkt. No. 128-2, pp. 15-16. How does this evidence present/not present a dispute of material fact as to whether the "causal link" element is satisfied?

(2) *This question is directed to Defendant:* Regarding the second prima facie element—an adverse employment action—Plaintiff argues that whether "collective actions constitute an adverse employment action is a question for the jury." (Dkt. No. 128-2, p. 18.) The "collective actions" Plaintiff refers to are Plaintiff's termination of employment and "pre-termination adverse actions" that occurred in the years preceding her termination of employment, which included but was not limited to: exclusion from meetings; being cut out of key business decisions; having customer accounts taken away; and a denial of a salary increase. (*Id.*) Defendant asserts that "[t]he Court must assess each retaliation and discrimination theory on its own—despite Plaintiff's "attempt[] to tie the complained-of actions together." (Dkt. No. 134, p. 8.) However, in the retaliation context, "[w]hen a plaintiff alleges a series of actions that comprise a course of conduct, [the court] need not examine each individually. Instead, [the court] consider[s] the totality of the circumstances to determine whether the plaintiff has suffered an adverse employment action." *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 92 (2017). Why should the Court not consider Plaintiff's allegations regarding pre-termination adverse actions?

(3) *This question is directed to both parties:* In the FEHA gender discrimination context, one court recently found that the following actions constituted adverse employment actions: (1) exclusions from meetings because "it prevented [the plaintiff] from

discussing work matters needed for her job," and (2) replacing the plaintiffs from important accounts because "such acts constituted reductions in material job responsibilities, which are prototypical adverse actions." *Sanders v. Bay Area Air Quality Mgmt. Dist.*, No. 23-CV-04416-RFL, 2025 WL 3038993, at *3 (N.D. Cal. Oct. 30, 2025) (citing *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1090 (9th Cir. 2008); *Cozzi v. Cnty. of Marin*, 787 F. Supp. 2d 1047, 1061 (N.D. Cal. 2011). Why do Plaintiff's alleged pre-termination adverse actions constitute/not constitute adverse employment actions in the gender discrimination context?

(4) *This question is directed to both parties:* Do the parties dispute whether Plaintiff was qualified for the position(s) she held at the time of her termination of employment?

(5) *This question is directed to Plaintiff:* Defendants assert that Plaintiff offers the following four theories of retaliation: (1) Mr. Lynch's decision to terminate her employment in December 2023; (2) Mr. Chen's decision to reassign certain of her customer accounts in April 2023; (3) Mr. Giamatteo's day-to-day treatment of her, such as allegedly excluding her from meetings, from late 2021 to 2023; and (4) day-to-day treatment by an unspecified "boys club." (Dkt. No. 111, p. 19.) Defendant, in its reply, further argues that Plaintiff failed to offer "meaningful responses" to its arguments regarding theories two, three, and four. (Dkt. No. 134, pp. 8-9.) Is the Court correct to construe Plaintiff's retaliation claim as solely regarding her termination of employment? Plaintiff should be prepared to explain her reasoning.

**IT IS SO ORDERED**.

Dated: January 23, 2026

SALLIE KIM
United States Magistrate Judge